**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

J&R Passmore, LLC
1239 Sanctuary Pl.
Gahanna, OH 43230

and

Bruce Schuster
43168 Belmont-Centerville Rd.
Belmont, OH 43718

and

Jennifer Schuster
43168 Belmont-Centerville Rd.
Belmont, OH 43718

and

Brent Butler
2506 Flagstone Ct.
Burlington, KY 41005

and

Doreen Butler
2506 Flagstone Ct.
Burlington, KY 41005

and

Ryan Feiock
4500 Crow Rd.
Belmont, OH 43718

and

Cheryl Feiock
4500 Crow Rd.
Belmont, OH 43718

            Plaintiffs,

Case No. 2:18-cv-1587


Judge _____


Judge_____



**<u>CLASS ACTION COMPLAINT</u>**
**<u>WITH JURY DEMAND</u>**

v.

Rice Drilling D LLC
Corporation Service Company
50 West Broad Street, Suite 1330
Columbus, OH 43215

and

EQT Corporation
625 Liberty Avenue, Suite 1700
Pittsburgh, PA 15222

and

Gulfport Energy Corporation
Corporation Service Company Agent
50 West Broad Street, Suite 1330
Columbus, OH 43215

and

Gulfport Appalachia LLC
CSC Lawyers Incorporating Service
50 West Broad Street, Suite 1330
Columbus, OH 43215

and

XTO Energy Inc
Corporation Service Company
50 West Broad Street, Suite 1330
Columbus, OH 43215

and

Ascent Resources-Utica LLC
Capitol Corporate Services Inc.
4568 Mayfield Rd, Suite 204
Cleveland, OH 44121

and

Antero Resources Corporation
CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, OH 43219

2

and

Hess Ohio Developments, LLC
CT Corporation System
4400 Easton Commons Way Suite 125
Columbus, OH 43219

       Defendants.

## CLASS ACTION COMPLAINT

Plaintiffs J&R Passmore, LLC, Bruce Schuster and Jennifer Schuster, Brent Butler and Doreen Butler, and Ryan Feiock and Cheryl Feiock, individually, and on behalf of all other similarly situated persons in Ohio ("Plaintiffs"), by counsel, Craig J. Wilson and the law firm of C.J. Wilson Law, LLC, and John F. McCuskey, Brian J. Warner, Marc Mignault, and the law firm of Shuman, McCuskey & Slicer, PLLC, proposed *pro hac vice*, state for their Class Action Complaint against Defendants Rice Drilling D LLC, EQT Corporation, Gulfport Energy Corporation, Gulfport Appalachia LLC, XTO Energy Inc., Ascent Resources-Utica LLC, Antero Resources Corporation, and Hess Ohio Developments, LLC ("Defendants"), as follows:

### PARTIES

1.     Plaintiff J&R Passmore, LLC is an Ohio limited liability company, whose primary place of business is 1239 Sanctuary Pl., Gahanna, OH 43230, and owns oil and gas mineral rights located in Belmont County, Ohio.

2.     Plaintiffs Bruce Schuster and Jennifer Schuster, husband and wife, are individuals who reside at 43168 Belmont-Centerville Rd., Belmont, OH 43718 and own oil and gas mineral rights located in Belmont County, Ohio.

3.      Plaintiffs Brent Butler and Doreen Butler, husband and wife, are individuals who reside at 2506 Flagstone Ct., Burlington, KY 41005 and own oil and gas mineral rights located in Belmont County, Ohio.

4.      Plaintiffs Ryan Feiock and Cheryl Feiock, husband and wife, are individuals who reside at 4500 Crow Rd., Belmont, OH 43718 and own oil and gas mineral rights located in Belmont County, Ohio.

5.      Defendant Rice Drilling D, LLC is a Delaware limited liability company that is licensed to do business in the State of Ohio with a principal place of business located at 625 Liberty Avenue, Suite 1700, Pittsburgh, PA 15222. Upon information and belief, EQT Corporation is the sole member of Rice Drilling D, LLC, a Pennsylvania Corporation, with a principal place of business 625 Liberty Avenue, Suite 1700, Pittsburgh, PA 15222.

6.      Defendant Gulfport Energy Corporation is a Delaware corporation that is licensed to do business in the State of Ohio and whose principal place of business is 3001 Quail Springs Parkway, Oklahoma City, OK 73134.

7.      Defendant Gulfport Appalachia LLC is a Delaware limited liability company that is licensed to do business in the State of Ohio and whose principal place of business is 3001 Quail Springs Parkway, Oklahoma City, OK 73134.

8.      Defendant XTO Energy Inc. is a Delaware corporation that is licensed to do business in the State of Ohio and whose principal place of business is 22777 Springwoods Village Pkwy., Spring, TX 77389.

9.      Defendant Ascent Resources -Utica, LLC is an Oklahoma limited liability company that is licensed to do business in the State of Ohio with a principal place of business located at 3501 NW 63rd St., Oklahoma City, OK 73116.

4

10.     Defendant Antero Resources Corporation is a Delaware corporation that is licensed to do business in the State of Ohio and whose principal place of business is 1615 Wynkoop Street, Denver, Colorado 80202.

11.     Defendant Hess Ohio Developments, LLC is a Delaware limited liability company that is licensed to do business in the State of Ohio and whose principal place of business is 1185 Avenue of the Americas 40th Floor New York, NY 10036.

## JURISDICTION AND VENUE

12.     Plaintiffs re-plead every allegation contained in the foregoing paragraphs 1-11 as if stated verbatim herein.

13.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a) and (d),  28 U.S.C. §§ 1441 and 1453, and the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. §§ 1711 – 1715 because (i) Plaintiffs and at least one member of the putative class are citizens of a different state from Defendants, (ii) the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and (iii) none of the exceptions under 28 U.S.C. § 1332(d) apply to the instant action.

14.     Defendants Rice Drilling D LLC, EQT Corporation, Gulfport Energy Corporation, Gulfport Appalachia LLC, XTO Energy Inc., Ascent Resources-Utica LLC, Antero Resources Corporation, and Hess Ohio Developments, LLC are subject to the jurisdiction of this Court pursuant to Federal Rule of Civil Procedure 4 and 28 U.S.C. § 115(b)(2) because they are registered to do business in, and do conduct business in, the Southern District of Ohio.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and S.D. Ohio Civ. R. 82.1(b) because Defendants transact business in the Southern District of Ohio, and Defendants are subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

16.     Plaintiffs re-plead every allegation contained in the foregoing paragraphs 1-15 as if stated verbatim herein.

17.     Ohio has a rich history of oil and gas development dating back to the 1800's. Historically, oil and gas were produced by drilling a vertical oil or gas well straight down into the earth to a specific depth and formation, then extracting oil and gas from that particular formation. For example, in the 1960's, near Mount Gilead, Ohio, many oil and gas wells were drilled to what is commonly known as the Trempealeau formation. In eastern Ohio, many wells were drilled to the formations commonly known as the Berea formation, the Ohio Shale or the Clinton Sandstone formation.

