UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**J&R PASSMORE, LLC,** *et al.***,**

    **Plaintiffs,**                          :          Case No. 2:18-cv-1587

    v.                                     Judge Sarah D. Morrison
                                        Magistrate Judge Kimberly A. Jolson

**RICE DRILLING D, LLC,** *et al.***,**      :

    **Defendants.**

## **OPINION AND ORDER**

This matter is before the Court on Defendants' Motions to Dismiss. (ECF Nos. 47–49.) Plaintiffs filed a Combined Memorandum in Opposition in response to these Motions (ECF No. 56), and Defendants filed Replies (ECF Nos. 64–66). These matters are now ripe for consideration.

## **I. ALLEGATIONS IN THE COMPLAINT**

Plaintiffs J&R Passmore, LLC ("J&R Passmore"); Bruce and Jennifer Schuster; Brent and Doreen Butler; and Ryan and Cheryl Feiock own various pieces of property in Belmont County, Ohio, as well as the oil and gas rights to these properties. (First Amended Compl., ¶¶ 1– 4, ECF No. 38.) Defendant Rice Drilling D, LLC, ("Rice") has entered into leases with Plaintiffs for the development of oil and gas minerals on Plaintiffs' properties. (*Id.* ¶¶ 31–37.)

Rice and Defendant Gulfport Energy Corporation ("Gulfport")[1] entered into an agreement whereby they agreed to drill wells in Belmont County. (*Id.* ¶ 46.) Pursuant to this agreement, each drilled wells on J&R Passmore's property, while Rice drilled additional wells on the Schusters', Butlers', and Feiocks' properties. (*Id.* ¶¶ 49–50, 62, 71, 80.) Rice and Gulfport

---

[1] Gulfport has not filed a motion to dismiss.

1

shared in the revenue produced from the sale of oil, gas, and other hydrocarbons produced by the wells on each of these properties. (*Id.* ¶¶ 54–58, 65–66, 74–75, 82–83.)

Defendants XTO Energy Inc. ("XTO") and Ascent Resources – Utica, LLC ("Ascent") entered into an agreement to facilitate the funding, exploration, and development of their jointly owned interests in Belmont County. (*Id.* ¶ 92.) XTO and Ascent also have agreements with Rice to allow XTO and Ascent to drill wells on the J&R Passmore and Schuster properties. (*Id.* ¶ 93.) Pursuant to these agreements, XTO drilled wells on the J&R Passmore and Schuster properties. (*Id.* ¶¶ 96, 107.) XTO and Ascent have shared in the revenue produced from the sale of oil, gas, and other hydrocarbons produced by the wells on these properties. (*Id.* ¶¶ 97, 100–05, 108, 111–14.)

Plaintiffs allege that Defendants have infringed on Plaintiffs' mineral rights by drilling property that they are not entitled to drill, outside of the terms of the Rice leases. (*Id.* ¶¶ 51–52, 63–64, 72–73, 80–81, 98–99, 109–10.) That is, Plaintiffs allege that the leases only permit Defendants to drill a rock formation called the Utica Shale formation but that Defendants have gone beyond the terms of the leases by also drilling another rock formation, the Point Pleasant formation. (*Id.* ¶¶ 33–44.)

Plaintiffs seek a declaratory judgment regarding their rights under the leases and allege trespass, conversion, and unjust enrichment. (*Id.* at 26–35.) Rice, XTO, and Ascent have filed motions to dismiss some or all of the Amended Complaint on the grounds of lack of jurisdiction and failure to state a claim. (ECF Nos. 47–49.)

## II. MOTIONS TO DISMISS FOR LACK OF JURISDICTION

The Court first addresses XTO and Ascent's jurisdictional arguments, because if this Court lacks jurisdiction, it can go no further. *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541

U.S. 567, 593 (2004) ("[I]t is the obligation of both [the] district court and counsel to be alert to jurisdictional requirements.").

## A. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the court lacks subject matter jurisdiction. Without subject matter jurisdiction, a federal court lacks authority to hear a case. *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990). Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack under Rule 12(b)(1) "questions merely the sufficiency of the pleading[,]" and the trial court therefore takes the allegations of the complaint as true. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017) (internal quotation marks omitted). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016). A factual attack is a challenge to the factual existence of subject matter jurisdiction, in which case no presumptive truthfulness applies to the factual allegations. *Ritchie*, 15 F.3d at 598. In the context of a factual attack, a reviewing court may weigh the evidence in order to satisfy itself as to the existence of its power to hear the case. *Id.* When subject matter jurisdiction is challenged, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

## B. Analysis

XTO and Ascent have each put forth two jurisdictional arguments—1) they have no interest in any of the leases, and so there exists no case or controversy, and 2) some or all of Plaintiffs lack standing. The Court begins with XTO and Ascent's first argument, which pertains

only to Plaintiffs' request for declaratory judgment. (Ascent Mot. to Dismiss, at 4–6, ECF No. 47; XTO Mot. to Dismiss, at 5–6, ECF No. 48.)

