**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**J&R PASSMORE, LLC, et al.,**

    **Plaintiffs,**

  v.                                    **Civil Action 2:18-cv-1587
                                             Judge Sarah D. Morrison
                                             Magistrate Judge Jolson**

**RICE DRILLING D, LLC, et al.,**

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motions to Compel (Docs. 168, 169, 170, 171); Motions for Sanctions Against Defendants Gulfport Energy Corporation ("Gulfport") (Doc. 168) and Rice Drilling D, LLC ("Rice") (Doc. 169); and Motion to Strike Defendant's Untimely Response (Doc. 180), as well as Gulfport's Motion for Extension (Doc. 184). For the reasons that follow, Plaintiffs' Motions to Compel are **GRANTED in part and DENIED in part**. Plaintiffs' request for sanctions against Rice is **DENIED**, and Plaintiffs' request for sanctions against Gulfport is **HELD IN ABEYANCE** pending Gulfport's compliance with the directives in this Opinion and Order. Finally, Plaintiffs' Motion to Strike is **DENIED**, and Gulfport's Motion for Extension is **GRANTED**.

    **I.**      **BACKGROUND**

This is a dispute over oil and gas rights in Belmont County, Ohio. Between 2011 and 2013, Plaintiffs and "many of their neighbors" conveyed their rights to Defendant Rice to produce oil and gas from two geological formations, Marcellus Shale and Utica Shale. (Doc. 1 at ¶¶ 39–40). Rice entered into joint venture agreements with Defendants Gulfport, Ascent Resources-Utica, LLC ("Ascent"), and XTO Energy Inc. ("XTO") to drill and share revenue from the wells

producing oil and gas beneath Plaintiffs' properties. (*See generally* Doc. 1). But Plaintiffs allege Defendants produced and sold more than the leases permitted. (*See generally* Doc. 1). Specifically, the parties' point of contention is the production and sale of oil and gas from the Point Pleasant Formation, which lies below the base of the Utica Shale Formation. Plaintiffs believe they reserved their rights to the oil and gas produced from that formation. (*Id*. at ¶ 44). Accordingly, they seek damages for collective trespass, conversion, and unjust enrichment. (*See generally* Doc. 1). Defendants maintain that everyone involved knew that "Utica Shale," as it appeared in the class leases, included rights to Point Pleasant. (*See generally* Docs. 174–179).

Discovery began, and in July of this year, the parties encountered numerous discovery disputes, namely concerning Plaintiffs' second set of requests for production served on February 21, 2020. The parties resolved a handful of disputes extrajudicially. (*See* Docs. 152, 153, 156, 159, 160). The Court ordered expedited briefing on the disputes they were unable to resolve. (Doc. 160). All but Gulfport, which filed its response one week late (Doc. 179), complied with the Court's expedited briefing schedule. Plaintiffs thus ask the Court to strike Gulfport's untimely response or, alternatively, grant them leave to file a sur-reply. (Doc. 180). Once aware of the issue, Gulfport sought an extension of time, explaining that its counsel was in trial and "inadvertently overlooked" the Court's briefing schedule. (Doc. 184). The Court notes, as do Plaintiffs, that Gulfport's response mostly repeats the other Defendants' positions. Thus, another reply from Plaintiffs would be superfluous. Consequently, the Court, in its discretion, **DENIES** Plaintiffs' Motion to Strike and **GRANTS** Gulfport's Motion for Extension. And Plaintiffs' Motions to Compel are now ripe for resolution.

## II. STANDARD

Two federal rules matter here. Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 37, for its part, allows for a motion to compel discovery when a party fails to answer interrogatories submitted under Rule 33 or to provide proper responses to requests for production of documents under Rule 34. *See* Fed. R. Civ. P. 37(a)(1), (3). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). "Relevant evidence" is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

"While relevancy is broad, 'district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.'" *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 335 F.R.D. 115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound, Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

## III. DISCUSSION

Plaintiffs' discovery requests fall into two categories. First, as the Court noted in its September 14, 2020, Order (Doc. 173), as part of the parties' extrajudicial agreements regarding discovery, Defendants agreed to produce certain documents responsive to Plaintiffs' second set of requests for production. But Gulfport apparently failed to produce a single agreed-upon document

(*see generally* Doc. 168), and Rice and XTO failed to complete this production within a reasonable amount of time (*see generally* Docs. 169, 170). Plaintiffs now move to compel this discovery and request that the Court impose firm deadlines for this production. (*See generally* Docs. 168, 169, 170).

