**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **J&R PASSMORE, LLC, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No. 2:18-cv-1587** |
| | ) | |
| **v.** | ) | **Chief Judge Algenon L. Marbley** |
| | ) | |
| **RICE DRILLING D, LLC, *et al.*,** | ) | **Magistrate Kimberly A. Jolson** |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs J&R Passmore, LLC, Bruce Schuster, Jennifer Schuster, Ryan Feiock, Cheryl Feiock, Brent Butler, and Doreen Butler (collectively, "Plaintiffs") move the Court, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), for an Order certifying the following class:

> All persons or entities who own oil and natural gas mineral interests in Belmont County, Ohio that entered into or who are parties or beneficiaries of oil and gas leases entered into with one or more of the Defendants named herein; in which leases the Lessor retained all rights to the formations and the hydrocarbon products contained in the formations below the base of the Utica Shale formation; where one or more of Defendants Rice, Gulfport, XTO, and Ascent have drilled and fractured their well(s) below the base of the Utica Shale formation; and where one or more of Defendants Rice, Gulfport, XTO, and Ascent are producing oil, natural gas, or other hydrocarbons from formations below the base of the Utica Shale formation without agreement from the Lessor. [Doc. 38 at 22-23, ¶ 127].

Plaintiffs also move the Court to appoint J&R Passmore, LLC, Bruce Schuster, Jennifer Schuster, Ryan Feiock, Cheryl Feiock, Brent Butler, and Doreen Butler as class representatives, and Attorneys Craig Wilson, Brian Warner, Robert Russell, and John McCuskey as class counsel.

This case is particularly well-suited as a class action as the class is ascertainable and the facts are identical for each member. First, there are just over twelve hundred and thirty (1,230) putative class members that entered into approximately seven hundred and fifty (750) pooled oil

and gas leases that contain an identical reservation clause limiting the rights conveyed in said leases to just two geological formations, being the Marcellus Shale and the Utica Shale, and reserved to the mineral owner/lessor all other geological formations. Second, Defendants have included at least 31,492 acres of putative class members' property in 224 pooled units where they have drilled at least 365 oil and gas wells. Third, every one of the 365 wells have been drilled below the base of the Utica Shale and into the geological formation called the Point Pleasant Formation, which is a distinct geological formation the Plaintiffs and putative class members did not lease to the Defendants. Fourth, Plaintiffs and each putative class member have claims against one or more Defendants under Ohio law for common law trespass, conversion and unjust enrichment arising out of Defendants' unlawful intrusion into and production of gas from the Point Pleasant Formation.

In sum, the Plaintiffs' and putative class members' lease language uniformly reserves to the lessor all the oil and gas below the base of the Utica Shale. Despite this clear reservation, Defendants have unlawfully drilled every well below the base of the Utica Shale into and are producing oil and gas from the Point Pleasant Formation, which necessarily results in the pertinent law and facts being common and typical as to each putative class member. As set forth in the accompanying memorandum of law, there is no doubt that Plaintiffs' proposed class meets the numerosity requirement, and the named Plaintiffs and counsel can adequately represent the class. In addition, there are no individual issues that predominate over the class claims and the class mechanism is the superior vehicle to litigate these claims. As such, all requirements of Rule 23 are met and this Court should grant this Motion and certify the proposed class.

A memorandum in support of this motion is attached hereto and incorporated herein.

Respectfully submitted,


/s/   Craig J. Wilson
Craig J. Wilson (#0090526)
C.J. Wilson Law, LLC
P.O. Box 2879
Westerville, OH 43086
Telephone: 614-723-9050
craig@cjwilsonlaw.com

and

/s/ Brian J. Warner
Brian J. Warner (*pro hac vice*)
J. Robert Russell (*pro hac vice*)
John F. McCuskey (*pro hac vice*)
SHUMAN MCCUSKEY SLICER PLLC
300 Wedgewood Drive, Suite 110
Morgantown, WV 26505
304.291.2702
Fax: 304.291.2840
bwarner@shumanlaw.com
rrussell@shumanlaw.com
jmccuskey@shumanlaw.com


*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **J&R PASSMORE, LLC,** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No. 2:18-cv-1587** |
| | ) | |
| **v.** | ) | **Chief Judge Algenon L. Marbley** |
| | ) | |
| **RICE DRILLING D, LLC,** *et al.,* | ) | **Magistrate Kimberly A. Jolson** |
| | ) | |
| **Defendants.** | ) | |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**

---

### TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... 4

TABLE OF AUTHORITIES ............................................................................................. 6

I.    INTRODUCTION ...................................................................................................... 9

II.   STANDARD .............................................................................................................. 11

III.  FACTS PERTINENT TO CLASS CERTIFICATION ......................................... 12

    A.   THE LEASES ONLY GRANTED LESSEES THE RIGHTS TO PRODUCE OIL AND GAS FROM THE MARCELLUS SHALE AND THE UTICA SHALE AND EXPRESSLY RESERVED THE OIL AND GAS IN ALL OTHER FORMATIONS TO THE LESSORS ..................................................... 13

    B.   PARAMETERS OF THE CLASS – 1,232 CLASS MEMBERS; 31,492 ACRES; 750 CLASS LEASES; 224 POOLED UNITS; AND 365 WELLS ........................................................... 16

    C.   LIABILITY TURNS ON LEASE INTERPRETATION OF A STANDARDIZED CONTRACT AS DEFENDANTS DO NOT CONTEST THE WELLS ARE IN THE POINT PLEASANT FORMATION ... 19

IV.  THE CLASS DEFINITION AND ASCERTAINABILITY OF THE CLASS ............ 20

Summary: Federal Rule of Civil Procedure 23(b)(3) classes must meet an implied ascertainability requirement. The class is defined to specifically identify only those lessors that signed leases relating to mineral rights in Belmont County, Ohio that contain the specific reservation clause whereby they reserved all the oil and gas rights below the base of the Utica Shale. Through discovery, the Defendants have produced said leases, and through royalty payments, documents maintained by Defendants, and/or publicly available documents, each specific class member can be identified.

Primary authority: *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017)

**V.   RULE 23(a) ANALYSIS** ................................................................................. 22

Summary: Federal Rule of Civil Procedure 23(a) provides four prerequisites for certification of an ascertainable class: numerosity, commonality, typicality, and adequacy. In addition to meeting these requirements, plaintiffs seeking class certification must also constitute one of the three types of class actions recognized in Rule 23(b). Rule 23(b)(3) permits a class based on finding predominance and superiority.

Primary authority: *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 537 (6th Cir. 2012)

**A.   NUMEROSITY** .......................................................................................... 23

Summary: Rule 23(a)(1) requires numerosity. The Sixth Circuit has held that a class of hundreds satisfies the numerosity requirement. This case satisfies Rule 23(a)(1) because it involves approximately 750 leases and 1,230 class members.

Primary authority: *Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006); Fed. R. Civ. P. 23.

**B.   COMMONALITY** .......................................................................................... 24

Summary: Rule 23(a)(2) requires commonality. Commonality exists where the claims arise out of a standard contract and the class members suffered the same injury due to common conduct of the defendants toward members of a proposed class. Here, every lease contains the same pertinent language, and each of the wells have been unlawfully drilled below the base of the Utica Shale, which means every class member suffered the same injury. An interpretation of the lease language from this Court will result in a common answer and resolution to this case.

Primary authority: *In re Whirlpool Corp.*, 722 F.3d 838, 852 (6th Cir. 2013)

**C.   TYPICALITY** .............................................................................................. 26

Summary: Rule 23(a)(3) requires typicality. Typicality exists where the claims of the class representatives and the other class members arise from the same conduct and are based on the same legal theory. The class representatives and the other class members claims of trespass, conversion, and unjust enrichment arise from the Defendants' unlawful drilling and production of oil and gas from below the base of the Utica Shale, which was reserved to the class members. The claims are identical for each class member.

Primary authority: *Powers v. Hamilton Cnty. Pub. Defender Comm'n,* 501 F.3d 592, 619 (6th Cir. 2007)

**D.   THE REPRESENTATIVE PARTIES WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE CLASS** ................................................................................. 29

Summary: Rule 23(a)(4) requires adequacy of the class representatives. Adequacy exists where the class representatives share common interests with the unnamed class members and the representatives will vigorously prosecute the interests of the class through qualified counsel. Bruce Schuster, Jennifer Schuster, Brent Butler, Doreen Butler, Ryan Feiock, Cheryl Feiock, and J&R Passmore, LLC share a common interest with each unnamed class member, and have vigorously

prosecuted this claim, and will continue to do so. Additionally, the evidence indicates that, under the Rule 23(g)(1) factors, Plaintiffs' counsel would fairly and adequately represent the interests of the class and should be appointed class counsel.

Primary authority: *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)

**VI.   THIS ACTION SATISFIES F.R.C.P. 23(B)(3)** ................................................................. 37

    **A.   PREDOMINANCE** ................................................................. 38

Summary: Rule 23(b)(3) requires predominance. Predominance exists here because common questions of law and fact applicable to the class predominate over any issues that are subject to only individualized proof and liability of the Defendants on a class basis will be determined by the Court's interpretation of the subject lease form applicable to each class member.

Primary authority: *Beattie v. Century Tel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007)

    **B.   SUPERIORITY** ................................................................. 42

Summary: Rule 23(b)(3) requires superiority. Superiority exists where the class action method is the best method for adjudicating a case. Superiority exists in this case because this Court's interpretation of the Class Lease form will establish liability of the Defendants as to the entire class, making it the most economically feasible way for class members to pursue their rights and recover, it promotes judicial economy, it reduces risk of inconsistent rulings and verdicts, and it presents few difficulties in managing the case.