18.     In recent years, oil and gas companies have implemented new technology to drill *horizontal* oil and gas wells into shale (rock) formations to extract oil and gas. A horizontal well is drilled vertically down to a certain depth and then the well bore is curved or bent so that, by computer guidance, it is drilled horizontally into a specific formation. Some of these new horizontal wells are drilled vertically to a depth exceeding nine thousand feet (9,000') and then horizontally another ten thousand feet (10,000'). After the well is drilled horizontally, the oil and gas company uses a process commonly known as hydraulically fracturing, a combination of water, sand and chemicals, to force extraction of the oil and gas from the formation. The cost of drilling just one horizontal well can exceed ten million dollars.

19.     Starting in 2011, large oil and gas companies such as Defendants began drilling horizontal wells in eastern Ohio in what has become known as the "Utica/Point Pleasant Shale

Play." As explained by Chesapeake Exploration LLC[1] in a 2012 presentation[2] to the Technical Advisory Counsel of the Ohio Department of Natural Resources:

> Although the Utica Shale was (and is) the commonly accepted <u>nomenclature</u> applied to this horizontal shale play [in eastern Ohio], geologic data from wire line logs and cores indicated that it is the Point Pleasant Formation that is the producing reservoir. **The Point Pleasant underlies the Utica**, is approximately 120 feet thick and consists of interbedded shales, calcareous siltstones and carbonates. The **pay zone within the Point Pleasant is a relatively thin layer in the lower third of the Point Pleasant** and it is within that zone where the horizontal drilling and production occurs (emphasis added).

20.     As highlighted by Chesapeake's presentation, oil and gas companies such as Defendants employ highly sophisticated science and technicality to identify and drill their horizontal wells to a precise location within a targeted formation.

21.     Defendants are multi-billion-dollar, sophisticated oil and gas companies that each have drilled many horizontal wells in eastern Ohio, and particularly in Belmont County, Ohio.

22.     The Ohio Department of Natural Resources, Division of Oil and Gas Resources Management ("DOGRM") regulates the oil and gas industry in Ohio. The DOGRM requires all oil and gas companies to prepare and submit a Well Completion Record (Form 8)[3] after drilling and fracturing a horizontal well in Ohio.

23.     The Well Completion Record form requires each company to report certain information related to the well drilled, including the depth at which each different formation that was encountered during the drilling process, the total depth drilled, and the formation from which oil and gas is being produced. The second page of Well Completion Record form identifies and lists fifty-seven (57) different formations in Ohio by order of depth. The Well Completion Record

---

[1] Chesapeake Exploration LLC has drilled the most horizontal oil and gas well in the State of Ohio to date. See http://oilandgas.ohiodnr.gov/portals/oilgas/shale-activity/comprehensive/Utica_110318.pdf.
[2] A copy of the Presentation is attached as **Exhibit A**.
[3] A copy of Form 8 Well Completion Record is attached as **Exhibit B**.

form indicates that the Utica Shale formation <u>is distinctly separate</u> from and lies above the Point Pleasant formation.

24. As indicated on the Well Completion Record form, the DOGRM recognizes that the Utica Shale formation is a distinct and a separate formation from the underlying Point Pleasant formation.

25. The Utica Shale formation and the Point Pleasant formation are separate and distinct formations based on lithology and geologic characteristics.

26. The Utica Shale formation and the Point Pleasant formation are separate and distinct formations based on stratigraphy.

27. The Utica Shale formation and the Point Pleasant formation are recognized within the oil and gas industry as being separate and distinct formations.

28. The U.S. Energy Information Administration, which is the statistical and analytical agency within the United States Department of Energy, recognizes the Utica Shale formation and the Point Pleasant formation as separate and distinct formations.[4]

29. The Utica Shale is the formation between the Kope and Point Pleasant formations.[5]

30. The Point Pleasant formation is below (deeper than) the Utica Shale formation and above the Trenton Limestone formation.[6]

31. The Ohio Division of Natural Resource's Geological Survey in 2012 evidences that the Utica Shale formation is a separate and distinct formation from the Point Pleasant formation; that the Point Pleasant formation is underneath the Utica Shale formation; that the Point Pleasant

---

[4] U.S. Energy Information Administration, <u>Utica Shale Play: Geology Review</u>, April 2017.
[5] Hickman, J. et al. 2015, <u>A Geologic Play Book for Utica Shale Appalachian Basin Exploration</u>, Final Report July 1, 2015, Utica Shale Appalachian Basin Exploration Consortium, Coordinated by the Appalachian Oil and Natural Gas Consortium at West Virginia University.
[6] *Id.*

formation is above the Trenton Limestone formation; and that the Point Pleasant formation is a primary reservoir of oil, natural gas, and other hydrocarbon products.[7]

32.     The Utica Shale formation consists of interbedded dark fissile shale and limey shale (10 to 60% calcite) beds. These beds tend to be bioturbated, and can be fossiliferous in part.[8]

33.     The Point Pleasant formation consists of all of the interbedded limestone and black shales between the Utica Shale and the top of the Lexington/Trenton Formation.[9]

34.     The Point Pleasant formation is comprised of interbedded, fossiliferous limestone, shale and minor siltstone. The limestone and shale occur in roughly equal amounts, whereas the siltstone accounts for only a small percentage of the unit.[10]

35.     Defendant Gulfport Energy Corp. admits that the Utica Shale and Point Pleasant formation are separate and distinct formations in many of its Applications for Unit Operations Pursuant R.C. 1509.28 publicly filed with the DOGRM. For example, in the prepared testimony of Michael Buckner on behalf of Gulfport Energy Corp. in its Application of Gulfport Energy Corporation for Unit Operations in the Horseshoe B Unit, dated July 19, 2017 and later supplemented, filed with the DOGRM ("Horseshoe Application")[11] states as follows:

> Q16: What do these exhibits tell us about the Horseshoe B Unit?
>
> A:16: Exhibits MB-1 and MB-2 are a location map and cross section created using downhole electric logs, respectively. **The cross-section suggests equal thickness of the Utica formation and Point Pleasant formation** and the location map shows

---

[7] See, **Exhibit C**.
[8] Hickman, J. et al. 2015, A geologic Play Book for Utica Shale Appalachian Basin Exploration, Final Report July 1, 2015, Utica Shale Appalachian Basin Exploration Consortium, Coordinated by the Appalachian Oil and Natural Gas Consortium at West Virginia University.
[9] *Id.*
[10] *Id.*
[11] A copy of relevant portions of the Horseshoe Application are attached as **Exhibit D.**

the extent of the predicted thickness across the Horseshoe B Unit. (emphasis added).