1. **Existence of a Case or Controversy**

For a court to have jurisdiction over a declaratory judgment, "there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'" *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (per curiam) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937)). This is because federal courts only have jurisdiction over "'Cases' or 'Controversies.'" *Akron Bd. of Educ. v. State Bd. of Educ. of Ohio*, 490 F.2d 1285, 1289 (6th Cir. 1974) (quoting U.S. Const. art. III, § 2, cl. 1).

"To get a declaratory judgment, [the plaintiff] must present a justiciable case or controversy under Article III." *Hemlock Semiconductor Corp. v. Kyocera Corp.*, 747 F. App'x 285, 292 (6th Cir. 2018). That is, the plaintiff "must demonstrate that 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

XTO and Ascent argue that because they are not parties to the leases, they have no stake in a declaratory judgment as to the scope of the leases. That is only partially true. XTO and Ascent have agreements with Rice to drill wells on the J&R Passmore and Schuster properties. As a result, there remains an "actual case or controversy" regarding the scope of XTO's and Ascent's drilling rights vis-à-vis these properties. Thus, XTO and Ascent have a stake in any declaratory judgment that might issue with respect to the J&R Passmore and Schuster leases because that judgment has the potential to determine the scope of their drilling rights.

The Amended Complaint does not, however, allege that XTO or Ascent has any connection to the Butler or Feiock properties. XTO and Ascent argue that they have no interest regarding a declaratory judgment that might issue with respect to any properties to which they have no connection. But such a lack of interest is not necessarily fatal to the Butlers' and Feiocks' claims because of Plaintiffs' argument that Defendants were parties to a joint venture agreement.

Under Ohio law, parties who have entered into a joint venture agreement are each "liable for the negligent and tortious acts of the other members, pursuant to the venture, that result in injury to third persons." *Hulett v. Am.'s Finest Serv. Co.*, No. 1:03CV2497, 2005 WL 2233261, at *12 (N.D. Ohio Sept. 14, 2005). To establish a joint venture, Plaintiffs must prove five things—1) there is a joint contract; 2) Defendants intended to form a joint venture; 3) there exists a "community of interest and control, including contributions to the joint venture"; 4) Defendants have "the mutual right to direct and control the purpose of the joint venture"; and 5) Defendants have agreed to share in the profits and the losses. *Anchor v. O'Toole*, 94 F.3d 1014, 1024 (6th Cir. 1996). Determining whether a joint venture exists is a question of fact for determination by a jury. *Bennett v. Sinclair Ref. Co.*, 57 N.E.2d 776, 782 (Ohio 1944).

At this stage, the Court must only determine whether Plaintiffs have pleaded sufficient facts to allege a plausible claim of a joint venture. Plaintiffs have done so. "[P]laintiffs were not required to provide a formulaic recitation of each element of [a] joint venture, but instead were required to allege sufficient factual matter, accepted as true, to allow this Court to draw the reasonable inference" that a joint venture existed. *Lester v. Wow Car Co.*, No. 2:11-cv-850, 2013 WL 6058676, at *3 (S.D. Ohio Nov. 14, 2013).

Rice and Gulfport have an agreement to drill wells in Belmont County; in turn, Rice has business agreements with XTO and Ascent; and XTO and Ascent have a business agreement with each other. Plaintiffs have pleaded that Defendants have drilled various wells pursuant to these agreements and that they have shared in the revenues from the oil, gas, and other hydrocarbons produced pursuant to these agreements. "These allegations are sufficient for the Court to draw the reasonable inference that [Defendants] intended to engage in and carry out a single business adventure for joint profit, for which the parties combined their efforts, property, money, skill and knowledge." *Id.* at *4.

Having said this, the scope of these agreements is not clear. While parties to a joint venture agreement are liable for the negligent and tortious acts of their co-adventurers, this is only true for acts taken "pursuant to the venture." *Hulett*, 2005 WL 2233261, at *12. Based on the facts that Plaintiffs have pleaded, Rice's joint venture with XTO and Ascent encompasses only the Passmore and Schuster properties. (ECF No. 38 ¶ 93.) The Butlers and the Feiocks have not pleaded sufficient facts to establish that drilling activities on their properties have been conducted pursuant to a joint venture. Without such a connection, XTO and Ascent cannot be liable for any of Rice's drilling activities on the Butler and Feiock properties.