The other category consists of requests for production to which all or nearly all Defendants object. These include requests for: (1) information related to the language used in Defendants' oil and gas contracts; (2) sales contracts and statements for the sale of oil and gas production from the class wells; (3) information concerning "gas in place" and "estimated ultimate recovery"; (4) "well decks" and royalty interest ownership; and (5) class operating agreements. The Court addresses the agreed-upon discovery before turning to Defendants' discovery objections.

### A. Agreed-Upon Discovery

As explained, Gulfport, Rice, and XTO agreed to produce on a rolling basis certain documents responsive to Plaintiffs' outstanding discovery requests. But Gulfport failed to do so, and Rice and XTO apparently dragged their feet. (*See generally* Docs. 168, 169, 170). Defendants respond, namely, that the discovery requests are time consuming, and they are working to produce the documents. (*See generally* Docs. 174, 175, 176, 179). But as Plaintiffs note, class discovery currently closes on November 15, 2020, and Plaintiffs served these requests in late February. The Court thus **GRANTS** Plaintiffs' Motions to Compel the outstanding agreed-upon discovery and **ORDERS** the following:

- Gulfport shall produce, within twenty-one (21) days of the date of this Opinion and Order, the four categories of documents it agreed to produce in the parties' July 17, 2020, joint status report (Doc. 159 at 3–4).

- Rice shall complete, within twenty-one (21) days of the date of this Opinion and Order, its production of additional relevant email communications and royalty information for potential class leases (Doc. 169 at 6).

4

As for Plaintiffs' request that Rice produce declarations of pooled units ("DPU"), Rice asserts that it produced them on September 4, 2020. (Doc. 176 at 5). And because Plaintiffs do not explain why Rice should be compelled to produce DPUs for wells it does not operate, Rice has, from the Court's perspective, fully responded to this request. Additionally, XTO agreed to produce royalty information for the purported class lessors, (Doc. 170 at 6), and Plaintiffs acknowledge in reply (Doc. 182 at 2) that XTO has since produced the information. This request is, therefore, also resolved. Finally, Plaintiffs assert that Gulfport waived privilege by failing to produce a privilege log for documents it withheld in response to certain discovery requests. (Doc. 168 at 10–11). In reply, however, they acknowledge that Gulfport produced a privilege log on September 17, 2020. (Doc. 180 at 3). It appears, therefore, that this issue, too, has been resolved. Apparently, though, the privilege log "raise[d] questions concerning the claimed privileges," so Plaintiffs requested additional information from Gulfport. (*Id*.). The Court expects the parties to cooperate quickly to address this issue. In sum, Plaintiffs' Motion to Compel Rice's production of DPUs, Motion to Compel XTO's production of royalty information, and Motion to Compel Gulfport's production of a privilege log, or alternatively, deem that Gulfport waived privilege, are **DENIED as moot**.

To ensure discovery proceeds swiftly and to ensure the parties are continuing to meet and confer, each Defendant is **ORDERED** to file a joint status report with Plaintiffs within thirty (30) days of the date of this Opinion and Order. The parties may, if necessary, raise any issues with the discovery discussed in this Opinion and Order in these status reports. Before doing so, however, they must first meet and confer in an effort to resolve any disputes extrajudicially. And they must summarize those efforts in their joint status reports.

Finally, so that Plaintiffs have sufficient time to review forthcoming discovery before moving for class certification, the Court **HEREBY EXTENDS** the class certification discovery deadline to December 15, 2020, and the class certification motion deadline to January 26, 2021.

### B. Disputed Discovery

The Court turns now to the parties' five discovery disputes.