Primary authority: *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997); *D.D. v. Wash. County*, No. 2:10-cv-1097, 2011 U.S. Dist. LEXIS 27720 (S.D. Ohio Mar. 3, 2011)

**VII.   CONCLUSION** ................................................................. 44

**CERTIFICATE OF SERVICE** ................................................................. 45

## TABLE OF AUTHORITIES

**Cases**

*Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) ....................................... 24

*Ahern v. Fibreboard Corp.*, 162 F.R.D. 505, 525 (E.D. Tex. 1995) ................................................... 30

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) .................................................... passim

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 133 S. Ct. 1184, 1194-95, 185 L. Ed. 2d 308 (2013) ................................................................. 12

*Athens & Pomeroy Coal and Land Co. v. Tracy* (1925), 22 Ohio App. 21, 153 N.E. 240 ................ 41

*Ball v. Kasich*, 2017 U.S. Dist. LEXIS 44800 *6 (S.D. Ohio, Mar. 27, 2017) .................................. 12

*Ball v. Kasich*, 2017 U.S. Dist. LEXIS 56259 (S.D. Ohio, Apr. 12, 2017). ...................................... 12

*Ball v. Kasich*, 307 F. Supp. 3d 701, 719 (S.D. Ohio 2018) ......................................................... 27, 29

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) ................................................... 34, 38, 39

*Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 477 (S.D.Ohio 2004) .......................................... 21

*Benzel v. Chesapeake Exploration, L.L.C.*, S.D. Ohio 2:13-CV-280, (Sep. 30, 2014) ...................... 10

*Bounty Minerals, LLC v. Chesapeake Exploration, LLC*, 5:17cv1695 (N.D. Ohio Dec. 23, 2019)....10

*Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 605 (S.D. Ohio 2003) .................................................38

*Brady v. Stafford,* 115 Ohio St. 67 (1926)....................................................................................40

*Bremiller v. Cleveland Psychiatric Institute*, 195 F.R.D. 1, 19 (N.D. Ohio 2000)............................23

*Brumm v. McDonald & Co. Securities, Inc.* (1992), 78 Ohio App.3d 96, 104.................................41

*Burns Brothers Plumbers, Inc. v. Groves Ventures Co.* (C.A.6, 1969), 412 F.2d 202 ......................41

*Butler v. Sears, Roebuck & Co.,* 727 F.3d 796, 801 (7th Cir. 2013). .............................................40

*Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)............................................................................10

*Cameron v. Hess Corp.*, 974 F.Supp.2d 1042, (S.D. Ohio 2013)....................................................10

*Cmty. Refugee & Immigration Servs. v. Registrar, Ohio Bureau of Motor Vehicles*, 334 F.R.D. 493, 502 (S.D. Ohio 2020)...............................................................................................................12

*Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016).........................................................20

*Comcast v. Behrend*, 569 U.S. 27, 42, 133 S. Ct. 1426, 1437 (2013)........................................39, 40

*Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977) ...................................30

*D.D. v. Wash. County*, No. 2:10-cv-1097, 2011 U.S. Dist. LEXIS 27720, at *6 (S.D. Ohio Mar. 3, 2011) ........................................................................................................................................passim

*Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)..................................................23, 24

*Davis v. Cintas Corp.*, 717 F.3d 476, 487 (6th Cir. 2013).............................................................25

*De Loach v. Philip Morris Companies, Inc.*, 206 F.R.D. 551, 567 (M.D. N.C. 2002)......................43

*Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 364 (6th Cir. 2014) ...............................10

*Eclipse Resources- Ohio, LLC v. Madzia*, 2:15-cv-177 (S.D. March 2, 2016)...................................10

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)..........................................................12, 22

*Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.Ct. 2179, 2184 (2011) .....................................39

*Esplin v. Hirschi*, 402 F.2d 94, 101 (2nd Cir. 1968).......................................................................22

*Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984 ..................................................25

*Gascho v. Global Fitness Holdings, LLC*, 2014 U.S. Dist. LEXIS 46846 (S.D. Ohio, 2014) ............23

*Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980) ........................................................................23

*General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982)..................10, 11

*Gillis v. Respond Power, LLC*, 677 Fed. Appx. 752, 756 (3rd Cir. 2016)....................................11, 27

*Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005) .....................................................24

*Goldson v. Fed. Home Loan Mortg. Corp.*, No. 2:08-cv-844, 2010 U.S. Dist. LEXIS 108206 *26 (S.D. Ohio Sept. 28, 2010)....................................................................................................24, 34

*Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago*, 121 F.R.D. 664, 668 (N.D. Ill. 1998) ........25

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) ...............................................11, 23, 24

*In re Cincinnati Radiation Litig.*, 187 F.R.D. 549, 553 (S.D. Ohio 1999) ........................................35

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ................................30

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 405 (S.D. Ohio 2007)............................27, 38

*In re Norton Healthcare Inc. Ret. Plan*, Case No. 11-501, 2011 U.S. App. LEXIS 26408 at *3 (6th Cir. May 18, 2011)...................................................................................................................22

*In re Revco Securities Litigation*, 142 F.R.D. 659, 668-69 (N.D. Ohio 1992). ................................29

*In re Telectronics Pacing Sys.,* 172 F.R.D. 271, 290 (S.D. Ohio 1997)...........................................44

*In re Welding Fume Products Liability Litigation*, 245 F.R.D. 279, 298 (N.D. Ohio 2007)...............30

*In re Whirlpool Corp.*, 722 F.3d 838, 852 (6th Cir. 2013) ........................................................25, 26

*Janicik v. Prudential Ins. Co. of Am.,* 305 Pa. Super. 120, 451 A.2d 451, 457 (Pa. Super. Ct. 1982) 28

*Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986) ......................................................30

*Jordan v. Global Natural Resources, Inc.,* 102 F.R.D. 45, 49 (S.D. Ohio 1984) ..............................22

*Katz v. Carte Blanche Corp.*, 52 F.R.D. 510, 514 (W.D. Pa. 1971) ...............................................25

*Kerns v. Chesapeake Exploration, LLC*, 762 Fed. Appx. 289 (6th Cir. 2019) .................................17

*Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 440-41 (1st Cir. 2013)........................11, 28

*Miller v. The University of Cincinnati*, 241 F.R.D. 285, 287 (S.D. Ohio 2006)................................21
*Olden v. LaFarge Corp.*, 383 F.3d 495, 507 (6th Cir. 2004)........................................................39, 43
*Pennant Molding, Inc. v. C & J Trucking* (1983), 11 Ohio App.3d 248, 252 .................................41
*Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007)..............25, 27
*Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir. 2011)..................................38
*Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015) ................................................12
*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010).......................................................................................................................................28
*Sandusky Wellness Ctr.,LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017)..4, 20
*Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976) ......................................................29
*Shanesville Investments LLC v. Eclipse Resources I, LP*, 358 F.Supp.3d 665, (S.D. Ohio 2018) ......10
*Slamon v. Carrizo (Marcellus) LLC*, 2020 U.S. Dist. LEXIS 87149 *20-21 (M.D. Pa., May 18, 2020) ...............................................................................................................................................24
*Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) ...............................................23, 27
*Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988).............................................25
*Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir. 2000)....................................................................22
*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..........................................23, 24, 25, 27
*Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974) .........................................9, 11
*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012) ...................................passim
*Zehentbauer Family Land LP v. Chesapeake Exploration, LLC*, 4:15CV2449 (N.D. Ohio, March 30, 2020)............................................................................................................................................10

**Rules**

Fed. R. Civ. P. 23(a)(3)........................................................................................................................26
Fed. R. Civ. P. 23(a)(4)........................................................................................................................28
Fed. R. Civ. P. 23(b)(3).........................................................................................................23, 37, 43
Fed. R. Civ. P. 23(g)(1)(A)(i)...............................................................................................................34
Fed. R. Civ. P. 23(g)(1)(A)(ii)..............................................................................................................35
Fed. R. Civ. P. 23(g)(1)(A)(iii).............................................................................................................35
Fed. R. Civ. P. 23(g)(1)(A)(iv).............................................................................................................35
Fed. R. Civ. P. 23(g)(1)(B)...................................................................................................................35

**Treatises**

Charles Alan Wright & Arthur R. Miller, 7AA *Federal Practice and Procedure* § 1778 (3d ed. 2009). .................................................................................................................................................38
Restatement (Second) of Contracts § 211(2) & cmt. e (Am. Law. Inst. 1981)..................................28
Rubenstein, 3 Newberg on Class Actions § 17.11 ...............................................................................29
Rubenstein, 3 Newberg on Class Actions § 3:31 (5th ed.) ..................................................................26
Rubenstein, 3 Newberg on Class Actions § 3:54 (5th ed.) .............................................................29, 30
Rubenstein, 3 Newberg on Class Actions § 3:59 (5th ed.) ..................................................................30
Rubenstein, 3 Newberg on Class Actions § 3:72 (5th ed.) ..................................................................35
Rubenstein, 3 Newburg on Class Actions §3:12 (5th ed.) ...................................................................23
Rubenstein, Newberg on Class Actions § 4:54 (5th ed.) .....................................................................39
Rubenstein, Newberg on Class Actions § 4:65 (5th ed.). .....................................................................42

**Statutes**

R.C. 1509.01(GG)................................................................................................................................20

## I.    **INTRODUCTION**

This case involves more than twelve hundred and thirty (1,230) putative class members that entered into (or are successors-in-interest to) approximately seven hundred and fifty (750) pooled oil and gas leases that contain identical grant and reservation clauses for mineral interests in Belmont County, Ohio. Plaintiffs, on behalf of themselves and these other similarly situated owners of oil and gas mineral rights located in Belmont County, Ohio, seek in their Amended Complaint[1]: (a) a declaratory judgment that their leases (the subject "Class Lease") specifically and unambiguously reserve all oil and gas mineral rights and estates below the base of the distinct geologic Utica Shale formation; and (b) damages for bad-faith trespass, conversion, and unjust enrichment from the Defendants for knowingly drilling and producing oil and gas from the Point Pleasant Formation, a distinct geologic formation that lies below the base of the Utica Shale.

As this Court aptly stated in its Order denying certain Defendants' Motions to Dismiss, "the salient issue to be determined is the scope of the leases." [Doc. 82 at 7]. The Court stated:

> There are two possible ways that the Court can decide that claim [declaratory judgment]—Defendants had the right to drill the Point Pleasant formation under the terms of the leases, or they did not. If the Court decides the former, the leases encompass the Point Pleasant formation, and the Defendants will have acted within the scope of the leases and will have violated no duty to Plaintiffs. If the Court decides the latter, the leases do not apply, and Defendants' conduct is governed by the common law. [Doc 82 at 10, Page ID 785].

Succinctly, the Defendants' liability in this case turns on an interpretation of the Class Lease, which is a pure question of law for this Court to determine.[2]

---

[1] In keeping with the Sixth Circuit and this Court's prior precedents, Plaintiffs also expressly incorporate by reference facts set forth in their First Amended Complaint and exhibits thereto within this Memorandum and in support of the subject Motion, as well as the evidence cited herein. *See, e.g.*, *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974); *D.D. v. Washington Cty.*, No. 2:10-CV-1097, 2011 U.S. Dist. LEXIS 27720, 2011 WL 830761, at *6 (S.D. Ohio Mar. 3, 2011) (recognizing that the Court can consider a plaintiff's complaint in determining whether "sufficient facts are set forth to allow the Court to certify a class.").