\*\*\*

Q19: How and why were these formations chosen?

A19: We expect to produce from **both the Utica Shale and Point Pleasant formations**, though fractures from completion activities may extend outside those formations. We ask for a 50' buffer above and below the productive formation for this reason. (emphasis added).

36.    Gulfport Energy's Horseshoe Application exhibit MB-2 (attached hereto as **Exhibit D**), per the testimony above, is a cross section of the oil and gas formations beneath the subject land. Gulfport Energy's cross section evidences the two distinct and separate formations of the Utica Shale (at a depth of 9,322' – 9,834' with a true vertical depth (TVD) at Rice's Dragon's Breath 3P of 8,744' – 9,220' and a TVD at Gulfport Irons 1-4P of 8,967' – 9,510') and the Point Pleasant formation (at a depth of 9,835' – 9,951' with a TVD at Rice's Dragon's Breath 3P of 9,221' – 9,334' and a TVD at Gulfport Irons 1-4P of 9,511' – 9,626'). This cross section further evidences the geologic, lithology, and stratigraphy differences through depth differences; correlation differences; porosity differences; and resistivity differences.

37.    In Ohio, an oil and gas company has trespassed if it enters into a geologic formation and produces oil, natural gas, or other minerals therefrom owned by another without an agreement with said owner (typically by oil and gas lease agreement) or an order for unit operations from the DOGRM pursuant to R.C. 1509.27 or R.C. 1509.28.

38.    Plaintiffs and class members all own certain oil and gas mineral rights located in Belmont County, Ohio.

39.     In 2011 and 2012, Plaintiffs and many of their neighbors were approached by Defendant Rice Drilling D, LLC to enter into an oil and gas lease agreement for their oil and gas mineral rights in Belmont County, Ohio. Defendant Rice said it was interested in developing only two formations: the Marcellus Shale formation and the Utica Shale formation.

40.     In 2012 and 2013, Plaintiffs and many of their neighbors executed materially identical form oil and gas leases with Defendant Rice conveying to Defendant Rice the right to produce oil and gas from just the Marcellus Shale formation and the Utica Shale formation while reserving the rights to all other formations.

41.     The Plaintiffs' and class members' leases[12] contain an identical reservation clause, titled Article I. Reservations - (a) Lessor's Reserved Rights, which states:

**Lessor reserves all rights not specifically granted to Lessee in this Lease. Lessor specifically reserves the rights to all products contained in any formation:** (1) from the surface of the Leased Premises to the top of the formation commonly known as the Marcellus Shale, (2) in any and all formations below the base of the Marcellus Shale to the top of the formation commonly known as the Utica Shale, and **(3) in all formations below the base of the Utica Shale.** Notwithstanding anything to the contrary, Lessee is specifically granted the right to penetrate and drill through the shallower formations in order to drill and produce the Leased Products and the Leased Premises.  Lessor also reserves the right to drill through any leased shale(s) subject to Lessee approval which shall not be unreasonably withheld so as not to interfere with the Lessee's drilling operations, and a right of way on all lands granted hereunder and the right to use the Leased Premises and any improvements thereon for any and all other purposes, so long as that right of way does not cause unreasonable interference with Lessee's operations or pose an immediate or foreseeable safety problem to Lessee and/or Lessor. Lessee agrees not to unreasonably interfere with the use and enjoyment of said land by Lessor and Lessor's family, agents, employees, invitees, and guests and to comply with all other specific provisions herein relating to the use of the land (emphasis added).

---

[12] The subject oil and gas lease form contains a Confidentiality Clause and thus is not attached hereto. A copy of Plaintiff's J&R Passmore, LLC's oil and gas lease will be filed with Court under seal.

42. The Plaintiffs' and class members' leases are clear and unambiguous, and the specific reservation clause of said leases are clear and unambiguous.

43. The Plaintiffs' and class members' reservation clause evidences that (1) the lessor (Plaintiffs) leased to Defendant Rice only two formations: the Marcellus Shale formation and the Utica Shale formation; and (2) that the lessor (Plaintiffs) reserved all rights to produce oil, gas, and all other products in all other formations; including reserving all rights to produce all products from formations below the base of the Utica Shale formation.

44. The Point Pleasant formation is a distinct and separate formation underlying the base of the Utica Shale, and, therefore, the right to produce all products from the Point Pleasant formation was reserved by lessor (Plaintiffs) and not conveyed to Defendant Rice in the lease.

45. Since executing the leases, Defendants have included Plaintiffs' oil and gas mineral interests in a production or pooled unit[13] (where neighboring lands are combined to create a large block of mineral rights to develop) that the Defendants have drilled horizontal wells.

46. Defendant Gulfport Energy Corporation included in its Horseshoe Application the following:

    a. "The Horseshoe B Unit is located in Belmont County, Ohio, and consists of thirty-two (32) separate tracts of land."

    b. "The total land area in the Horseshoe B Unit is approximately 673.838 surveyed acres. Gulfport has the right to drill on and produce from approximately 654.01760 acres of the proposed unit through its leasehold interest, trade agreement rights, and joint venture agreement rights committed to the Horseshoe B Unit by Gulfport, Rice Drilling D LLC, and XTO Energy Inc. – approximately ninety-seven percent

---

[13] A map of a pooled unit is attached as **Exhibit D** in the Horseshoe Application.

(97.05858%) of the unit area, which is greater than the sixty-five percent (65%) threshold required by Ohio Revised Code § 1509.28."

c. "The 'Unitized Formation' consists of the subsurface portion of the Unit Area (i.e., the lands shown on Exhibit A-1 and identified in Exhibit A-2 thru A-6 to the Unit Operating Agreement) at a depth located from fifty feet above the top of the Utica Shale to fifty feet below the top of the Trenton Limestone formation, and frequently referred to as the Utica/Point Pleasant formation."

d. The Unit Agreement included in Gulfport Energy Corporation's application further defines Unitized Formation as "the subsurface portion of the Unit Area located from fifty feet above the top of the Utica Shale (at an approximate depth of 9,272 feet) to fifty feet below the top of the Trenton Limestone formation (at an approximate depth of 10,002 feet)."

e. The Unit Agreement further attested that the "Unitized Substances are all oil, gas, gaseous substances, sulfur, condensate, distillate, and all associated and constituent liquified or liquefiable hydrocarbons within or produced from the Unitized Formation."