Plaintiffs have not pleaded sufficient facts to establish that XTO or Ascent, through a joint venture or otherwise, has any stake in a determination of the drilling rights on the Butler and Feiock properties. Accordingly, to the extent that the Amended Complaint seeks a declaratory judgment regarding the Butler or Feiock leases as against XTO or Ascent, those claims are **DISMISSED** for lack of jurisdiction based on the lack of any case or controversy.

### 2. Standing

XTO and Ascent's second jurisdictional argument pertains to Plaintiffs' standing. The Court has an obligation to ensure that Plaintiffs have standing, because standing is a jurisdictional requirement. *In re Troutman Enters., Inc.*, 286 F.3d 359, 364 (6th Cir. 2002). To have standing, a "plaintiff must have suffered an 'injury in fact,'" meaning "an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). The plaintiff must also prove the existence of "a causal connection between the injury and the conduct complained of . . . ." *Id.* That is, the injury must be "'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). Finally, the plaintiff must prove that it is likely "that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon*, 426 U.S. at 38).

In arguing that Plaintiffs lack standing, XTO and Ascent rely on the fact that Plaintiffs have not entered into any leases with XTO or Ascent. This is irrelevant. As will be explained in greater detail below, this dispute is broader than a mere breach of Plaintiffs' leases. The salient issue to be determined is the scope of the leases, and if XTO or Ascent has been involved in drilling on Plaintiffs' land beyond the scope of the leases, they are potentially liable in tort, as Defendants allege. Tort liability is not dependent on a contractual relationship.

Plaintiffs allege that Defendants, including XTO, have drilled on land on which Defendants are not entitled to drill and that Defendants, including XTO and Ascent, have taken and/or profited from oil and gas that does not belong to them. A lease entitling Defendants to

7

drill and/or to take oil and gas may be a valid defense to these claims. But should this Court find that Rice has no right under the leases to drill the land at issue, any entity that has engaged in such drilling or has taken or profited from the oil and gas produced is liable regardless of whether it is a party to the Rice leases. As a result, the lack of leases directly with XTO or Ascent is not relevant to Plaintiffs' standing.

To put Plaintiffs' allegations in the context of the standing framework, they allege that they have suffered injury at the hands of Defendants by having their land drilled and their oil and gas taken. A judicial determination that Defendants were not entitled to engage in this conduct, or that Defendants have committed a trespass or conversion or have been unjustly enriched, would redress Plaintiffs' injury. Plaintiffs have alleged sufficient facts to establish standing for most of the claims that they have asserted.

The exceptions are the Butlers' and Feiocks' claims against XTO and Ascent. The Butlers and the Feiocks lack standing to prosecute any claims against XTO and Ascent for the same reason as why there is no case or controversy for purposes of the declaratory judgment. Based on the facts alleged by Plaintiffs, XTO and Ascent have not undertaken any activities vis-à-vis the Butlers' and Feiocks' properties, through a joint venture or otherwise. As a result, to the extent that the Butlers' and Feiocks have brought trespass, conversion, and unjust enrichment claims against XTO and Ascent, those claims are **DISMISSED** for lack of standing.

## III. MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. Standard of Review

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original)

(internal quotations omitted). A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

### B. Analysis

Rice, XTO, and Ascent make multiple arguments for dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6). These arguments fall into three broad categories: 1) Plaintiffs have failed to provide the requisite notice of default under the leases; 2) Plaintiffs' claims are rooted in contract, which bars the unjust enrichment claim and, under the gist of the action doctrine, the tort claims; and 3) Plaintiffs fail to allege all of the elements of their trespass, conversion, and unjust enrichment claims. These arguments will be referred to by these numerical categories for ease of reference.

### 1. Arguments One and Two

Rice, XTO, and Ascent argue that this is merely a contract case, and several of their arguments rely on that faulty premise. (ECF No. 47, at 7–13; ECF No. 48, at 7–13; ECF No. 49, 3–9.) This dispute is not about whether Defendants have *violated* the contracts but rather whether Defendants' drilling activities have gone *beyond the scope of* the contracts. Plaintiffs' claims are governed by the contracts only if Defendants' contentions that the leases encompass the Point Pleasant formation are correct. Defendants' arguments assume that Defendants' conclusions about the scope of the leases are correct.