*1. Lease Language*

The parties interpret the subject oil and gas leases differently. Plaintiffs insist they reserved their rights to the Point Pleasant Formation, while Defendants counter that "Utica Shale" includes everything beneath the Utica Shale Formation, including Point Pleasant. (*See generally* Doc. 168 at 14–16; Doc. 169 at 7–10; Doc. 170 at 8–10; Doc. 171 at 6–8). So Plaintiffs asked to see Defendants' other contracts containing similar language regarding Utica Shale, Point Pleasant, "and other depth limitations," as well as Defendants' correspondence with potential class members regarding the same. (*See id.*). The Court considers each request in turn.

   i.   Contracts

The leases at issue in this case contain the following reservation clause:

> Lessor's Reserved Rights: **Lessor reserves all rights** not specifically granted to Lessee in this Lease. Lessor specifically reserves the rights to all products contained in any formation (1) from the surface of the Leased Premises to the top of the formation commonly known as the Marcellus Shale, (2) in any and all formations below the base of the Marcellus Shale to the top of the formation commonly known as the Utica Shale and (3) in **all formations below the base of the Utica Shale**.

(*See id.*) (emphases added).

Defendants assert they have already produced hundreds of potential class leases containing this language. (*See generally* Doc. 174 at 4–5; Doc. 175 at 6–7; Doc. 176 at 6–7; Doc. 179 at 5– 6). And when read together, they contend the request would encompass nearly all of their leases across

6

Ohio, when the class definition is limited to Belmont County leases. (*See id.*). Defendants exaggerate, say Plaintiffs. Rice operates wells in only Belmont County (Doc. 181 at 5), and Ascent operates wells in only five counties, including Belmont (Doc. 183 at 3). Plaintiffs further assert, if Defendants are going to rely on "intent and usage" defenses, then they have a right to discover evidence of that intent and usage. (*See generally* Doc. 174 at 4–5; Doc. 175 at 6–7; Doc. 176 at 6–7; Doc. 179 at 5–6). The Court agrees.

Indeed, Defendants believe this case turns on how the parties interpreted the leases in this case:

> However, whether Utica Shale and Point Pleasant are geologically distinct is inconsequential to whether the Point Pleasant was reserved in the at-issue leases. Instead, the relevant consideration is that the public and industry understood that when someone used the phrase "Utica Shale," the Point Pleasant formation was included in the statement, and thus that was the intent of the parties to the lease. The parties' intention in this regard is bolstered by the parties' use of the phrase "commonly known as" in reference to the Utica Shale.

(Doc. 176 at 1–2). Plaintiffs are, therefore, entitled to see other contracts containing the at-issue reservation language or other contracts with similar language. And if there are none, Plaintiffs are entitled to know that, too. (*See*, *e.g.*, Doc. 182 at 4 (noting Plaintiffs' "suspicion" that Defendants have not used this language in other contracts besides the subject leases in this case)).

Moreover, Defendants have not convinced the Court that responding to Plaintiffs' request would be unduly burdensome. (*See, e.g.*, Doc. 176 at 7). Defendants bear the burden to make that showing, and "[a] general statement that discovery is unduly burdensome, without more, is simply not enough to prohibit discovery of otherwise relevant information." *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 311 (W.D. Tenn. 2008). Defendants do not specify how the discovery would prove unduly burdensome—only that the request falls outside of the class definition. (*See, e.g.*, Doc. 176 at 7). But Defendants contend that "the public and industry understood" Utica Shale to

7

include Point Pleasant. (Doc. 176 at 1–2). So regardless of where they are from, other contracts with similar language are highly relevant to rebutting that defense.

Nor does the Court find Plaintiffs' request for contracts containing "materially similar language" to be ambiguous or vague. As Plaintiffs note, the phrase "is contextually limited to the specific terms requested in each request"—"Utica and Point Pleasant Formation"—and refer to "depth limitations," including, for example, "under," "below," "at a depth lower than," "lower than," "but," or "except." (*See, e.g.*, Doc. 169 at 8). The Court understands what it is Plaintiffs want and expects the parties to talk to one another about any alleged confusion or vagueness regarding this request.