[2] *See e.g. Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 364 (6th Cir. 2014); *Benzel v. Chesapeake Exploration, L.L.C.*, S.D. Ohio 2:13-CV-280, (Sep. 30, 2014); *Eclipse Resources- Ohio, LLC v. Madzia*, 2:15-cv-177

The class action mechanism "is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982), citing *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). "For in such cases 'the class action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.'" *Id.*

Here, Plaintiffs and putative class members are parties (or successors-in-interest) to a Class Lease that contains identical grant and reservation clauses and each of the Plaintiffs and putative class members are identically affected by the same conduct of the Defendants, with liability turning on a question of law. The Defendants knowingly drilled the subject wells below the base of the Utica Shale and into the Point Pleasant Formation, despite the unambiguous limitations and reservations contained in the Class Lease. Defendants' conduct thereby affected (and is affecting) each class member in the same fashion and there are no individual issues which otherwise might impede class certification.

Based on the uniformity of the language in the Class Lease form and common issues involved, this case is ideal for class certification under Rule 23 of the Federal Rules of Civil Procedure. The Court's interpretation of the Class Lease will resolve the predominating question of whether Defendants are liable for trespass and conversion. Moreover, certifying the proposed Class will provide a superior mechanism to litigate Defendants' class-wide unlawful conduct. Courts have recognized that this is especially true when evaluating a common lease form and have

---

(S.D. March 2, 2016); *Zehentbauer Family Land LP v. Chesapeake Exploration, LLC*, 4:15CV2449 (N.D. Ohio, March 30, 2020) (interpreting oil and gas lease royalty provision); *Cameron v. Hess Corp.*, 974 F.Supp.2d 1042, (S.D. Ohio 2013); *Shanesville Investments LLC v. Eclipse Resources I, LP*, 358 F.Supp.3d 665, (S.D. Ohio 2018); and *Bounty Minerals, LLC v. Chesapeake Exploration, LLC*, 5:17cv1695 (N.D. Ohio Dec. 23, 2019).

certified other class actions to ensure a uniform interpretation of standard form contracts throughout the class. *Gillis v. Respond Power, LLC,* 677 Fed. Appx. 752, 756 (3rd Cir. 2016) ("[l]ogically, then, standard form contracts should be interpreted uniformly as to all similarly situated signatories whenever it is reasonable to do so, rendering individual, transaction-specific interpretations inapposite) citing *Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 440-41 (1st Cir. 2013) (lead opinion of equally divided en banc court); Restatement (Second) of Contracts § 211(2) & cmt. e (Am. Law. Inst. 1981). It is against this backdrop that Plaintiffs move for class certification.

## II.  **STANDARD**

The party seeking class certification bears the burden of proof as to the factors set forth in Federal Rule of Civil Procedure 23. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) Although Rule 23(a) requirements are procedural, not jurisdictional, in nature, a party must satisfy the requisite criteria before class certification can be granted. *See D.D. v. Wash. County*, No. 2:10-cv-1097, 2011 U.S. Dist. LEXIS 27720 (S.D. Ohio Mar. 3, 2011)

*Washington Cty.*, No. 2:10-CV-1097, 2011 U.S. Dist. LEXIS 27720, 2011 WL 830761, at *1 (S.D. Ohio Mar. 3, 2011). In order for class certification to be granted, the Court, in its broad discretion[3], must conclude that the four factors stated in Rule 23 – numerosity, commonality, typicality, and adequacy of representation – are satisfied and fall within one of the three types of

---

[3] While a district court has broad discretion on whether to certify a class, the Court is required to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are satisfied before certifying a class. *Falcon*, 457 U.S. at 161. Mere designation as such in the pleadings does not make a class maintainable, *Am. Med. Sys.*, 75 F.3d at 1079, but facts plead and admitted therein may be considered, along with additional evidence in support of class certification.
> Mere repetition of the language of Rule 23(a) is not sufficient. There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled. Maintainability may be determined by the court on the basis of the pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide.

*Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974) (citation omitted).

class actions listed in Rule 23(b). *See*, *Washington Cty.*, 2011 U.S. Dist. LEXIS 27720 at *4; *see also*, *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 537 (6th Cir. 2012).

The United States Supreme Court and the Sixth Circuit have been clear that the focus of the inquiry is on the nature and substance of the claims asserted in the context of the Rule 23 factors, not on the merits of the Plaintiffs' allegations. Generally, "[T]he district court, however, is not permitted to inquire into a case's merits at the class certification stage." *Cmty. Refugee & Immigration Servs. v. Registrar, Ohio Bureau of Motor Vehicles*, 334 F.R.D. 493, 502 (S.D. Ohio 2020), citing, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015), quoting, *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013). "Accordingly, the Court's rigorous analysis must be limited to the substance and structure of Plaintiff's claims, rather than an inquiry into the merits." *Ball v. Kasich*, 2017 U.S. Dist. LEXIS 44800 *6 (S.D. Ohio, Mar. 27, 2017), vacated by, motion granted by, *Ball v. Kasich*, 2017 U.S. Dist. LEXIS 56259 (S.D. Ohio, Apr. 12, 2017).

## III. <u>FACTS PERTINENT TO CLASS CERTIFICATION</u>

From late-2012 to early-2014, Defendant Rice Drilling D, LLC ("Rice") entered into at least one thousand thirty-two (1,032) oil and gas leases with Plaintiffs and putative class members (or their predecessors-in-interest) that contain identical grant and reservation clauses that define the geological formations into which the lessee may drill and produce oil and gas.[4] Plaintiffs each

---

[4] **<u>Exhibit A</u>** – *Corey Peck Depo.*, 51:1-52:22; **<u>Exhibit B</u>** – *Dick Report, pp. 50-51.* Rice was the original lessee for almost all the subject leases, with the exception of about eight leases entered into by Paloma Partners III, LLC, which were then acquired by Defendant Gulfport Energy Corporation. Further, every one of these 1032 leases contain the identical reservation clause, except for one lease that reserves all the oil and gas except from the top of the Utica Shale to the base Utica Shale, which is included in said count.

own certain oil and gas interests in Belmont County, and Plaintiffs (or their predecessors-in-interest) each entered into an oil and gas lease with Defendant Rice on the Class Lease form.[5] After execution of the Class Lease, Defendants drilled wells into, and produced oil and gas from, the Point Pleasant Formation beneath properties subject to Plaintiffs' and putative class members' mineral estates. Defendants' production of oil and gas from the Point Pleasant Formation continues to date.

**A.**     **THE LEASES ONLY GRANTED LESSEES THE RIGHTS TO PRODUCE OIL AND GAS FROM THE MARCELLUS SHALE AND THE UTICA SHALE AND EXPRESSLY RESERVED THE OIL AND GAS IN ALL OTHER FORMATIONS TO THE LESSORS**

Unlike many other oil and gas lease forms that grant lessees the right to produce oil and gas from the surface to the center of the Earth, the unique Class Lease only conveyed to the lessee the rights to produce oil and gas from two distinct geological formations: the Marcellus Shale and the Utica Shale. The Class Lease states:

> **ARTICLE I. GRANT OF LEASE.** Lessor, in consideration of the payments described herein and the covenants and agreements hereafter contained, hereby leases and lets exclusively to the Lessee all the oil, gas, minerals and their constituents (not including coal) underlying the land described below for the sole purpose of exploring for, drilling, operating, producing and gathering the oil, gas, casinghead gasoline and all other gases and their respective vapors, liquid or gaseous hydrocarbons produced in association therewith **other than as reserved unto Lessor below** (herein called "Leased Products"). . . Lessee is prohibited from performing any activity on the Leased Premises which is not expressly permitted pursuant to the terms and conditions of the Lease (emphasis added).

> **ARTICLE I. Lessor's Reserved Rights: Lessor reserves all rights not specifically granted to Lessee in this Lease.** Lessor specifically reserves the rights to all products contained in any formation: (1) from the surface of the Leased Premises to the top of the formation commonly known as the Marcellus Shale, (2) in any and all formations below the base of the Marcellus Shale to the top of the **formation** commonly known as the Utica Shale, and (3) **in all formations below the base of the Utica Shale.** Notwithstanding anything to the contrary, Lessee is specifically granted the right to penetrate and drill through the shallower formations

---

[5] *See*, First Amended Complaint [Doc. 38, ¶¶ 31, 33, 35, 37]; Rice Answer [Doc. 88, ¶¶ 31, 33, 35, 37]. Plaintiffs' pertinent leases are attached to Plaintiffs' Motion for Partial Summary Judgment [Doc. Nos. 154-1 – 154-4].

in order to drill and produce the Leased Products and the Leased Premises…
(emphasis added).

As highlighted, the Lessor under the Class Lease "reserves all rights not specifically granted to Lessee" and further specifically reserved "all products contained . . . in all formations below the base of the Utica Shale." Accordingly, Plaintiffs' (and putative class members') leases grant lessee the right to produce oil and gas from the Marcellus Shale (top to base) and the Utica Shale (top to base), but prohibit the production of oil and gas from any other geological formation, including the Point Pleasant Formation, which lies below the base of the Utica Shale.

Plaintiffs' liability and class certification expert, Dr. Jeffrey Dick, is a geologist with nearly 40 years' experience in the private sector and academic settings. From 2010 to 2020, Dr. Dick served as the Chairperson of the Department of Geological and Environmental Sciences at Youngstown State University, where he continues to teach. Dr. Dick confirms in his August 15, 2021 supplemental expert report that the Utica Shale and the Point Pleasant Formation are geologically separate and distinct rock units with contrasting petrophysical properties and production characteristics.[6] Stratigraphically, the Point Pleasant Formation in Belmont County lies below the base of the Utica Shale.[7]

To illustrate, in 2010, the ODNR Division of Geological Survey published an article detailing an analysis of the geology for wells drilled in eastern Ohio, which included the Type Log on the following page[8]. This Type Log visually illustrates several features important to this case: (1) the Utica Shale and Point Pleasant Formation are recognized as separate geological formations

---

[6] ***Exhibit B*** – *Dick Report*, pp. 2, 4-5. As discussed in more detail below, Defendants' expert, Lawrence Wickstrom – a former geologist for the Ohio Department of Natural Resources ("ODNR"), Division of Geologic Survey – agrees that the Point Pleasant Formation is a geologically distinct rock unit.
[7] *Id.*
[8] Riley, R.A., 2010, A Utica-Point Pleasant type log for eastern Ohio: Ohio Department of Natural Resources, Division of Geological Survey, one sheet (PDF), available at
http://www.dnr.state.oh.us/Portals/10/Energy/Utica/TuscarawasWellRockAnalysis.pdf.

by the ODNR Division of Geological Survey; (2) the Point Pleasant Formation is stratigraphically positioned immediately below the base of the Utica Shale and above the top of the Lexington Limestone in eastern Ohio including Belmont County; and (3) the exact depth of the top and base of each formation can be identified to the foot.