47. Upon information and belief, Defendants have drilled and/or hydraulically fractured their horizontal wells on Plaintiffs' properties[14] below the base of the Utica Shale formation, and are producing oil and gas from Plaintiffs' properties from below the base of the Utica Shale formation, including production from the Point Pleasant formation.

48. Upon information and belief, Defendants have physically intruded into formations underlying the base of the Utica Shale formation on Plaintiffs' properties, and have produced and

---

[14] The term "Plaintiffs' properties" as used herein means the oil and gas mineral interest owned by Plaintiffs.

continue to produce oil, natural gas, and other hydrocarbon products from formations below the base of the Utica Shale formation, including Plaintiffs' reserved Point Pleasant formation, without any agreement from Plaintiffs or any of Plaintiffs' predecessors-in-title, or an order from DOGRM to produce oil and gas from Plaintiffs' reserved property below the base of the Utica Shale.

49.     Defendant Gulfport Energy Corp. admits that their wells intruded into Plaintiffs' Point Pleasant formation through its prepared testimony of Danny Watson, P.E. on behalf of Gulfport Energy Corp. in its Horseshoe Application which stated as follows:

    a. Q15: How deep is the desired hydrocarbon bearing formation that you are referring to?

    b. A15: It depends on the well being drilled, but for the proposed Horseshoe B Unit, it is likely to be approximately 9,885' TVD based on data gathered from an offset that was recently drilled.

50.     As discussed above, Plaintiffs' Point Pleasant formation, according to Gulfport Energy Corporation, began at an approximate depth of 9,835' with a TVD at Rice's Dragon's Breath 3P of 9,221' and a TVD at Gulfport Irons 1-4P of 9,511'.

51.     Defendant Gulfport Energy Corp. admits, through the prepared testimony of Jenae Allert on behalf of Gulfport Energy Corp. in its Horseshoe Application the following:

    a. "Gulfport began acquiring these leasehold rights in 2013 through its own leasing efforts as well as through acreage trades with third parties. Additionally, Gulfport has a Joint Venture with Rice Drilling D LLC, ("Rice").

    b. Gulfport Energy Corporation planned "to drill the initial well in the first quarter of 2018."

      c.   "The Unit Agreement only Unitizes the oil and gas rights located fifty feet above the top of the Utica Shale to fifty feet below the top of the Trenton Limestone formation, defined in the Agreement as the 'Unitized Formation,' to allow development of the Utica Shale formation."

      d.   Ms. Jenae Allert believed "that the Horseshoe B Unit represents a reasonable and efficient means to develop the Utica Shale."

52.    As to the named Plaintiffs in this Complaint, Defendants have included Plaintiffs' properties (as defined above) in the following Units:

      a.   Defendant XTO has included Plaintiff J&R Passmore's property subject to the lease in its Heller Unit A (Heller A 2H Well), Heller Unit B (Heller B 6H Well), and Bennington B Unit (Bennington Unit B 4H Well).

      b.   Defendant Rice has included Plaintiff J&R Passmore's property subject to the lease in its Gold Digger South 4 Unit (Gold Digger 8H Well), Gold Digger South 2 Unit (Gold Digger 4H Well), and Gold Digger South 3 Unit (Gold Digger 6H Well).

      c.   Defendant Gulfport has included Plaintiff J&R Passmore's property subject to the lease in its Horseshoe A Unit and Horseshoe B Unit.

      d.   Defendant Rice has included Plaintiff Brent & Doreen Butler's property subject to the lease in its Iron Warrior 2 Unit (Iron Warrior 3-A and Iron Warrior 5 Wells).

      e.   Defendant Rice has included Plaintiff Ryan & Cheryl Feiock's property subject to the lease in its Mohawk Warrior Southeast Unit (Mohawk Warrior 10H and Mohawk Warrior 12H Wells).

      f.   Defendant Rice has included Plaintiff Bruce & Jennifer Schuster's property subject to the lease in its Bounty Hunter 1 Unit (Bounty Hunter 2H Well), Bounty Hunter

2 Unit (Bounty Hunter 4H Well), Bounty Hunter 3 Unit (Bounty Hunter 6H Well), and Iron Warrior 2 Unit (Iron Warrior 3-A and Iron Warrior 5 Wells).

g. Defendant XTO has included Plaintiff Bruce & Jennifer Schuster's property subject to the lease in its Kemper A Unit (Kemper A 1H Well) and Bennington B Unit (Bennington Unit B 4H Well).

53. The Well Completion Record (Form 8)[15] for each well drilled within these units indicates that the Defendants have drilled into and are producing oil and gas from Plaintiffs' properties from below the base of the Utica Shale in what is commonly known as the Point Pleasant formation.

54. In addition to the Well Completion Records, the DOGMR maintains a well summary and well completion report for each individual well. The Ohio Well Completion Reports for each well producing oil and gas from Plaintiffs' properties (attached hereto as **Exhibit F**) indicate the following:

a. Defendant XTO Energy Inc's Bennington Unit B Well 4H (API No. 34013210210000) was knowingly drilled into Plaintiffs' Point Pleasant formation and is producing natural gas and hydrocarbon products from the same at depths below 9,973', and has produced 5,309,440 MCFs of gas as of June 30, 2018, some or all of which was illegally produced from Plaintiffs' and class members' properties.

b. Defendant Rice Drilling D, LLC's Gold Digger Well 4 (API No. 34013210750000) was knowingly drilled into Plaintiffs' Point Pleasant formation and is producing natural gas and hydrocarbon products from the same at depths below 9,540', and

---

[15] A copy of the Well Completion Records for each well are attached as **Exhibit E**.