It may be more concrete to look at these facts in a slightly varied context where, all else being equal, Plaintiffs also owned land in Montana (to which Defendants had no relationship) and Defendants began to drill on that land. If Plaintiffs were to sue Defendants for drilling on their Montana land, that lawsuit would not be based on the Ohio leases and there could be no argument that it was. The Ohio leases govern entirely different rights, and under the Ohio leases, Defendants have no duty to refrain from drilling on Montana land. Mere privity of contract between the parties does not mean that any disputes between them are automatically based on the parties' contractual duties to one another.

The declaratory judgment claim also makes this distinction apparent. There are two possible ways that the Court can decide that claim—Defendants had the right to drill the Point Pleasant formation under the terms of the leases, or they did not. If the Court decides the former, the leases encompass the Point Pleasant formation, and the Defendants will have acted within the scope of the leases and will have violated no duty to Plaintiffs. If the Court decides the latter, the leases do not apply, and Defendants' conduct is governed by the common law.

Having determined that this is more than a mere contract case, the Court now turns to the arguments that Defendants have made in reliance on this faulty premise. Rice argues that Plaintiffs were required to provide written notice to Rice prior to bringing suit based on Rice's "'alleged failure to perform as specified'" in the lease. (ECF No. 49, at 4 (quoting Lease Art. XIV).) That is incorrect. This lawsuit alleges that Rice acted beyond the scope of the governing contracts, not that it failed to perform as specified within them.

In support of their contractual arguments, Rice, XTO, and Ascent point to the same provision in the leases that Plaintiffs claim supports the argument that the Point Pleasant formation is beyond the scope of the leases, specifically: "Lessor reserves all rights not specifically granted to Lessee in this Lease." Defendants argue that this provision creates a "duty to refrain" from going beyond the scope of the leases. (ECF No. 47, at 9 ("Count II arises entirely out of Defendants' purported breach of a duty imposed by the Leases – to refrain from any activity in the Point Pleasant Formation."); ECF No. 48, at 8 (same); ECF No. 49, at 7 (same).) This distorts the contract; it inserts into the contract a duty that does not exist, the duty to not drill land for which drilling rights are not granted under the contract. The referenced clause is nothing more than a limiting clause; it merely defines what is governed by the contract and what is not. It does not create any affirmative contractual duties.

To conclude otherwise would mean that any matter beyond the scope of a contract could be reframed so that any time a lawsuit involved parties to a contract, the contract would swallow any other collateral disputes. To return to the earlier analogy, drilling in Montana would not violate any contractual duties because Defendants have no duty in the contract not to drill in Montana. It is not the case that the leases contain a hidden duty to refrain from drilling in Montana merely because the scope of the leases does not include land in Montana.

Similarly, Defendants argue that the trespass and conversion claims are barred by the gist of the action doctrine. Pursuant to this doctrine, "'the existence of a contract action excludes the opportunity to present the same case as a tort claim.'" *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996) (quoting *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981)). "A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action *only if the breaching party also breaches a duty owed separately from that created by the contract*, that is, a duty owed even if no contract existed." *Id.* (emphasis added). This doctrine does not apply because Plaintiffs do not allege that Defendants have breached any actual duty under the contract. Rather, Plaintiffs allege that Defendants have breached their common law duties not to intrude on the property rights of others.

Defendants conflate contractual duties with tort duties. Under the law of tort, Defendants (like everyone else) have the duty not to enter onto Plaintiffs' land without authority, *see Golf Vill. N. LLC v. City of Powell*, 333 F. Supp. 3d 769, 779 (S.D. Ohio 2018), or to wrongfully convert Plaintiffs' property, *see NPF IV, Inc. v. Transitional Health Servs.*, 922 F. Supp. 77, 81 (S.D. Ohio 1996). These duties exist regardless of how the leases are interpreted, and they would exist even if the leases had never been signed. These duties were created by the common law, not the contracts, so the gist of the action doctrine is inapplicable.

Finally, Defendants' argument as to the unjust enrichment claim fails for a similar reason. Defendants argue that the existence of a contract precludes a plaintiff's ability to bring an unjust enrichment claim. However, that is true only where the alleged unjust enrichment falls within the scope of the contract. *See* Restatement (Third) of Restitution & Unjust Enrichment § 2(2) (2011) ("A valid contract defines the obligations of the parties *as to matters within its scope*, displacing

to that extent any inquiry into unjust enrichment." (emphasis added)). Because the scope of the contract at issue is precisely what is in question here, the Court cannot yet determine whether the unjust enrichment claim falls within the scope of the contract. If Plaintiffs are correct and Defendants were not entitled to drill the Point Pleasant formation, then the unjust enrichment claim is not within the scope of contract and it survives.