On balance, Plaintiffs' request is "proportional to the needs of the case, considering the importance of the issues at stake in th[is] action;" the discovery is "important[] . . . in resolving the issues;" and "the burden or expense of the proposed discovery" does not "outweigh[] its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii). Plaintiffs' Motions to Compel oil and gas leases, contracts, and applications using the relevant terminology are **GRANTED**. Defendants are **ORDERED** to produce these documents within twenty-one (21) days of the date of this Opinion and Order.

      ii.      Draft Forms of Subject Lease, Class Correspondence, and Lease Amendments

Plaintiffs also move to compel draft forms of the lease in question, correspondence with class members regarding the depth limitation and geology, and lease amendments regarding these depth limitations. (*See* Doc. 168 at 15; Doc. 169 at 8; Doc. 170 at 9; Doc. 171 at 7). They assert these documents, too, are relevant to Defendants' "intent and usage" defense. (*See id.*).

Defendants do little to challenge this request. Gulfport and XTO do not address it at all (*see* Docs. 175, 179), and Ascent does not indicate whether it has produced or is in the process of

producing these documents (*see* Doc. 174 at 4). Only Rice substantively addresses the request, explaining that it has not yet identified any draft leases and has produced and continues to search for communications with putative class lessors concerning the lease. (Doc. 176 at 12). Accordingly, as the Court finds that Plaintiffs have met their initial burden to show that the request seeks relevant information, and Defendants do not substantively object to this request in their briefing, Plaintiffs' Motions to Compel these documents are **GRANTED**, and Defendants are **ORDERED** to complete this production within twenty-one (21) days of the date of this Opinion and Order.

    *2. Sales Contracts, Statements, and Royalty Calculations*

Plaintiffs' next two sets of discovery requests concern potential damages. They move to compel the production of Defendants' sales contracts and statements for the sale of oil and gas produced from the class wells, as well as documents regarding Defendants' royalty calculations to determine whether Defendants considered any costs in calculating royalty payments. (*See generally* Doc. 168 at 17–18; Doc. 169 at 10–12; Doc. 170 at 10–12; Doc. 171 at 9–10).

Defendants object to producing the actual documents requested, asserting that they already produced or are in the process of producing the requested information in summary form. Gulfport agreed to produce this data in summary form in the parties' July 17 status report (Doc. 179) and has been directed to promptly do so (*see supra* Sec. A). In late April and May 2020, Plaintiffs agreed that Ascent, XTO, and Rice could do the same. (Doc. 174 at 5–6; Doc. 175 at 7; Doc. 176 at 8). More specifically, Plaintiffs agreed they could produce the following in summary form: (1) the monthly price for oil and gas produced; (2) monthly gross proceeds; and (3) monthly royalties paid to each royalty owner. (*See id.*).

9

In accordance with that agreement, XTO, on August 14, 2020, produced reports "showing gross volume and gross revenue through 2018 for each Class Well[.]"  (Doc. 175 at 8).  It subsequently realized it failed to produce data through 2020 and "will supplement its production" accordingly.  (*Id*.).  It is also "working diligently to gather and compile the [royalty payment] information. (*Id*.).  Ascent, on August 22, 2020, produced "spreadsheets reflecting all summary data," as well as "three spreadsheets detailing royalty payments on the potential class leases."  (Doc. 174 at 6).  Finally, Rice, on August 26, 2020, "produced a spreadsheet showing gross volume and gross revenue" and "is working diligently to gather and compile the [royalty payment] information."  (Doc. 176 at 8–9).

Plaintiffs respond that they always reserved the right to request the underlying documents they now move to compel.  (*See* Doc. 181 at 6; Doc. 182 at 5; Doc. 183 at 4).  But they do not explain why the previously agreed-upon summary data is insufficient.  (*See id*.).  From the Court's view, Plaintiffs want to understand how Defendants calculated the sales price and royalty payments.  (*See generally* Doc. 168 at 17–18; Doc. 169 at 10–12; Doc. 170 at 10–12; Doc. 171 at 9–10).  The summaries should do that.  If they do not, Plaintiffs may serve narrowed requests on this issue.