Further, as reflected in the column titled TOC, or Total Organic Content, within the Source Rock Analyses table, and as confirmed by Dr. Dick's analysis, the Point Pleasant Formation and the Utica Shale have distinct geologic characteristics, with the Point Pleasant Formation having superior geologic and production characteristics.[9] Particularly, Dr. Dick points out that Defendants Rice and Gulfport recognize that the Utica Shale acts as an impermeable cap rock that sits on top of the Point Pleasant Formation.[10] The Utica Shale's lack of permeability creates tremendous pressure in the underlying Point Pleasant Formation and results in extremely high initial

---

[9] **_Exhibit B_** – *Dick Report,* pp 20-26*; See also,* **_Exhibit C_** – *Derek Rice Depo.,* pp. 29 ("[the Point Pleasant] has better porosity, better pressure, more gas in place…it's a much more productive interval as you move east.")
[10] **_Exhibit B_** – *Dick Report*, pp. 24-26.

productivity of Point Pleasant wells when that pressure is released.[11] These distinct geologic characteristics make the Point Pleasant Formation the target formation when Defendants drill their wells in Belmont County.[12] Defendants, however, are prohibited from producing oil and gas from the Point Pleasant Formation beneath Plaintiffs' and putative class members' respective properties.

**B.** **PARAMETERS OF THE CLASS – 1,232 CLASS MEMBERS; 31,492 ACRES; 750 CLASS LEASES; 224 POOLED UNITS; AND 365 WELLS**

Dr. Dick has conducted an extensive review of putative class members' leases produced by Defendants (up to August 15, 2021) to confirm that they contain the at-issue grant and reservation clauses. Dr. Dick has also examined well summary reports and well completion records that are publicly available through the ODNR, as well as directional drilling surveys, geophysical well logs, mud logs and geo-steering surveys to determine that the 365 wells at issue have been drilled into and are producing oil and gas from the Point Pleasant Formation. Dr. Dick's analysis, along with an evaluation of the recorded Declarations of Pooling and other documents referenced within Stipulations[13] entered into with Gulfport, XTO and Ascent, allow ascertainment of the following class parameters, subject to further discovery: (1) the number of at-issue leases; (2) the number and identity of putative class members; (3) the number of pooled units; (4) the number of wells drilled into or below the Point Pleasant Formation beneath the properties of putative class members in pooled units; and (5) the number of acres under which unlawful wells were drilled.

---

[11] *Id.*

[12] ***Exhibit C*** – *Derek Rice Depo.*, pp. 26-27; ***Exhibit D*** – *Kelly Sanders Depo.*, p. 53; ***Exhibit V*** – *Lester Zitkus (Gulfport 30(b)(6) designee) Depo.*, pp. 58, 70-72; ***Exhibit X*** – *Dan Hensley (Ascent 30(b)(6) designee) Depo. pp.* 31-32, 36-37 (note that portions are redacted as Defendant Ascent suggests they are confidential – Plaintiffs may seek further declassification); ***Exhibit B*** – *Dick Report, pp 20-26.*

[13] *See* Doc. Nos. 353, 354, and 368.

Dr. Dick determined there are a total of 1,032 Class Leases that contain the identical Grant Clause and Reservation Clause[14], with a total of approximately 1,670 original lessors.[15] While there are 1,032 Class Leases, not all of these Class Leases have been included in pooled units[16] with producing wells. To date, based on publicly recorded Declarations of Pooling filed by Defendant Rice[17] and the Stipulations of Facts between Plaintiffs and Defendants XTO, Gulfport, and Ascent,[18] there are 750 Class Leases that have been included in pooled units, representing 31,492 acres of land in pooled units owned by putative class members in Belmont County, wherein the Defendants have drilled at least 365 wells into, and are producing oil and gas from, the Point Pleasant Formation (or below).[19]

There were 1,232 original lessors that signed the said 750 Class Leases included in pooled units.[20] Each of these 1,232 original lessors is a putative class member, unless they have subsequently transferred or conveyed their interests in the lease or property. Any transfer or conveyance of the property or lease by the original lessor is known to Defendants as they pay monthly royalties, and said transfer is reflected in a division of interest or other document.[21] Thus, the identity of each class member is known to the Defendants.

---

[14] One lease does not include rights to the Marcellus Shale formation, but otherwise contains the same reservation language at issue related to the Utica Shale.

[15] ***Exhibit B*** – *Dick Report*, p. 50. A count of the unique lessors was performed after removing duplicate individuals or entities who entered into multiple leases with the original lessors. Any transfer or conveyance of the property or lease by the original lessor is known to Defendants as they pay monthly royalties, and said transfer is reflected in a division of interest or other document. *See, e.g.,* ***Exhibit A*** – *Corey Peck,* 57:20-58:3.

[16] *See Kerns v. Chesapeake Exploration, LLC,* 762 Fed. Appx. 289 (6th Cir 2019) for discussion of pooling and unitization. When forming a pooled unit, operators report the size and shape of the unit and identify all parcels and the acreage each parcel contributes to the unit, typically through a Declaration of Pooled Unit ("DPU"). Alternatively, in the case of units formed through the state's Unitization process, an Order by the Chief ("Order") specifies this information.

[17] Said Declarations are attached as ***Exhibit E***.

[18] Doc. Nos. 353, 354, and 368.

[19] ***Exhibit B*** – *Dick Report*, pp. 2, 28-40. Upon information and belief, the number of wells at issue has increased by about twenty (20) in the three and a half months since Dr. Dick submitted his report as Defendants have placed new Point Pleasant wells into production.

[20] The number of class members is based on the original lessors of the leases, but to the extent that a lease or property has been assigned or otherwise transferred by the original lessor, the current lessor may be unknown to Plaintiffs.

[21] *See, e.g.,* ***Exhibit A*** – *Corey Peck,* 57:20-58:3.

Based on current discovery and the Stipulations, there are 1,657 parcels of land comprising 31,492 acres of land subject to the Class Lease that have been included in 224 pooled units wherein 365 wells have been unlawfully drilled below the base of the Utica Shale. Specifically, as follows:

1. Defendant Ascent has included 73 parcels of land totaling 1,348 acres[22] subject to the Class Lease form in thirty-four (34) pooled units[23] wherein it has drilled and completed 62 wells[24] into the Point Pleasant Formation and is producing oil and gas therefrom[25];

2. Defendant Gulfport has included 301 parcels of land totaling 6,771 acres[26] subject to the Class Lease form in sixty-three (63) pooled units[27] wherein it has drilled and completed 133 wells[28] into the Point Pleasant Formation and is producing oil and gas therefrom [29];

3. Defendant XTO has included 75 parcels of land totaling 542 acres[30] subject to the Class Lease form in nineteen (19) pooled units[31] wherein it has drilled and completed 28 wells[32] into the Point Pleasant Formation and is producing oil and gas therefrom [33]; and

4. Defendant Rice has included 1,208 parcels of land totaling 22,831 acres[34] subject to the Class Lease form in one hundred and eight (108) pooled units[35] wherein it has drilled and completed 142 wells into the Point Pleasant Formation and is producing oil and gas therefrom. [36]

As such, there are at 1,232 putative class members owning 31,492 acres of land that has been unlawfully trespassed upon by the Defendants.

---

[22] *See* Doc. No. 354, PAGEID #4365-4367.
[23] *See* Doc. No. 354, PAGEID #4369.
[24] Doc. No. 354, PAGEID #4363.
[25] ***Exhibit B*** – *Dick Report*, pp. 29-30.
[26] *See* Doc. No. 353, PAGEID #4345-4355.
[27] *Id.*
[28] *Id.* at, PAGEID #4341.
[29] ***Exhibit B*** – *Dick Report*, pp. 31-34.
[30] *See* Doc. No. 368, PAGEID #4470-4472.
[31] *Id.* at, PAGEID #4473.
[32] *Id.* at, PAGEID #4469.
[33] ***Exhibit B*** – *Dick Report*, pp. 39-40.
[34] See ***Exhibit E*** – Rice Declarations of Pooling
[35] See ***Exhibit E***.
[36] ***Exhibit B*** – *Dick Repor*t, pp. 35-38.

C.   **LIABILITY TURNS ON LEASE INTERPRETATION OF A STANDARDIZED CONTRACT AS DEFENDANTS DO NOT CONTEST THE WELLS ARE IN THE POINT PLEASANT FORMATION**

The instant issue in controversy is whether the subject Class Lease permits the Defendants to develop the Point Pleasant geological formation which lies below the base of the Utica Shale geological formation. Defendants contend that the subject leases provide such right, while the Plaintiffs contend that the plain and unambiguous language of the leases does not provide that right.

While the parties disagree on the interpretation of the lease language, the parties and their respective experts agree that the Utica Shale and Point Pleasant Formation are separate geological formations. Defendants' liability expert, Larry Wickstrom, testified that the Utica Shale and the Point Pleasant Formations are separate and distinct geological formations.[37] Mr. Wickstrom further testified he could identify the top and base of the Utica Shale and he could identify the top and base of the Point Pleasant Formation.[38] Mr. Wickstrom indicated that the Utica Shale is approximately one hundred ten feet thick, and the Point Pleasant lies below the Utica Shale and is approximately fifty to seventy feet thick in Belmont County.[39] Mr. Wickstrom also testified he has not studied and is not opining on the depth or producing geological formation of any of the 365 wells at issue.[40] Likewise, Defendants' other liability expert, Dr. Robert Chase, believes all the wells are in the Point Pleasant Formation, although he did not study the well depths and is relying on Dr. Dick's analysis.[41] Dr. Dick, of course, has concluded that all wells identified herein have been drilled into and are producing gas from the Point Pleasant Formation.[42]

---

[37] ***Exhibit F*** – *Wickstrom Depo.,* 40:5-9.
[38] *Id. at* 40:13-23.
[39] *Id. at* 42:6-17.
[40] *Id. at* 35:14-36:4.
[41] ***Exhibit G*** – *Chase Depo.,* 71:13-72:4.
[42] ***Exhibit B*** – *Dick Report*, pp. 29-40. *See also*, ***Exhibit H*** – excerpt of Well Completion Records reviewed.

In addition to the opinions of the experts discussed above, the parties agree that the Marcellus Shale, the Utica Shale, and the Point Pleasant Formation are distinct geologic formations beneath Plaintiffs' properties. Defendants have represented under oath and through filings with the ODNR[43] that the Point Pleasant Formation is a separate and distinct formation that lies below the base of the Utica Shale and identified the exact depth of the top and base of the Utica Shale formation when they drilled their wells below Plaintiffs' properties.

Clearly, there is no material dispute that each of the 365 wells have been drilled into the Point Pleasant Formation. Rather, Defendants' liability comes down to this Court's interpretation of the Grant and Reservation Clauses and its determination of whether the lessors conveyed rights to the Point Pleasant Formation to the Defendants in the Class Lease.