16

has produced 3,935,343 MCFs of gas as of June 30, 2018, some or all of which was illegally produced from Plaintiffs' and class members' properties.

c. Defendant Rice Drilling D, LLC's Gold Digger Well 6H (API No. 34013210740000) was knowingly drilled into Plaintiffs' Point Pleasant formation and is producing natural gas and hydrocarbon products from the same at depths below 9,547', and has produced 3,774,478 MCFs of gas as of June 30, 2018, some or all of which was illegally produced from Plaintiffs' and class members' properties.

d. Defendant Rice Drilling D, LLC's Gold Digger Well 8H (API No. 34013210730000) was knowingly drilled into Plaintiffs' Point Pleasant formation and is producing natural gas and hydrocarbon products from the same at depths below 9,561', and has produced 3,694,446 MCFs of gas as of June 30, 2018, some or all of which was illegally produced from Plaintiffs' and class members' properties.

e. Defendant XTO Energy Inc's Heller Unit A Well 2H (API No. 34013209490000) was knowingly drilled into Plaintiffs' Point Pleasant formation and is producing natural gas and hydrocarbon products from the same at depths below 10,281', and has produced 5,103,283 MCFs of gas as of June 30, 2018, some or all of which was illegally produced from Plaintiffs' and class members' properties.

f. Defendant XTO Energy Inc's Heller Unit B Well 6H (API No. 34013209510000) was knowingly drilled into Plaintiffs' Point Pleasant formation and is producing natural gas and hydrocarbon products from the same at depths below 10,453', and

has produced 14,371,321 MCFs of gas as of June 30, 2018, some or all of which was illegally produced from Plaintiffs' and class members' properties.

g. Defendant Rice Drilling D, LLC's Mohawk Warrior Well 12H (API No. 34013207970000) was knowingly drilled into Plaintiffs' Point Pleasant formation and is producing natural gas and hydrocarbon products from the same at depths below 9,403', and has produced 11,242,662 MCFs of gas as of June 30, 2018, some or all of which was illegally produced from Plaintiffs' and class members' properties.

h. Defendant Rice Drilling D, LLC's Mohawk Warrior Well 10H (API No. 34013207980000) was knowingly drilled into Plaintiffs' Point Pleasant formation and is producing natural gas and hydrocarbon products from the same at depths below 9,578', and has produced 10,699,267 MCFs of gas as of June 30, 2018, some or all of which was illegally produced from Plaintiffs' and class members' properties.

i. Defendant XTO Energy's Kemper A 1H (API No. 34013208710000) was knowingly drilled into Plaintiffs' Point Pleasant formation and is producing natural gas and hydrocarbon products from the same at depths below 10,570', and has produced 5,149,545 MCFs of gas as of June 30, 2018, some or all of which was illegally produced from Plaintiffs' and class members' properties.

j. Defendant Rice Drilling D, LLC's Bounty Hunter 2H (API No. 34013209020000) was knowingly drilled into Plaintiffs' Point Pleasant formation and is producing natural gas and hydrocarbon products from the same at depths below 9,0820', and

has produced 9,247,614 MCFs of gas as of June 30, 2018, some or all of which was illegally produced from Plaintiffs' and class members' properties.

k. Defendant Rice Drilling D, LLC's Bounty Hunter 4H (API No. 34013209030000) was knowingly drilled into Plaintiffs' Point Pleasant formation and is producing natural gas and hydrocarbon products from the same at depths below 9,082', and has produced 7,647,048 MCFs of gas as of June 30, 2018, some or all of which was illegally produced from Plaintiffs' and class members' properties.

l. Defendant Rice Drilling D, LLC's Bounty Hunter 6H (API No. 34013209040000) was knowingly drilled into Plaintiffs' Point Pleasant formation and is producing natural gas and hydrocarbon products from the same at depths below 9,105', and has produced 6,057,048 MCFs of gas as of June 30, 2018, some or all of which was illegally produced from Plaintiffs' and class members' properties.

m. Defendant Rice Drilling D, LLC's Iron Warrior 3-A (API No. 34013213130000) was knowingly drilled into Plaintiffs' Point Pleasant formation and is producing natural gas and hydrocarbon products from the same at depths below 9,168', and has produced 197,897 MCFs of gas as of June 30, 2018, some or all of which was illegally produced from Plaintiffs' and class members' properties.

n. Defendant Rice Drilling D, LLC's Iron Warrior 5 (API No. 34013211730000) was knowingly drilled into Plaintiffs' Point Pleasant formation and is producing natural gas and hydrocarbon products from the same at depths below 9,182', and has produced 15,549 MCFs of gas as of June 30, 2018, some or all of which was illegally produced from Plaintiffs' and class members' properties.

55.     Per the above, the Defendants have knowingly trespassed into Plaintiffs' Point Pleasant formation and illegally removed and converted Plaintiffs' oil, natural gas, and hydrocarbon products.

56.     As such, Defendants have knowingly and willfully trespassed into Plaintiffs' mineral estate, are violating Plaintiff's reserved rights of production from all formations below the base of the Utica Shale formation, and are unlawfully producing and misappropriating Plaintiffs' oil, natural gas, hydrocarbon products, and other products from below the base of the Utica Shale formation.

## CLASS ALLEGATIONS

57.     Plaintiffs re-plead every allegation contained above as if stated verbatim herein.

58.     This action is brought for individual claims and pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) as a class action on behalf of the named Plaintiffs and on behalf of all Ohio residents and other persons defined as follows:

All persons or entities whom own oil and natural gas mineral interests in Belmont County, Ohio that entered into or whom are parties or beneficiaries of oil and gas leases with the Defendants or with others who have assigned the duties and responsibilities of the leases to Defendants, and/or which have been assumed by Defendants; in those leases the Lessor retained all rights to the formations and/or the hydrocarbon products contained in the formations below the base of the Utica Shale formation; the Defendants have drilled and/or fractured their well(s) below the base of the Utica Shale formation; and the Defendants are producing oil, natural gas, other hydrocarbon products, or other products from formations below the base of the Utica Shale formation without an agreement from the owner.

59.     Plaintiffs further assert that greater than two-thirds of the members of the proposed class are citizens of the State of Ohio and/or that the number of citizens of the State of Ohio in the proposed class is substantially larger than the number of citizens from any other state and the citizenship of the other members of the proposed class is dispersed among a substantial number of states; that the Defendants are the sole Defendants from whom significant relief is sought by members of the Plaintiff class; that Defendants' alleged conduct forms a significant basis for the claims asserted by the proposed Plaintiff class; that the principal injuries resulting from the alleged conduct or any related conduct of the Defendants were incurred in the State of Ohio; that during the three years preceding the filing of Plaintiffs' class action herein, no other class action has been filed asserting the same or similar factual allegations against Defendants on behalf of Plaintiffs; that the claims asserted herein do not involve matters of national or interstate interest; that the claims asserted herein will be governed by the laws of the State of Ohio, which has a distinct nexus with the class members wherein the majority of Plaintiffs' proposed class reside and wherein the alleged harm and alleged wrongful conduct of Defendants occurred.