Ascent has additional arguments as to why Counts Two through Four should be dismissed. However, because all of Rice's and XTO's arguments in favor of dismissing Counts Two through Four rely on either the previously addressed jurisdictional issues or on the faulty premise that Plaintiffs have brought nothing more than a contract claim, Rice's and XTO's motions to dismiss Counts Two through Four are **DENIED**.

2. **Argument Three – Trespass Claim**

Ascent next argues that Count Two for trespass should be dismissed based on Plaintiffs' failure to plead a *prima facie* case. The elements of trespass under Ohio law are "'(1) an unauthorized intentional act, and (2) entry upon land in the possession of another." *Golf Vill.*, 333 F. Supp. 3d at 779. Ascent argues that Plaintiffs have not alleged that Ascent "took any unauthorized act" or "entered onto Plaintiffs' properties at any time." (ECF No. 47, at 7.)

Plaintiffs respond that Defendants, including Ascent, have committed trespass based on a joint venture theory—that is, Plaintiffs contend that Defendants have entered into a joint venture agreement and are responsible for the torts of each of their co-adventurers. (ECF No. 56, at 15–16.) As was explained above, Plaintiffs have pleaded sufficient facts to allege a plausible claim of a joint venture and that Defendants may therefore be liable for the negligent and tortious acts of their co-adventurers. As a result, it is immaterial whether Ascent physically trespassed on

13

Plaintiffs' properties because J&R Passmore and the Schusters have alleged that one of Ascent's alleged co-adventurers, XTO, did so.

Accordingly, Ascent's motion to dismiss Count Two is **DENIED** with respect to the claims brought by J&R Passmore and the Schusters.

### 3. Argument Three – Conversion Claim

Ascent next argues that Count Three for conversion should be dismissed based on Plaintiffs' failure to plead a *prima facie* case. The elements of conversion under Ohio law are "1) plaintiff's ownership or right to possession of the property at the time of the conversion; 2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and 3) damages." *NPF*, 922 F. Supp. at 81. Ascent argues that Plaintiffs have failed to state a claim for conversion because they have not alleged that Ascent has "committed any wrongful act or disposition with respect to any of Plaintiffs' purported property rights, and Plaintiffs thus could not have suffered any damages as a result of" Ascent's actions. (ECF No. 47, at 10.) In response, Plaintiffs rely on the same joint venture agreement theory.

Plaintiffs have alleged that XTO, an alleged co-adventurer of Ascent, has drilled wells on the J&R Passmore and Schuster properties and that these wells have produced oil, gas, or other hydrocarbons. Plaintiffs have further alleged that Defendants, including Ascent, have wrongfully sold and profited from this oil, gas, or other hydrocarbons. Accordingly, Ascent's motion to dismiss Count Three is **DENIED** with respect to the claims brought by J&R Passmore and the Schusters.

### 4. Argument Three – Unjust Enrichment Claim

Finally, Ascent argues that Count Four for unjust enrichment should be dismissed based on Plaintiffs' failure to plead a *prima facie* case. The elements of unjust enrichment under Ohio

14

law are: 1) the plaintiff has conferred a benefit upon the defendant, 2) the defendant is aware of the benefit, and 3) the defendant has retained the benefit under circumstances where it is unjust to do so without payment. *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005). Ascent argues that Plaintiffs have not alleged that they conferred any benefit on Ascent or that Ascent has retained a benefit under unjust circumstances. (ECF No. 47, at 13–15.)

As with the other claims discussed above, Plaintiffs have alleged that XTO, an alleged co-adventurer of Ascent, has drilled wells on the J&R Passmore and Schuster properties and that these wells have produced oil, gas, or other hydrocarbons. Plaintiffs have further alleged that Ascent shared in the profits from the sale of oil, gas, and other hydrocarbons produced by these wells. This is sufficient to establish a plausible claim for unjust enrichment. Ascent's motion to dismiss Count Four is **DENIED** with respect to the claims brought by J&R Passmore and the Schusters.

## IV. CONCLUSION

For the reasons set forth above, Rice's Motion to Dismiss is **DENIED**. XTO's and Ascent's Motions to Dismiss are **GRANTED** as to the Butlers and the Feiocks and are **DENIED** as to J&R Passmore and the Schusters. The Butlers' and Feiocks' claims against XTO and Ascent are **DISMISSED** without prejudice.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**