In brief, Plaintiffs' Motions to Compel this production are **GRANTED in part and DENIED in part**.  Requiring Defendants to produce the underlying documents when they have worked to produce the information in summary form per their earlier agreement with Plaintiffs would constitute an undue burden at this point in the case.  This is especially so because Plaintiffs fail to articulate why it is necessary Defendants do so.  Defendants, however, are **DIRECTED** to complete the production of the summary data within twenty-one (21) days of the date of this Opinion and Order.  And because the Court recognizes that this summary data may not contain

some of the more nuanced information Plaintiffs want, including Defendants' methods of calculation, Plaintiffs are **DIRECTED**, if necessary within seven (7) days of Defendants' production, to develop a creative, less burdensome option to obtain this discovery. Defendants are **ORDERED** to respond to the revised requests fourteen (14) days thereafter. The parties shall update the Court on the progress of this discovery in their forthcoming joint status reports.

   *3. Gas in Place and Estimated Ultimate Recovery*

Next, Plaintiffs move to compel the production of "gas in place" or "estimated ultimate recovery" ("EUR") analyses that Defendants completed for their respective wells in Belmont County. (*See generally* Doc. 168 at 18–19; Doc. 169 at 12; Doc. 170 at 12–13; Doc. 171 at 10–11). Plaintiffs assert that the amount of gas beneath the class members' respective properties is relevant to calculating Defendants' potential damages in this case. (*See id.*). Not so, say Defendants— damages are calculated from the actual gas recovered from the properties. (Doc. 174 at 6–7; Doc. 175 at 10; Doc. 176 at 9; Doc. 179 at 7). And the parties rely on competing case law regarding the proper calculation of damages in this case. The Court need not resolve that issue at this juncture as Plaintiffs have met their initial burden satisfying the broad relevancy standard governing discovery. *See* Fed. R. Civ. P. 26(b); Fed. R. Evid. 401.

What is more, the parties acknowledge that at least some of the information sought is publicly available. (*See, e.g.*, Doc. 169 at 12; Doc. 176 at 11). Indeed, Defendants note that it is "easily" obtainable to both sides. (*See, e.g.*, Doc. 176 at 11). In that case, the burden on Defendants to produce this information is slight. So Plaintiffs' Motions to Compel the production of any gas in place or estimated EUR analyses completed for wells in Belmont County are **GRANTED**, and Defendants are **ORDERED** to produce this information within twenty-one (21) days of the date of this Opinion and Order.

*4. Well Decks and Royalty Interest Ownership*

Plaintiffs also move to compel Rice, XTO, and Ascent to produce what are known as "well decks"—spreadsheets or other databases identifying the owner and contact information for each class lease. (*See generally* Doc. 169 at 14; Doc. 170 at 13; Doc. 171 at 12). Ascent responds that it "produced three spreadsheets containing royalty information for the purported class lessors, which includes the relevant information from a well deck concerning the royalty owner of the lease." (Doc. 174 at 9). It appears that XTO has since produced responsive documents (Doc. 182 at 2), and Rice is in the process of doing the same (*see* Doc. 175 at 11; Doc. 176 at 12–13).

Defendants object, however, to producing documents containing information "regarding royalty owners in the class wells that are not putative class lessors" as "that information would of course not be relevant." (Doc. 174 at 9). As explained, Plaintiffs bear the initial burden of establishing the relevance of the information sought. *Gruenbaum*, 270 F.R.D. at 302. Plaintiffs note, without further explanation, that the information "will provide detailed information on each individual owner's interest in the subject well, and will provide Plaintiffs with information on the potential class member." (Doc. 169 at 14). To the extent Plaintiffs are moving to compel the production of this information for non-putative class members, they have failed to establish the relevance of that information. *See, e.g.*, *Guinn v. Mount Carmel Health Sys.*, No. 2:09-CV-0226, 2010 WL 2927254, at *5 (S.D. Ohio July 23, 2010) (denying motion to compel where plaintiff failed to "provid[e] specific arguments" regarding relevancy and noting that "the Court is not required to do [so] for him").