## IV.  THE CLASS DEFINITION AND ASCERTAINABILITY OF THE CLASS

Plaintiffs' proposed class, as defined,[44] is readily ascertainable under Rule 23 of the Federal Rules of Civil Procedure. The Sixth Circuit has held that in addition to satisfying the Rule 23(a) prerequisites, "Rule 23(b)(3) classes must also meet an implied ascertainability requirement." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017) (citing *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016) ). A class is properly defined

---

[43] The ODNR requires an oil and gas company to submit (under certification of truth and accuracy) a Well Completion Record (Form 8) after drilling of a new well in Ohio. The Well Completion Record requires the oil and gas company to identify the depth of the "top and base" of certain geological formation(s) encountered during drilling. Effective September 10, 2012, the Ohio Legislature recognized the distinction between the geologic layers, defining a "horizontal well" as "a well that is drilled for the production of oil or gas in which the wellbore reaches a horizontal or near horizontal position in the Point Pleasant, Utica, or Marcellus formation and the well is stimulated." R.C. 1509.01(GG) (eff. 9/10/2012). In 2012, the ODNR, Division of Oil and Gas Resource Management amended its Well Completion Record to separately identify the Point Pleasant formation. Thereafter, the Well Completion Record form indicates that the Utica Shale formation is distinctly separate from and lies above the Point Pleasant Formation. *See* Exhibit H. *See, also **Exhibit I*** at p. 7, being Ascent's predecessor in title Application for Unit Operations, and testimony of its witness Michael Hale, geologist; ***Exhibit J*** at 15, being XTO's Application for Unit Operations, and testimony of its witness Jeff Jackson, geologist; ***Exhibit K*** at p. 21, being Gulfport's Application for Unit Operations, and testimony of its Michael Buckner, geologist; and ***Exhibit L*** at p. 45, being Rice's transcript of hearing on Application for Unit Operations, and its witness Derek Rice, geologist.
[44] *See*, First Amended Complaint, Doc. 38 at 22-23.

when it: (1) specifies a particular group that was harmed during a particular time frame, in a particular locale, in a particular way; and (2) allows a court to ascertain its membership in some objective manner. *Miller v. The University of Cincinnati*, 241 F.R.D. 285, 287 (S.D. Ohio 2006), citing *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 477 (S.D. Ohio 2004). Plaintiffs' proposed class does just that:

> All persons or entities who own oil and natural gas mineral interests in Belmont County, Ohio that entered into or who are parties or beneficiaries of oil and gas leases entered into with one or more of the Defendants named herein; in which leases the Lessor retained all rights to the formations and the hydrocarbon products contained in the formations below the base of the Utica Shale formation; where one or more of Defendants Rice, Gulfport, XTO, and Ascent have drilled and fractured their well(s) below the base of the Utica Shale formation; and where one or more of Defendants Rice, Gulfport, XTO, and Ascent are producing oil, natural gas, or other hydrocarbons from formations below the base of the Utica Shale formation without agreement from the Lessor.

Succinctly, the proposed Class defines the "who", "where" and "how" as it relates to individuals or entities identically affected by Defendants' unlawful conduct. As for the "when", Plaintiffs and the putative class members (or their predecessors-in-interest) each entered into a Class Lease between late-2012 and early-2014. After execution of the Class Lease, Defendants drilled into, and produced oil and gas from, the Point Pleasant Formation of each Plaintiff's and putative class member's mineral estate. Defendants' unlawful production of oil and gas from Plaintiffs' and the putative class members' mineral estates continues to this day.

The class is objectively defined in a manner that does not reference the merits of Plaintiffs' claims and implicates the claims of all class members equally. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012) ("The criteria referenced in the class definition are objective and are not necessarily determinative of the ultimate issue of liability."). The definition focuses on the objective language of the leases as well as the final location of the well bore, all factors easily defined as common to the proposed class. If Plaintiffs' claim that the lease language reserved the

Point Pleasant and the Defendants collectively trespassed fails, "it fails for the class." *In re Norton Healthcare Inc. Ret. Plan*, Case No. 11-501, 2011 U.S. App. LEXIS 26408 at *3 (6th Cir. May 18, 2011).

Through extensive discovery in this case, the parameters of the class are well known even at this stage. For example, the Defendants have produced a total of 1,032 unique leases containing the identical Grant Clause and Reservation Clause, with 750 of those said leases included in 224 pooled units. There were 1,232 original lessors (or their successors-in-interest) on the 750 leases, which are all putative class members. To the extent that these original lessors have sold the property or leases, the assignees are known to the Defendants as they are paying them monthly royalties.

## V.    RULE 23(a) ANALYSIS

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). *See also, Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir. 2000). The district court maintains substantial discretion in determining whether to certify a class, as it possesses the inherent power to manage and control its own pending litigation. *Stout*, 228 F.3d at 716. Any doubts concerning the propriety of a class certification should be resolved in favor of upholding the class. *Jordan v. Global Natural Resources, Inc.,* 102 F.R.D. 45, 49 (S.D. Ohio 1984), citing, *Esplin v. Hirschi*, 402 F.2d 94, 101 (2nd Cir. 1968) ("The interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing the class action.").

"To be certified, a class must satisfy all four of the Rule 23(a) prerequisites - numerosity, commonality, typicality, and adequate representation - and fall within one of the three types of class actions listed in Rule 23(b)." *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 537 (6th Cir.

2012), citing, *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc). Plaintiffs must prove that "there are *in fact* sufficiently numerous parties [and] common questions of law or fact," and the required "rigorous analysis" may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374, 390 (2011). "The trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23." *In re Am. Med. Sys.*, 75 F.3d at 1079.

In this action, Plaintiffs seek class certification under Rule 23(b)(3), which requires a finding that "the questions of law or fact common to class members predominate over any questions affecting only individual members" and that the class action is "superior to other available methods" to adjudicate the controversy fairly and efficiently. *Gascho v. Global Fitness Holdings, LLC*, 2014 U.S. Dist. LEXIS 46846 (S.D. Ohio, 2014), citing, Fed. R. Civ. P. 23(b)(3).

### A. NUMEROSITY

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).[45] "[T]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). Although "there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (*quoting In re Am. Med. Sys.*, 75 F.3d at 1079). Courts should evaluate a number of factors pertaining to the propriety of joining all potential class members, including the kind of action at issue, the size and scope of individual claims and the inconvenience of conducting individual lawsuits. *Bremiller v. Cleveland Psychiatric Institute*, 195 F.R.D. 1, 19 (N.D. Ohio 2000)(citations

---

[45] This issue is generally obvious, easily met, ordinarily receives only summary treatment, and is often uncontested. *See* Rubenstein, 3 Newburg on Class Actions §3:12 (5th ed.).

omitted). However, "impracticability of joinder must be positively shown, and cannot be speculative." *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005) (internal quotation marks omitted). As the Court noted, however, "when the class size reaches substantial numbers, the impracticability requirement is usually satisfied based on numbers alone." *Washington Cnty.*, 2011 U.S. Dist. LEXIS 27720 at *6 (Sargus, C.J.).

Here, based on current discovery, there are 1,232 class members with 750 Class Leases at issue. Such numbers readily satisfy Rule 23(a)(1). The Sixth Circuit has held that a class of thousands satisfies the numerosity requirement. *See Daffin*, 458 F.3d at 552. This Court has previously held that a class size of 100 members satisfied the numerosity requirement and even cited a case holding that a putative class of thirty-five members satisfied numerosity. *See Goldson*, 2010 U.S. Dist. LEXIS 108206, at *20 (Sargus, C.J.), citing, *Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974). In a recent oil and gas case involving alleged royalty underpayments, another district court found that putative class sizes of 193 and 253 satisfied numerosity. *See*, *Slamon v. Carrizo (Marcellus) LLC*, 2020 U.S. Dist. LEXIS 87149 *20-21 (M.D. Pa., May 18, 2020). The Court should similarly find that this case satisfies the numerosity prerequisite.

### B. COMMONALITY

Rule 23(a)(2) of the Federal Rules of Civil Procedure requires plaintiffs to prove that there are questions of law or fact common to the class…." *Young*, 693 F. 3d at 542. "Their claims must depend on a common contention…[which is] of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "This inquiry focuses on whether a class action will generate common answers that are likely to drive

24

resolution of the lawsuit." *In re Whirlpool Corp.*, 722 F.3d 838, 852 (6th Cir. 2013) (citing *Dukes*, *supra*). *See also, Davis v. Cintas Corp.*, 717 F.3d 476, 487 (6th Cir. 2013).

"The commonality test is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *In re Am. Med. Sys.*, 75 F.3d at 1083 (internal quotations omitted). *See also*, *Dukes*, 564 U.S. at 358 ("We quite agree that for purposes of Rule 23(a)(2), '[e]ven a single [common] question' will do[.]") (internal quotations and citations omitted; alterations in original); *In re Whirlpool Corp.*, 722 F.3d at 853. "Where a question of law refers to a standardized conduct of the defendants toward members of a proposed class, a common nucleus of operative facts is typically presented and the commonality requirement . . . is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984), citing *Katz v. Carte Blanche Corp.*, 52 F.R.D. 510, 514 (W.D. Pa. 1971). Claims arising out of standard documents present a "classic case for treatment as a class action." *Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago*, 121 F.R.D. 664, 668 (N.D. Ill. 1998). "The mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Powers v. Hamilton Cnty. Pub. Defender Comm'n,* 501 F.3d 592, 619 (6th Cir. 2007), quoting, *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988).

This case presents common issues of law and fact that satisfy the requirements of Rule 23(a)(2). The predominant legal issue in this case is whether the applicable lease language reserved the oil and gas in the formations below the base of the Utica Shale to Plaintiffs and the putative class members. Plaintiffs and the putative class members (or their predecessors-in-interest) entered into leases with the Defendants that utilized identical granting and reservation language. Under Ohio law, the Class Leases reserved to Plaintiffs and putative class members the oil and gas in all

25

formations, other than the Marcellus and Utica Shale formations. Applying the clear and unambiguous language of the Class Leases, Defendants do not have the right to extract oil and gas from the Point Pleasant Formation with respect to all putative class members.

"To demonstrate commonality, plaintiffs must show that class members have suffered the same injury." *In re Whirlpool Corp.*, 722 F.3d at 852, citing, *Dukes*, 131 S. Ct. at 2551. That test is easily met here. Each of the 750 leases have an identical Reservation Clause, and each of the 365 wells have been drilled into the Point Pleasant Formations and Defendants have extracted oil and gas therefrom.[46]

The common issues, therefore, include the following: (1) whether the lease language (by definition identical to all Class Leases) reserved to Plaintiffs and the putative class members the oil and gas within the Point Pleasant Formation; and (2) whether Defendants drilled into (penetrated) and extracted oil and gas from the Point Pleasant Formation subject to the Class Leases. If true, Plaintiffs and the putative class members suffered the same injury and resolution of the common questions will resolve Plaintiffs' and the putative class members' claims. If the answer to either of these questions is "no", Plaintiffs and the putative class members still suffer the same fate.