60.     Upon information and belief, the class consists of hundreds of Ohio owners with respect to oil and gas mineral rights that are located in Belmont County, Ohio. As a result, the members of the class are so numerous that joinder of all class members as parties in this action is impracticable.

61.     At all material times herein, the Defendants were responsible to not trespass into the Plaintiffs' geological formations which were expressly reserved by Plaintiffs and not leased to the Defendants.

62.     At all material times herein, the Defendants were responsible to not convert Plaintiffs' minerals which were not leased to the Defendants and which were reserved by Plaintiffs.

63. Common questions of law and fact exist for all class members. These common questions include:

a. Whether Defendants have trespassed into Plaintiffs' mineral estate and are unlawfully producing Plaintiffs' and class members' oil, natural gas, and other hydrocarbon products, in violation of Plaintiffs' and class members' mineral rights, for which damages are owed;

b. Whether Defendants' are exercising dominion and control over Plaintiffs' and class members' oil, natural gas, other hydrocarbon products, and mineral rights from below the base of the Utica Shale formation for which damages are owed;

c. Whether Defendants knowingly and intentionally engaged in the actions described in this Complaint, including willfully failing or refusing to reach agreement with Plaintiffs and the class members to produce oil, natural gas, and other hydrocarbon products from below the base of the Utica Shale formation;

d. Whether Plaintiffs and the class members are entitled to damages as a result of Defendants' actions and trespass;

e. Whether Defendants have acted with conscious disregard for the rights of the Plaintiffs and the class members by using their property without paying the market value of the oil, natural gas, and hydrocarbon products taken;

f. Whether Defendants have been unjustly enriched by virtue of their illegal taking of the oil, natural gas, and hydrocarbon products owned by the Plaintiffs and the class members from below the base of the Utica Shale without paying the market value of the oil, natural gas, and hydrocarbon products taken;

    g.   Whether Defendants have unlawfully converted Plaintiffs' and the class members' properties to their own use; and

    h.   Such other factual and legal issues as are apparent from the allegations and causes of action alleged herein.

64.    These and other common questions of law or fact predominate over any questions involving only individual class members and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

65.    Plaintiffs' claims are typical of the claims of the other class members.

66.    Plaintiffs will fairly and adequately protect the interests of the class in this action.

## COUNT I – DECLARATORY JUDGMENT

67. Plaintiffs re-plead every allegation contained above as if stated verbatim herein.

68. Plaintiffs' and the class members' leases state the following:

    a.   "Lessor, in consideration of the payments described herein and the covenants and agreements hereafter contained, hereby leases and lets exclusively to the Lessee all the oil, gas, minerals and their constituents (not including coal) underlying the land described below for the sole purpose of exploring for, drilling, operating, producing and gathering the oil, gas, casinghead gasoline and all other gases and their respective vapors, liquid or gaseous hydrocarbons produced in association therewith other than as reserved unto Lessor below (herein called "Leased Products"). Together with such exclusive rights as may be necessary or convenient for the Lessee to explore for, develop, produce, measure, and market production from the Leasehold and from adjoining lands, using methods and techniques which are not restricted to current technology, including the right to conduct geophysical and other exploration tests; to drill (either vertically, horizontally, or directionally), maintain, operate, treat, vent, dewater, cease to operate, plug, abandon, and remove wells; to stimulate or fracture all seams or other strata or formations; to use or install roads, electric power, telephone facilities (including data acquisition), compression facilities and collection facilities for use in the production, transportation and marketing of products from the Leasehold and from neighboring lands across the Leasehold, and such rights shall survive the term of this agreement for so long thereafter as operations are continued; to use oil and gas free of cost, to operate, maintain, repair, store, and remove material and equipment relating to the operations. Lessor shall not be responsible for any costs with respect to Lessee's Operations. Lessee is prohibited from performing any activity on the Leased

Premises which is not expressly permitted pursuant to the terms and conditions of the Lease."

b. "(a) <u>Lessor's Reserved Rights</u>: Lessor reserves all rights not specifically granted to Lessee in this Lease. Lessor specifically reserves the rights to all products contained in any formation: (1) from the surface of the Leased Premises to the top of the formation commonly known as the Marcellus Shale, (2) in any and all formations below the base of the Marcellus Shale to the top of the formation commonly known as the Utica Shale, and (3) in all formations below the base of the Utica Shale. Notwithstanding anything to the contrary, Lessee is specifically granted the right to penetrate and drill through the shallower formations in order to drill and produce the Leased Products and the Leased Premises. Lessor also reserves a right of way on all lands granted hereunder and the right to use the Leased Premises and any improvements thereon for any and all other purposes, so long as that right of way does not cause unreasonable interference with Lessee's operations or pose a safety concern to Lessee. Lessee agrees not to unreasonably interfere with the use and enjoyment of said land by Lessor and Lessor's family, agents, employees, invitees, and guests and to comply with all other specific provisions herein relating to the use of the land."

69.     Per the lease language above, it is apparent that the rights to drill, explore, and/or produce oil, natural gas, or other hydrocarbon products from any formation below the Utica Shale was not conveyed or leased to the Defendants or their predecessors.

70.     Plaintiffs and class members did not grant or convey to Defendants the right to produce oil and gas from below the base of the Utica Shale formation.

71.     To the contrary, Plaintiffs and class members specifically reserved the right to all products contained in any formation below the base of the Utica Shale formation.

72.     As indicated on the Well Completion Record form, the DOGRM recognizes that the Utica Shale formation is a distinct and a separate formation from the underlying Point Pleasant formation.

73.     The Utica Shale formation and the Point Pleasant formation are separate and distinct formations based on lithology and geologic characteristics.

74.     The Utica Shale formation and the Point Pleasant formation are separate and distinct formations based on stratigraphy.

75. The Utica Shale formation and the Point Pleasant formation are recognized within the oil and gas industry as being separate and distinct formations.

76. As the Well Completion Records and the Well Completion Reports indicate for the Wells described above, the Point Pleasant formation is below the Utica Shale.

77. The Point Pleasant formation is a separate and distinct formation, and lies below the base of the Utica Shale formation.

78. Pursuant to O.R.C. § 2721.02, courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed.

79. Pursuant to O.R.C. § 2721.03, any person interested under a deed, will, written contract, or other writing constituting a contract or any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, municipal ordinance, township resolution, contract, or franchise may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

80. A declaratory judgment action is proper if: (1) the action is within the scope of the Declaratory Judgment Act; (2) justiciable controversy exists between adverse parties; and (3) speedy relief is necessary to preserve rights that may otherwise be impaired. *Freedom Found. v. Ohio Dept. of Liquor Control* (1997), 80 Ohio St.3d 202, 204.