Nor have Plaintiffs explained why the production of spreadsheets containing royalty information for the purported class members, which appear to include the relevant information that would be found on a well deck, is not responsive to their request. Their conclusory contention that

12

Ascent's spreadsheets do "not contain the information requested," (Doc. 183 at 6–7), does not help clarify matters.  Further, to the extent Plaintiffs want Defendants to create a well deck containing additional information regarding non-purported class members, Defendants are not required to do so.  *See, e.g.*, *Harris v. Advance Am. Cash Advance Centers, Inc.*, 288 F.R.D. 170, 172 (S.D. Ohio 2012) (emphasis in original) (citations and internal quotation marks omitted) (noting that parties are not required to create documents to respond to a request for production and denying plaintiff's motion to compel "to the extent plaintiff asks defendant to create a *list* of the names, race, date of hire, position hired into, job title, etc.").

Plaintiffs' Motions to Compel well decks and royalty information are **GRANTED in part and DENIED in part**.  All told, once Defendants produce the above-described royalty information—which encompasses information typically contained in a well deck—they will have satisfied their obligation to respond to this request.  The Court agrees with Plaintiffs, though, that Defendants have had enough time to complete this production.  Thus, as already noted, Rice is **ORDERED** to complete its production of the relevant royalty information containing information responsive to this request within twenty-one (21) days of the date of this Opinion and Order, and XTO is **ORDERED** to do the same to the extent it has not completed this production.

   *5. Class Operating Agreements*

Finally, Plaintiffs move to compel Rice and Ascent to produce operating agreements for each class well.  (*See* Doc. 169 at 15; Doc. 171 at 12).  Plaintiffs "need the operating agreements to determine the ownership of each well, and liability of each owner of the well for trespass damages owed." (*See id.*).  Rice and Ascent agreed to produce the operating agreements for the class wells they operate.  (*See id.*).  As for the wells they do not operate, they contend that Plaintiffs

13

should either subpoena the operators of those wells or collect the operating agreements themselves. (Doc. 174 at 10; Doc. 176 at 13).

The Court agrees.  Notably, XTO produced joint operating agreements for only the class wells it operates.  (*See id.*).  Yet Plaintiffs have not moved to compel XTO to produce other operating agreements, (*see id.*), and the Court finds no basis to compel Defendants to produce joint operating agreements for wells they do not operate.  Plaintiffs' Motions to Compel those documents are **DENIED** as a result.  As for the operating agreements for the wells Rice and Ascent do operate, it is unclear whether those agreements have been produced.  If not, Rice and Ascent are **ORDERED** to produce them within twenty-one (21) days of the date of this Opinion and Order.

### C. Request for Sanctions

Plaintiffs accuse Gulfport of intentionally delaying discovery.  (Doc. 168 at 19).  So they request monetary sanctions for their expenses, including attorney's fees, associated with bringing the instant Motion to Compel against Gulfport.  (*Id.*).  Additionally, Plaintiffs, perhaps inadvertently, also moved for sanctions against Rice but did not address this request in the body of their brief.  (*See* Doc. 169).  To the extent Plaintiffs seek sanctions from Rice, that request is **DENIED**.  As for sanctions against Gulfport, Plaintiffs' Motion **is HELD IN ABEYANCE**.  The Court agrees that Gulfport has delayed producing the agreed-upon discovery and does not appear to be working as diligently as the other Defendants to produce responsive documents on a rolling basis.  The Court has addressed this concern and ordered Gulfport to complete this production within a short timeframe.  In the event Gulfport fails to comply, the Court will consider Plaintiffs' request for sanctions at that time.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motions to Compel (Docs. 168, 169, 170, 171) are **GRANTED in part and DENIED in part**. Plaintiffs' request for sanctions against Rice is **DENIED**, and Plaintiffs' request for sanctions against Gulfport is **HELD IN ABEYANCE** pending Gulfport's compliance with the directives in this Opinion and Order. Finally, Plaintiffs' Motion to Strike (Doc. 180) is **DENIED**, and Gulfport's Motion for Extension (Doc. 184) is **GRANTED**.

IT IS SO ORDERED.


Date:   October 14, 2020                            /s/ Kimberly A. Jolson
                                                    KIMBERLY A. JOLSON
                                                    UNITED STATES MAGISTRATE JUDGE