### C. TYPICALITY

Pursuant to Rule 23(a)(3) of the Federal Rules of Civil Procedure, Plaintiffs must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality overlaps with commonality because they both measure the degree of interrelatedness between the claims in a class action. Rubenstein, 3 Newberg on Class Actions § 3:31 (5th ed.). "Both serve as guideposts for determining whether

---

[46] ***Exhibit B*** – *Dick Report*, pp. 29-40.

under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claims and class claims are so interrelated that the class member will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5, quoting, *Falcon*, 457 U.S. at 157-58 n.13

A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Powers*, 501 F.3d at 618, quoting, *American Medical Sys.*, 75 F.3d at 1082 (internal quotation marks omitted); *see also*, *Ball v. Kasich*, 307 F. Supp. 3d 701, 719 (S.D. Ohio 2018). This requirement ensures that the court may properly attribute a collective nature to the challenged conduct. *Id.* "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399. The representative's interests must be aligned with those of the representative group such that the representative's pursuit of its own claims advances the interests of the class. *Id.* "Courts liberally construe the typicality requirement." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 405 (S.D. Ohio 2007) (Frost, J.).

In this case, Plaintiffs and putative class members are pursuing the same legal theory based upon the same underlying factual pattern. Each putative class member's claim, just as Plaintiffs', is *identical* as the leases at issue contain the same reservation clause, making the question to be decided the same for each. Defendants' conduct as to each class member is the same, as is the legal theory underlying Plaintiffs' claim. This matters because, as the Court has previously held, "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Washington Cnty.*, 2011 U.S. Dist. LEXIS 27720 at *9 (Sargus, C.J.).

As recently stated in *Gillis v. Respond Power, LLC,* "standard form contracts should be interpreted uniformly as to all similarly situated signatories whenever it is reasonable to do so, rendering individual, transaction-specific interpretations inapposite." *Gillis*, 677 Fed. Appx. 752, 756 (3rd Cir. 2017), citing, *Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 440-41 (1st Cir. 2013) (lead opinion of equally divided en banc court); Restatement (Second) of Contracts § 211(2) & cmt. e (Am. Law. Inst. 1981). Because form contracts should be interpreted uniformly as to all signatories, federal courts have recognized that claims involving the interpretation of standard form contracts are particularly well-suited for class treatment. *Id. See, e.g.*, *Kolbe*, 738 F.3d at 441 (listing federal courts that have "certified classes for contract disputes over form contracts because the form contracts are interpreted uniformly across members of the class, and . . . the outcome does not depend on extrinsic evidence that would be different for each putative class member"); *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010) (denying certification due to variation in material terms across plaintiffs' contracts, but noting that "[i]t is the form contract, executed under like conditions by all class members, that best facilitates class treatment"); *Janicik v. Prudential Ins. Co. of Am.,* 305 Pa. Super. 120, 451 A.2d 451, 457 (Pa. Super. Ct. 1982) ("Claims arising from interpretations of a form contract generally give rise to common questions.").

This common nucleus of facts and course of conduct can be reviewed by this Court under a common legal theory and will allow the adjudication of this case on behalf of the entire class. Because the putative class representatives seek to prosecute the exact same claim for themselves and the absent class members under an identical legal theory, typicality is easily established. The claims of Plaintiffs are typical because what is needed to prove trespass, conversion and unjust enrichment as to the named Plaintiffs is the same as what is needed to prove such claims for all

Class Members. Rubenstein, 3 Newberg on Class Actions § 17.11. The typicality requirement is satisfied.

### D.   THE REPRESENTATIVE PARTIES WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE CLASS

Rule 23(a)(4) requires that "the parties will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4).

> Although the term "party" is usually used to refer to the litigants themselves, in interpreting Rule 24(a), the courts have used it as a mandate for scrutinizing both the litigants proposed to serve as class representatives and the lawyers proposed to serve as class counsel. Thus the standard for adequacy splits into two prongs: adequacy of the proposed representative and adequacy of the attorney seeking appointment as counsel.

Rubenstein, 3 Newberg on Class Actions § 3:54 (5th ed.). *See also*, *In re Revco Securities Litigation*, 142 F.R.D. 659, 668-69 (N.D. Ohio 1992).

The Sixth Circuit has long recognized that this prerequisite involves two criteria: (1) "[t]he representative must have common interests with unnamed members of the class," and (2) "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). The Court has previously explained that "the standard for adequacy of representation overlaps significantly with the commonality and typicality requirements." *Ball*, 307 F. Supp. 3d at 719 (Sargus, C.J.). Notably, the Court held that "[c]lass representatives are adequate when it appears that they will vigorously prosecute the interests of the class, which usually will be the case if the representatives are part of the class, possess the same interest, and suffer the same injury as the class members." *Id.*

Satisfaction of this requisite mandates that the class representative may not have interests antagonistic to the absent class members and that the representative party's attorneys must be qualified, experienced, and generally able to conduct the litigation. *In re Welding Fume Products*

*Liability Litigation*, 245 F.R.D. 279, 298 (N.D. Ohio 2007), citing *Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977).

Plaintiffs meet this requirement. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members. *Young*, 693 F.3d at 543, quoting, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997)). "Class representatives satisfy the adequacy requirement unless they have 'an insufficient stake in the outcome or interests antagonistic to the unnamed members.'" *Ahern v. Fibreboard Corp.*, 162 F.R.D. 505, 525 (E.D. Tex. 1995) quoting *Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986). "[S]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes." *Id.*, quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981). When the class representatives' claims are for the same type of relief as those of the class, there is no obstacle to them being an adequate representative. Rubenstein, 3 Newberg on Class Actions § 3:59 (5th ed.).  The size of Plaintiffs' individual claims as compared to other class members is immaterial to adequacy.  *Id.*

Plaintiffs are lessors who have no conflict with the class and each share interests common to the class. Plaintiffs have appeared at their depositions, answered discovery requests, assisted counsel in the prosecution of the action and subserve their own interests for those of the Class and will continue to do so. The named Plaintiffs are fully aware of their fiduciary obligation to the absent Class Members that they seek to represent.

For example, Plaintiff Bruce Schuster understood his role as a class representative for "other people with similar terminology . . . our case is going to represent what happens with theirs

under the same terms."[47] He further testified his duties as a representative are to "tell the truth . . . represent them in the best of my ability with nothing in it for me to gain."[48] Mr. Schuster reviewed the complaint before it was filed[49] and prepared and participated in discovery.[50] Mr. Schuster further testified aptly about the claims of trespass, conversion, and unjust enrichment in this case.[51] Mr. Schuster talked with other attorneys, but felt Attorney Wilson had the requisite understanding of the oil and gas industry prior to hiring him for this case.[52] Plaintiff Jennifer Schuster, spouse of Bruce Schuster, provided similar testimony to her husband.[53] Mrs. Schuster testified that the claims in the lawsuit involved "when we signed up for the Utica and Marcellus, and that they were taking the Point Pleasant without permission."[54]

Plaintiff Brent Butler testified he understood his responsibilities as a class representative to mean that he is a "representative of a group of people that looking for, obviously, compensation, but I want to say the fair – the fair interpretation of a contract."[55] Mr. Butler discussed the basis for claims in the lawsuit as being "they went into areas they weren't allowed to on the lease."[56] Mr. Butler testified he participated in the preparation of his discovery responses.[57] Mr. Butler testified he could fairly and adequately represent the class's interests.[58]

Plaintiff Doreen Butler, spouse of Brent Butler, agreed with her husband's testimony and adopted his testimony as her own.[59] Mrs. Butler testified that the basis for the lawsuit was that "the

---

[47] ***Exhibit M*** – *B. Schuster Depo.* 134:9-18.
[48] *Id.* at 134:19-135:2.
[49] *Id.* at 137:24-138:2.
[50] *Id.* at 76:1-25.
[51] *Id.* at 162:25-165:15.
[52] *Id.* at 157:13-25.
[53] ***Exhibit N*** – *J. Schuster Depo.* 19:9-18, 122:5-16, 123:8-22.
[54] *Id.* at 174:9-19.
[55] ***Exhibit O*** – *B. Butler Depo.* 20:4-8; 91:2-16.
[56] *Id.* at 65:25-66:3, 74:3-7; 126:7-10.
[57] *Id.* at 78:5-79:1; 128:7-15.
[58] *Id.* at 93:3-9.
[59] ***Exhibit P*** – *D. Butler Depo.* 10:21-11:9.

gas and oil and company took more than what was specified in the lease that they were allowed to take" and "we should be compensated for what they took that the lease did not specifically allow them to take."[60] Mrs. Butler testified "they're doing what they're not supposed to be doing, then they need to compensate not only us, but the other people that involved in the suit, you know, compensate them for what they're taking that they weren't allowed to take."[61] Mrs. Butler aptly described the basis for her trespass, conversion, and unjust enrichment claim against the Defendants as "the claim is that more was taken from the property than what the lease allowed them to take, and that we need to be compensated for the additional oil and gas that was taken from the property."[62] Mrs. Butler testified she understood she may be a class representative, which "means we are representing other people that are in the same situation that we are in."[63] Mrs. Butler testified she can fairly and adequately represent the class's interest.[64] Mrs. Butler testified she has hired competent class counsel to assist.[65]

Plaintiff Ryan Feiock testified that he prepared and participated in discovery in the case.[66] Mr. Feiock testified that the basis for the claims brought is that "Rice Energy drilled below the Utica when they had no permission. They trespassed underneath my property."[67] Mr. Feiock further stated "[t]hat they [Rice] were given a certain point they were allowed to go to and they went beyond that point."[68] Mr. Feiock testified that he may be a potential class representative, which means "I have a lease that is similar to everybody else's."[69] Mr. Feiock testified he will

---

[60] *Id.* at 29:19-30:1.
[61] *Id.* at 36:1-6.
[62] *Id.* at 41:1-6.
[63] *Id.* at 44:18-25.
[64] *Id.* at 46:12-14.
[65] *Id.* at 46:15-18.
[66] **_Exhibit Q_** – *R. Feiock Depo.*, at 56:20-24.
[67] *Id*. at 91:17-19.
[68] *Id*. at 121:13-19.
[69] *Id*. at 134:17-23.

make decisions in the best interest of the class, and he will fairly and adequately represent the class's interests.[70] Mr. Feiock testified he has hired competent counsel to assist him.[71]