81. Upon information and belief, Defendants believe they have the right to produce oil and gas from below the base of the Utica Shale in the Point Pleasant formation under the subject leases.

82.     A real justiciable controversy exists between the parties as whether or not Plaintiffs and the class members reserved under the subject leases the right to produce oil and natural gas from the Point Pleasant formation.

83.     Defendants continue to produce and take oil and natural gas from Plaintiffs' and the class members' properties, so speedy relief is necessary to preserve Plaintiffs' and the class members' rights.

84.     This Court should declare: (1) that Plaintiffs and class members specifically reserved in the subject leases the right to all products contained in any formation below the base of the Utica Shale, (2) that the Point Pleasant formation is a separate and distinct formation from the Utica Shale, and lies below the base of the Utica Shale formation, and (3) that Defendants do not have the right under the subject leases to produce oil, natural gas, or other hydrocarbon products from any formation below the Utica Shale including in the Point Pleasant formation.

## COUNT II – TRESPASS

85.     Plaintiffs re-plead every allegation contained above as if stated verbatim herein.

86.     Plaintiffs' and the class members' leases state the following:

a.  "Lessor, in consideration of the payments described herein and the covenants and agreements hereafter contained, hereby leases and lets exclusively to the Lessee all the oil, gas, minerals and their constituents (not including coal) underlying the land described below for the sole purpose of exploring for, drilling, operating, producing and gathering the oil, gas, casinghead gasoline and all other gases and their respective vapors, liquid or gaseous hydrocarbons produced in association therewith other than as reserved unto Lessor below (herein called "Leased Products"). Together with such exclusive rights as may be necessary or convenient for the Lessee to explore for, develop, produce, measure, and market production from the Leasehold and from adjoining lands, using methods and techniques which are not restricted to current technology, including the right to conduct geophysical and other exploration tests; to drill (either vertically, horizontally, or directionally), maintain, operate, treat, vent, dewater, cease to operate, plug, abandon, and remove wells; to stimulate or fracture all seams or other strata or formations; to use or install roads, electric power, telephone facilities (including data acquisition), compression facilities and collection facilities for use in the production, transportation and

marketing of products from the Leasehold and from neighboring lands across the Leasehold, and such rights shall survive so long the term of this agreement for so long thereafter as operations are continued; to use oil and gas free of cost, to operate, maintain, repair, store, and remove material and equipment relating to the operations. Lessor shall not be responsible for any costs with respect to Lessee's Operations. Lessee is prohibited from performing any activity on the Leased Premises which is not expressly permitted pursuant to the terms and conditions of the Lease."

b. "(a) <u>Lessor's Reserved Rights</u>: Lessor reserves all rights not specifically granted to Lessee in this Lease. Lessor specifically reserves the rights to all products contained in any formation: (1) from the surface of the Leased Premises to the top of the formation commonly known as the Marcellus Shale, (2) in any and all formations below the base of the Marcellus Shale to the top of the formation commonly known as the Utica Shale, and (3) in all formations below the base of the Utica Shale. Notwithstanding anything to the contrary, Lessee is specifically granted the right to penetrate and drill through the shallower formations in order to drill and produce the Leased Products and the Leased Premises. Lessor also reserves a right of way on all lands granted hereunder and the right to use the Leased Premises and any improvements thereon for any and all other purposes, so long as that right of way does not cause unreasonable interference with Lessee's operations or pose a safety concern to Lessee. Lessee agrees not to unreasonably interfere with the use and enjoyment of said land by Lessor and Lessor's family, agents, employees, invitees, and guests and to comply with all other specific provisions herein relating to the use of the land."

87. Per the lease language above, it is apparent that the rights to drill, explore, and/or produce oil, natural gas, or other hydrocarbon products from any formation below the Utica Shale were not conveyed or leased to the Defendants or their predecessors.

88. Plaintiffs and class members did not grant or convey to Defendants the right to produce oil and gas from below the base of the Utica Shale formation.

89. To the contrary, Plaintiffs and class members specifically reserved the right to all products contained in any formation below the base of the Utica Shale formation.

90. The Point Pleasant formation is a separate and distinct formation and lies below the base of the Utica Shale formation.

91. Defendants have drilled and/or hydraulically fractured their wells below the base of the Utica Shale formation, including into the Plaintiffs' and class members' reserved Point

Pleasant formation, and have thereby intentionally physically invaded Plaintiffs' and class members' property without authorization.

92. Defendants are producing and taking oil, natural gas, or other hydrocarbon products beneath Plaintiffs' and class members' properties from formations below the base of the Utica Shale formation without Plaintiffs' or class members' agreement or consent.

93. Defendants' drilling and fracturing into formations below the base of the Utica Shale formation constitutes a physical trespass into the mineral estates of the Plaintiffs and class members.

94. Defendants production of oil, natural gas, or other hydrocarbon products from formations below the base of the Utica Shale formation constitutes a continuing trespass into the Plaintiffs' and class members' mineral estates, specifically in their reserved formations which include the Point Pleasant formation.

95. Defendants' trespass was and continues to be intentional, knowingly, willful, unlawful, and has been done with a conscious disregard for the property rights of Plaintiffs and class members.

96. As a result of the Defendants' trespass, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven herein, including but not limited to the market value of the oil and gas unlawfully taken from Plaintiffs' and class members' reserved mineral estate; the diminution in the value of the Plaintiffs' and class members' mineral rights; and the loss of the right to develop and produce oil, natural gas, hydrocarbon products, and other minerals that existed and do exist in the Plaintiffs' and class members' Point Pleasant formation and other formations below the base of the Utica Shale formation.

97.     "Where [minerals are] taken from under the land of another, willfully, wrongfully, and intentionally, and without right, the measure of damages to the owner of such [minerals] is the market value of the same at the mouth of the mine, without any deduction for the cost of labor and other expenses incurred in severing and transporting such [minerals] to the mouth of the mine. Syl. Pt. 3, *Brady v. Stafford*, 115, Ohio St. 67, 4 Ohio Law Abs. 339, 152 N.E. 188 (1926).

98.     The Defendants, as a result of their willful trespass, are liable to Plaintiffs and class members for the full value of the natural gas and its hydrocarbon byproducts removed from Plaintiffs' and class members' Point Pleasant formation, without deduction of expenses incurred in exploring, producing, and transporting the natural gas or its hydrocarbon byproducts.