Plaintiff Cheryl Feiock, spouse of Ryan Feiock, testified that her testimony was similar to her husband's and she adopted his testimony.[72] Mrs. Feiock testified she understands she is a potential class representative, which means "we are representing everybody in the group," and she will fairly and adequately represent the class's interest.[73] Mrs. Feiock also testified she has hired competent counsel to represent her interests.[74] Mrs. Feiock testified that the basis of the claims is "because Rice has come in and taken that gas from that formation [Point Pleasant Formation] so it leaves us – I mean, we can no longer lease it, sell it, do anything because they have actually taken it without permission from us to take it."[75] She further testified this is a "trespass case because Rice has taken gas and – from a –from us that they were not given permission to."[76]

Plaintiff J&R Passmore, LLC's designated corporate representative, Sherrie Passmore, testified that she reviewed the Complaint in this case and several of the exhibits, and has participated in discovery.[77] Ms. Passmore further attests she researched the claims before filing this lawsuit and determined as an attorney herself that there was merit in the lawsuit.[78] Ms. Passmore testified she understands she has trespass claims against all the different owners of each well that have trespassed under J&R Passmore property.[79] Ms. Passmore testified the basis for

---

[70] *Id*. at 134:24-135:7.
[71] *Id*. at 135:7-11.
[72] ***Exhibit R*** – *C. Feiock Depo.* 7:11-10:15.
[73] *Id*. at 76:10-23.
[74] *Id*. at 76:24-77:3.
[75] *Id*. at 71:11-21.
[76] *Id*. at 78:2-5.
[77] ***Exhibit S*** – *Passmore Depo*. 271:17-276:25 and 104:7-112:10.
[78] *Id*. at 267:19-269:11.
[79] *Id*. at 280:21-282:4; 289:1-23.

J&R Passmore, LLC's claim is that "[t]hey drilled into the Point Pleasant formation on acres we held in Belmont County, without our permission, and produced oil and gas therefrom."[80]

Given the evidence described, there is no doubt that Bruce Schuster, Jennifer Schuster, Brent Butler, Doreen Butler, Ryan Feiock, Cheryl Feiock, and J&R Passmore, LLC can adequately serve as Class Representatives. They all understand the nature of their claims and have actively participated in the litigation. They also understand their respective commitments to advance the interests of absent class members. There is no conflict of interest between any of the proposed representatives and the class they seek to represent. *See Goldson v. Fed. Home Loan Mortg. Corp.*, No. 2:08-cv-844, 2010 U.S. Dist. LEXIS 108206 *26 (S.D. Ohio Sept. 28, 2010) (Sargus, C.J.) ("The adequacy requirement 'serves to uncover conflicts of interest between named parties and the class they seek to represent."), quoting, *Beattie*, 511 F.3d at 562). Instead, the evidence establishes that the proposed class representatives would be part of the class, would possess the same interest as the respective members, and would suffer the same injury as the other class members. *See Id.* ("A class representative must be part of the class and possess the same interest and suffer the injury as the class members."), quoting, *Beattie*, 511 F.3d at 562).

With regard to the adequacy of class counsel, either viewed as a component of the Rule 23(a)(4) adequacy prong or as a related inquiry under Rule 23(g)(1), there should also be no question that the class's legal representation is adequate. In reaching this conclusion, the Court "must consider . . . the work counsel has done in identifying or investigating potential claims in this action." Fed. R. Civ. P. 23(g)(1)(A)(i). Here, Plaintiffs' counsel have spent more than four years investigating the facts, employing consultants and experts, and analyzing the data and the law to develop and prosecute the case. Counsel have also taken and defended more than twenty-

---

[80] *Id*. at 289:5-15.

five depositions in this litigation; conducted extensive discovery, including third-party discovery, totaling production and review of approximately 109,000 documents with 1,450,000 pages; defended against multiple motions to dismiss; and prosecuted numerous discovery related issues. This has involved, and will continue to involve, the expenditure of considerable time, effort, and funds from counsel - all of which inform the Court's mandated consideration of "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(iv).

The Court must also consider whether the Class Representative will vigorously prosecute the class's interest through qualified counsel. *In re Cincinnati Radiation Litig.*, 187 F.R.D. 549, 553 (S.D. Ohio 1999). Rule 23(a)(4) asks whether counsel are "qualified, experienced, and generally able to conduct the litigation" and whether counsel will "vigorously prosecute the interests of the class." Rubenstein, 3 Newberg on Class Actions § 3:72 (5th ed.); Fed. R. Civ. P. 23(g)(1)(A)(ii) and (iii) and Fed. R. Civ. P. 23(g)(1)(B). "These standards are easily met, with members of the bar in good standing typically deemed qualified and competent to represent a class absent evidence to the contrary." *Id*.

Attorney Craig Wilson of the firm C.J. Wilson Law, LLC focuses his practice solely on representing Ohio landowners with oil and gas issues and is one of the very few attorneys who exclusively represents mineral owners. Attorney Wilson is engaged in numerous oil and gas cases throughout eastern Ohio and the Southern District of Ohio across a broad range of issues, including eminent domain, breach of contract claims, and mineral ownership disputes. Attorney Wilson has prosecuted a nearly identical case to this one, captioned *TERA LLC v. Rice Drilling D, LLC, et al.,* Belmont County Common Pleas Court, resulting in a jury verdict for unlawful trespass of $40.1 million against Defendant Rice and Defendant Gulfport. Attorney Wilson has also been co-counsel on a similar putative class action mineral trespass case, *see Wilson, et al., v. Columbia Gas*

*Transmission, LLC,* Case 12-cv-01203, S.D. Ohio, resulting in a favorable settlement to the clients. Attorney Wilson was also selected to and has served as an arbitrator for oil and gas related matters through the American Arbitration Association. Lastly, Attorney Wilson has been selected as a Rising Star in 2020 and 2021 from Thomson Reuters Super Lawyers.

Attorney John McCuskey is a founding member of Shuman McCuskey Slicer PLLC. Mr. McCuskey is a former Justice of the Supreme Court of Appeals of West Virginia. Mr. McCuskey has focused his forty (40) year career as an active litigator in professional negligence defense, coal, gas and energy-related law, and has served as an arbitrator, mediator and expert witness on many occasions. Attorney McCuskey has achieved an AV Preeminent rating from Martindale-Hubbell.

Attorney Brian Warner of Shuman McCuskey Slicer PLLC is the managing member of the firm's Morgantown, West Virginia office and has eighteen (18) years of litigation experience. Mr. Warner devotes a substantial portion of his practice to litigation of insurance defense matters. In the last eight years, Mr. Warner has developed a significant practice of handling oil and gas disputes for mineral owners and has played a key role in significant litigation involving numerous claims against oil and gas producers. Attorney Warner has been recognized as a Rising Star and achieved an AV Preeminent rating through Martindale-Hubbell.

Attorney J. Robert Russell of Shuman McCuskey Slicer PLLC focuses his practice entirely on litigation at both trial and appellate levels. Attorney Russell has broad experience in all aspects of litigation from defending municipalities, governmental entities, and business owners, to civil rights and professional negligence and malpractice, to prosecuting claims for mineral owners. Attorney Russell has tried numerous cases to verdict and frequently argues before the Supreme Court of Appeals of West Virginia. Mr. Russell has also presented argument before the United

States Court of Appeals for the Fourth Circuit and is scheduled to argue before the Fourth Circuit in one month.

Mr. McCuskey, Mr. Warner, and Mr. Russell have a lengthy history of litigating oil and gas disputes for mineral owners, particularly against EQT – Rice's parent company. These claims ranged from disputes over improperly deducted expenses from royalty payments, concerns over sales between affiliated parties and the associated impact on royalty payments, and mineral trespass. See e.g. *Secrist, et al. v. EQT Production Company, et al.*, 14-C-19, Circuit Court of Doddridge County, West Virginia; *Huey, et al. v. EQT Production Company, et al.*, 17-C-43, Circuit Court of Wetzel County, West Virginia; and *Cather, et al. v. EQT Production Company, et al.,* 2017-cv-00208, N.D. W.Va.). Each matter was hotly contested. *Cather* was ultimately resolved, while *Huey* is set for trial in March 2022. *Secrist* has been partially resolved, while certain issues remain pending. Each attorney played a role in all three cases, working on pleadings, briefing, discovery, attending court hearings, working with experts, and more.

Plaintiffs have stepped forward to pursue their claims on a class basis and have obtained counsel who are experienced in pursuing similar claims and have demonstrated their resolve in and commitment to pursuing this case. Plaintiffs' counsel all have significant experience litigating complex cases, including class actions, and more particularly, mineral trespass claims. Plaintiffs have vigorously prosecuted the interests of the class through qualified counsel with nearly 100 years of combined experience and intend on continuing to do so in satisfaction of the Rule 23(a)(4) prerequisite and Rule 23(g) considerations. In light of the foregoing, the Court should find that the interests of the class will be adequately represented.

## VI.    THIS ACTION SATISFIES F.R.C.P. 23(B)(3)

The named Plaintiffs seek to certify this class as an opt-out class action under Rule 23(b)(3). Class certification pursuant to this Rule is appropriate whenever the Court finds: (1) that

questions of law or fact common to members of the class predominate over any questions affecting only individual members ("predominance") and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy ("superiority").  Fed. R. Civ. P. 23(b)(3). The analysis does not constitute a numerical test in which common issues are added up and compared to individual issues to determine which is greater. *Id.* Instead, the Court has recognized that it "must determine whether the class members seek a remedy to a common legal grievance and whether the common questions of law and fact central to the litigation are common to all class members." *Id.* (quoting *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596,35 605 (S.D. Ohio 2003)). Notably, the "[c]ommon questions need only predominate; they need not be dispositive of the litigation." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 408.

Without a doubt, the common questions that arise in this litigation predominate over individual questions and a class action is superior to any other means of adjudicating the Plaintiffs' and putative class members' claims.

A. PREDOMINANCE

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Beattie v. Century Tel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007), quoting, *Amchem*, 521 U.S. at 623. "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young*, 693 F.3d at 544, quoting, *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir. 2011). Where significant common questions can be resolved for class members in one action, it is efficient to deal with class claims on a representative rather than an individual basis.  *See* Charles Alan Wright & Arthur R. Miller, 7AA *Federal Practice and Procedure* § 1778 (3d ed. 2009).

Common issues predominate when liability can be determined on a class-wide basis. *Beattie*, 511 F.3d at 564. "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Answering the central lease interpretation question with regard to the entire class is preferable to separate litigation of individual claims. This question clearly predominates over any possible individual questions because the identical language is used in each lease and the conduct/treatment by Defendants was the same with respect to all Class Members. There are no individual issues likely to be raised in the litigation of the class action that would defeat predominance.