99.     Further, as a result of said trespass, the Defendants, upon final determination of said trespass claims, should be permanently enjoined from further trespass on Plaintiffs' and class members' property.

## COUNT III- CONVERSION

100.     Plaintiffs re-plead every allegation contained above as if stated verbatim herein.

101.     "'Conversion' is generally defined as the wrongful assuming of unauthorized control over the personal property of another, whether it is done purposefully or not." *Fulks v. Fulks*, 95 Ohio App. 515 (4th Dist. 1953).

102.     "Intent or purpose to do a wrong is not a necessary element of proof to establish conversion." *Id*. Furthermore, "[t]he motive by which a party was controlled in the conversion of property is of no avail as a defense." *Baltimore & Ohio Ry. Co. v. O'Donnell*, 49 Ohio St. 489 (1892).

103.     Conversion is "applicable in the instant case as a cause of action because, upon its inevitable extraction, oil and gas becomes personal property, thereby triggering the applicability

of conversion as a potential theory of liability." *Yoder v. Stocker & Sitler Oil Co.*, 1996 Ohio App. LEXIS 2063 (5th Dist. 1996).

104.     Per the applicable lease language, the Defendants do not have the right to remove oil, natural gas, other hydrocarbon products, or any other products from any formation other than the Marcellus Shale and the Utica Shale formations.

105.     The Ohio Well Completion Reports and Well Completion Records, attached hereto as **Exhibits E & F**, establish that the Defendants encountered the Plaintiffs' and class members' Utica Shale at a shallower depth than the Plaintiffs' Point Pleasant formation.

106.     The Ohio Well Completion Reports establish that the Defendants have drilled wells through Plaintiffs' and class members' Utica Shale formation and into their Point Pleasant formation.

107.     The Ohio Well Completion Reports and Well Completion Records establish that the Point Pleasant formation was the Defendants' target formation and is the formation the Defendants are producing oil, natural gas, and other hydrocarbon products from.

108.     The Ohio Well Completion Reports and Well Completion Records establish that the Defendants have produced oil, natural gas, hydrocarbon products, or other products owned by the Plaintiffs and class members from the Plaintiffs' and class members' Point Pleasant formation.

109.     Defendants have illegally removed oil, natural gas, hydrocarbon products, and/or other products from Plaintiffs' and the class members' Point Pleasant formation.

110.     Defendants' illegal removal of oil, natural gas, and other hydrocarbon products from formations below the base of the Utica Shale formation from Plaintiffs' and class members' property constitutes the wrongful exercise of dominion and control over Plaintiffs' and class members' property to the exclusion of Plaintiffs' and class members' rights.

111.     Defendants' actions have been taken knowingly and with a conscious disregard of the rights of Plaintiffs and class members.

112.     As a result of Defendants' actions, Plaintiffs and class members have been harmed in an amount to be proven at trial.

113.     Defendants are also liable for the Plaintiffs' and class members' attorney fees because "'compensation for time lost as a proximate result of the conversion, or for time and money spent in pursuit of the property converted, may be recovered.'" *Fulks v. Fulks*, 95 Ohio App. 515 (4th Dist. 1953) (quoting, 53 American Jurisprudence, 897, Section 106).

## COUNT IV – UNJUST ENRICHMENT

114.     Plaintiffs re-plead every allegation contained above as if stated verbatim herein.

115.     A benefit has been conferred upon the Defendants by virtue of their illegal taking of Plaintiffs' and class members' oil, natural gas, hydrocarbon products, and other products from formations below the base of the Utica Shale formation without the right to do so.

116.     Defendants have knowledge of the benefit they have and continue to receive from their illegal taking of Plaintiffs' oil, natural gas, hydrocarbon products, and other products from formations below the base of the Utica Shale formation.

117.     Defendants have retained the benefits from their illegal taking of Plaintiffs' oil, natural gas, hydrocarbon products, and other products from formations below the base of the Utica Shale.

118.     Under the circumstances, it would be inequitable and unjust to permit Defendants to retain the benefits they have each received without compensating the Plaintiffs and class members for the oil, natural gas, hydrocarbon products, and other products the Defendants have

illegally removed from formations below the base of the Utica Shale formation without a right to do so.

## COUNT V – PUNITIVE DAMAGES

119.     Plaintiffs re-plead every allegation contained above as if stated verbatim herein.

120.     The wrongful actions of the Defendants as set forth herein were committed wantonly, maliciously, fraudulently, and knowingly, with the intention to cause harm to Plaintiffs and in violation of public policy.  Plaintiffs are, therefore, entitled to an award of punitive damages against the Defendants to deter others from like conduct in the future.


**WHEREFORE,** Plaintiffs, on behalf of themselves and all other similarly situated Ohio mineral owners, request relief as follows:

a.     A declaration that: (1) Plaintiffs and class members specifically reserved in the subject leases the right to all products contained in any formation below the base of the Utica Shale; (2) the Point Pleasant formation is a separate and distinct formation from the Utica Shale, and lies below the base of the Utica Shale formation; and (3) Defendants do not have the right under the subject leases to produce oil, natural gas, or other hydrocarbon products from any formation below the Utica Shale including in the Point Pleasant formation.

b.     The full value of the oil, natural gas and its hydrocarbon byproducts, and any other products removed from Plaintiffs' and class members' formations below the base of the Utica Shale formation, without deduction of expenses incurred in exploring, producing, and transporting the oil, natural gas and its hydrocarbon byproducts, and any other products;

c.     Damages for the diminution of value of the Plaintiffs' and class members' mineral estates, the loss of the right to lease, contract for, or otherwise develop and produce natural gas

and other minerals that exist from formations below the base of the Utica Shale formation, given the Defendants' unlawful trespass into the formations below the base of the Utica Shale;

      d.      Pre- and post-judgment interest;

      e.      Reasonable attorneys' fees;

      f.      Such other and further relief to which Plaintiffs and the class members may be entitled; and

      g.      Punitive damages.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiffs request a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Craig Wilson*

Craig J. Wilson (#0090526)
craig@cjwilsonlaw.com
C.J. Wilson Law, LLC
503 S. High St., Ste 200
Columbus, OH 43215
P: 614-723-9050; F: 614- 817-1590

**AND**

John F. McCuskey (WV Bar # 2431)
jmccuskey@shumanlaw.com
Brian J. Warner (WV Bar #9372)
bwarner@shumanlaw.com
Marc Mignault (WV Bar # 12785)
mmignault@shumanlaw.com
Shuman, McCuskey & Slicer, PLLC
*Counsel for Plaintiffs*

*(Pro Hac Vice Admission Pending)*

33