Moreover, as this Court has previously held, while liability in this case can be determined on a class wide basis, individualized damage calculations do not predominate. *Washington Cnty.*, 2011 U.S. Dist. LEXIS 27720 at *12 (Sargus, C.J.), citing, *Olden v. LaFarge Corp.*, 383 F.3d 495, 507 (6th Cir. 2004). Courts in every circuit have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations. Rubenstein, Newberg on Class Actions § 4:54 (5th ed.). In fact, a 2013 dissenting opinion from four United States Supreme Court Justices characterized that point as "well nigh universal." *Id*., *citing Comcast v. Behrend*, 569 U.S. 27, 42, 133 S. Ct. 1426, 1437 (2013). In *Comcast*, the Supreme Court quoted approvingly from Federal Judicial Center, *Reference Manual on Scientific Evidence* 432 (3d ed. 2011), that "the first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*." *Id.* at 1430 (emphasis in original). *Comcast* requires that a putative class seeking Rule 23(b)(3) certification demonstrate a linkage between its theory of liability and its theory of damages. The Court must examine this relationship at the class certification stage.

39

The Sixth Circuit and the Seventh Circuit have emphatically concluded that the *Comcast* decision, with its emphasis on the ability of a court to determine damages on a class-wide basis, would never preclude class certification whenever there is a "single central, common issue of liability." *Butler v. Sears, Roebuck & Co.,* 727 F.3d 796, 801 (7th Cir. 2013).

> It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment to require that every member of the class have identical damages. If the issues of liability are genuinely common issues and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of sub-classes, the fact that damages are not identical across all class members should not preclude class certification.

*Id.*

Establishing the legal effect of the lease language, and thus determining the liability of the Defendants, will be done on a class-wide basis. Justice Scalia's majority opinion in *Comcast* emphasized that while "[damages' c]alculations need not be exact" at the class certification stage, "any model supporting a 'plaintiff's damages case must be consistent with its liability case[.]'" *Comcast*, 133 S.Ct. at 1433. In the instant case, there is no "model" necessary to calculate damages. While the parties vigorously disagree about the correct interpretation of the lease language [identical to each Class Lease], there is no disagreement as to the measure of damages for a trespass, conversion and unjust enrichment under Ohio law.

If the Defendants' trespass is found to be intentional, the damages are measured by the full value of minerals damaged and destroyed, and are calculated without any deductions for any cost incurred in drilling or producing oil and gas.[81] The bad-faith trespasser is prevented from reaping

---

[81] *Brady v. Stafford,* 115 Ohio St. 67 (1926).

any advantage from his wrongdoing, not strictly as a matter of right to the property owner, but also to deter other wrongdoers.[82]

If the Defendants' conversion is found to be intentional, the damages are measured by the value of the converted property at the time of the conversion.[83] Bad-faith conversion damages are calculated without any deductions for any cost incurred in drilling or producing oil and gas.[84] Once a right to damages has been established, such right will not be denied because the damages are incapable of being calculated with mathematical certainty.[85]

These amounts are easily determined from Defendants' own records and can be apportioned accordingly should Plaintiffs prevail on the predominant legal issue of lease interpretation. Further, it must be noted that the Defendants use a uniform allocation methodology that can be used as a basis for a damage model. Upon forming a pooled unit, Defendants allocate revenue from the sale of oil and gas and pay royalties from any well drilled in the pooled unit based on a surface acreage allocation to the unit size.[86] For example, if an oil and gas mineral owner owns 100 acres of a 600-acre pooled unit, a total of $1/6^{th}$ of the revenue is allocated to said mineral owner and royalties are paid accordingly. This uniform allocation is based on a mathematic calculation that can be used to determine the damages owed to each specific class member. Further, the value of the remaining unproduced oil and gas can be reliably ascertained by utilizing a decline curve analysis, a standard methodology employed by the oil and gas industry to value the reserves.

---

[82] *Athens & Pomeroy Coal and Land Co. v. Tracy* (1925), 22 Ohio App. 21, 153 N.E. 240, aff'd; *Tracy v. Athens & Pomeroy Coal and Land Co.*, supra.

[83] *Brumm v. McDonald & Co. Securities, Inc.*, 78 Ohio App.3d 96, 104 (1992).

[84] *Brady v. Stafford,* 115 Ohio St. 67 (1926).

[85] *Pennant Molding, Inc. v. C & J Trucking* (1983), 11 Ohio App.3d 248, 252, citing *Burns Brothers Plumbers, Inc. v. Groves Ventures Co.* (C.A.6, 1969), 412 F.2d 202.

[86] **_Exhibit T_** – *Gabbianelli Depo.,* 34:6-10; **_Exhibit U_** – *Reser Depo.,* 27:12-16; **_Exhibit V_** – *Zitkus Depo.,* 292:7-24; **_Exhibit W_** – *Lucas Depo.,* 60:11-17.

41

If Plaintiffs and Class members were required to bring separate actions, these questions of law and fact would necessarily be relitigated over and over, with the same arguments presented in each case. Common questions clearly predominate over individual issues. The Court's interest in avoiding the multiplicity of potential lawsuits greatly outweighs any problems of managing this suit as a class action.

### B.   SUPERIORITY

Class certification offers judicial efficiencies because it permits common claims and issues to be tried only once, with binding effect on all parties. It also avoids the possibility of inconsistent adjudications and facilitates settlement by permitting agreements that potentially bind all claimants. Class certification "will achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (quotations omitted).

A primary purpose of class action lawsuits, particularly money damage claims aggregated under Rule 23(b)(3), is to enable the litigation of smaller claims – like some of these claims where a lessor has a small mineral ownership interest – that could not be pursued individually. Rubenstein, Newberg on Class Actions § 4:65 (5th ed.). *See also, Amchem*, 521 U.S. at 615 (such cases are the "core" of the class action mechanism).

The question that courts consider when they analyze manageability is not whether a class action is manageable in the abstract but, rather, how the problems that might occur in managing a class suit compare to the problems that would occur in managing litigation without a class suit. *Id.* Manageability should rarely, if ever, be in itself sufficient to prevent certification of a class. *Id.* Second, given the fact that the very concerns that might make a class suit difficult to manage also infect the procedural alternatives, courts within at least seven circuits have held that there is a presumption against dismissing a class action on manageability grounds or that such dismissals

are disfavored. *Id. See also*, *De Loach v. Philip Morris Companies, Inc.*, 206 F.R.D. 551, 567 (M.D. N.C. 2002) ("Though any case of such magnitude certainly poses problems of manageability...dismissal for management reasons, in view of the public interests involved in class actions, should be the exception rather than the rule.") (internal citations and quotations omitted).

Rule 23(b)(3) lists four non-exclusive factors bearing on the superiority requirement. These factors are:

> (i) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (iv) the difficulties likely to be encountered in the management of a class action.

*Washington Cnty.*, 2011 U.S. Dist. LEXIS 27720 at *13 -14 (Sargus, C.J.), citing, *Olden*, 383 F.3d at 507; Fed. R. Civ. P. 23(b)(3). *See also*, *Amchem*, 521 U.S. at 615-16.

The *first* factor addresses whether the interest of class members in conducting separate lawsuits is so strong as to require denial of class certification. As discussed at length above, the class action mechanism is the most efficient way to address the claims in this lawsuit because it promotes judicial economy, eliminates the risk of inconsistent rulings or verdicts, and allows claimants with smaller interests access to the judicial system that they may not otherwise have, all without sacrificing procedural fairness. There is no interest of individual class members that is so strong that it would require denial of the instant motion.

The *second* factor requires the Court to consider the extent and nature of any litigation concerning the controversy already commenced by or against members of the class. Plaintiffs are aware of three similar lawsuits brought by individuals against Defendants Rice, Gulfport, Ascent and XTO with the same lease language at issue in this case: two cases involved the same family, being (1) *TERA, LLC v. Rice Drilling D, LLC, et al.,* Case No. 17-cv-0344, Belmont County

Common Pleas Court, and (2) *TERA II, LLC, et al.,* v. *Rice Drilling D, LLC, et al.,* Case No. 2:19-cv-02221, S.D. Ohio; and (3) *Oglibee, et al., v. Rice Drilling D, LLC, et al.,* 20-cv-0119, Belmont County Common Pleas Court. Accordingly, this factor further supports the superiority of maintaining this suit as a class action because it promotes judicial economy and reduces the risk of divergent rulings or verdicts.

The *third* superiority factor is the desirability of conducting the litigation in a particular forum. Defendants can hardly complain that this is an inconvenient forum. The *fourth* and final Rule 23(b)(3) factor is "the difficulties likely to be encountered in the management of a class action." *Amchem*, 521 U.S. at 616. Management of this case as a class action presents no unusual difficulties. Class actions of this size are common and present no significant management problems.

The superiority requirement asks the court "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." *In re Telectronics Pacing Sys.,* 172 F.R.D. 271, 290 (S.D. Ohio 1997). Certification of this Class is a superior method for the fair and efficient adjudication of this controversy. Additionally, use of the class action vehicle would achieve judicial economy, potentially preventing the filing of literally thousands of cases. A class action would also prevent inconsistent judgments that could arise from multiple cases brought by multiple lessors. There are also no foreseeable particular difficulties with adjudicating the class action confronting the Court. All these factors support the class action mechanism in the instant case.

## VII.   **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the court grant their motion for class certification, appoint Plaintiffs as Class Representatives, and appoint Plaintiffs' counsel as Class Counsel.

Respectfully submitted,

/s/ *Craig J. Wilson*
Craig J. Wilson (#0090526)
**C.J. Wilson Law, LLC**
P.O. Box 2879
Westerville, OH 43086
Telephone: 614-723-9050
craig@cjwilsonlaw.com

and

/s/ *Brian J. Warner*
Brian J. Warner (*pro hac vice*)
J. Robert Russell (*pro hac vice*)
John F. McCuskey (*pro hac vice*)
SHUMAN MCCUSKEY SLICER
PLLC
300 Wedgewood Drive, Suite 110
Morgantown, WV 26505
304.291.2702
Fax: 304.291.2840
bwarner@shumanlaw.com
rrussell@shumanlaw.com
jmccuskey@shumanlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that Plaintiffs Motion for Class Certification was filed on December 1,

2021 via the Court's electronic filing system, which will serve all parties of record.

/s/ *Craig J. Wilson*
Craig J. Wilson (#0090526)
**C.J. Wilson Law, LLC**
P.O. Box 2879
Westerville, OH 43086
Telephone: 614-723-9050
craig@cjwilsonlaw.com

*Counsel for Plaintiffs*

45