**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **J&R PASSMORE,** *et al.*, | : | |
| | : | **Case No. 2:18-cv-1587** |
| **Plaintiffs,** | : | |
| | : | **Judge Algenon L. Marbley** |
| **v.** | : | **Magistrate Judge Kimberly. A Jolson** |
| | : | |
| **RICE DRILLING D, LLC,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## <u>OPINION & ORDER</u>

This matter is before this Court on Defendants Rice Drilling D, LLC ("Rice")'s Omnibus Motion in Limine (ECF No. 552), Plaintiffs J&R Passmore, LLC, ("Passmore")'s Omnibus Motion in Limine (ECF No. 554), and Rice's Motion to Exclude in Part Testimony of Plaintiff's Expert Paul Herzing (ECF No. 555). It is unnecessary to recite again the facts of this case, which have been detailed in this Court's various opinions and orders. *See J&R Passmore, LLC v. Rice Drilling D, LLC*, 2024 WL 1347291 (S.D. Ohio Mar. 29, 2024); (ECF No. 481).

For the reasons explained below, Rice's Omnibus Motion in Limine (ECF No. 552) is **GRANTED** as to Motions 1, 4, and 5, and **DENIED** as to Motions 2, 3, 6, 7, and 8. Plaintiffs' Omnibus Motion in Limine (ECF No. 554) is **GRANTED** as to Motions 5, 6, 7, and 9,  **DENIED** as to Motion 2, and **GRANTED in part and DENIED in part** as to Motions 1, 3, 4, and 8. Rice's Motion to Exclude in Part Testimony of Plaintiff's Expert Paul Herzing (ECF No. 555) is **DENIED**.

1

# I. STANDARD OF REVIEW

## A. Motions in Limine

The purpose of a motion in limine is "to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). "It is well established that [w]hether or not to grant a motion in limine falls within the sound discretion of the trial court." *Delay v. Rosenthal Collins Grp., LLC*, 2012 WL 5878873, at *2 (S.D. Ohio Nov. 21, 2012) (citing *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 562 (6th Cir. 2012)). The guiding principle is "to ensure evenhanded and expeditious management of trials." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

The burden rests on the movant, *Morrison v. Stephenson*, 2008 WL 343176, at *1 (S.D. Ohio Feb. 5, 2008), to demonstrate to the Court that the evidence she seeks to exclude is "clearly inadmissible on all potential grounds," *Delay*, 2012 WL 5878873, at *2 (citing *Ind. Ins. Co.*, 326 F. Supp. 2d at 846). But "[u]nless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846. Allowing the court "to deal with questions of admissibility as they arise" is preferable because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *United States v. Jacobs*, --- F. Supp. 3d ---, 2023 WL 3579043, at *3 (S.D. Ohio May 22, 2023) (first quoting *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975), then quoting *Morrison*, 2008 WL 343176, at *1).

Additionally, "[a] ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42

F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)). Thus, this Court "may change its ruling at trial for whatever reasons it deems appropriate." *Id.*

## B.  Applicable Rules of Evidence

Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Evidence is relevant, and therefore generally admissible, so long as it "has any tendency to make a fact more or less probable," and so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401. It is well established that "[t]he standard for relevancy is 'extremely liberal' under the Federal Rules of Evidence." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (internal citation omitted).

Assuming evidence is relevant, Rule 403 nonetheless grants trial courts discretion to exclude that evidence "if its probative value is substantially outweighed" by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Sixth Circuit has consistently held that the level of unfair prejudice necessary to exclude otherwise relevant evidence is a high bar and must be the type of evidence to "suggest a decision made on an improper basis." *See, e.g.*, *United States v. Johnson*, 581 F.3d 320, 327 (6th Cir. 2009).

Additionally, because this Court determined the lease at issue here is ambiguous, parties can offer, and this Court can consider, "traditional methods of contract interpretation to resolve the ambiguity, including drawing inferences and presumptions and introducing extrinsic evidence." *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir. 1996). This Court rightfully resolved the question of ambiguity, as it is a question of law, but "the meaning of these ambiguous words or phrases in the contract is a question of fact for the jury." *Ohio Hist. Soc'y v. Gen. Maint. & Eng'g. Co.*, 65 Ohio App. 39 139, 146, 583 N.E.2d. 340, 344 (Ohio 1989).

Lastly, in civil cases, Rule 407 requires that evidence of subsequent remedial measures, taken after an injury-causing event, be excluded if offered to prove negligence or culpable conduct with respect to the event. *See* 30 Am.Jur. Proof of Facts 3d 307 (citing FED.R.EVID. 407, Advisory Committee's Note). This Rule is not without exception: "[T]he court may admit [ ] evidence [of a subsequent remedial measure] for another purpose, such as impeachment[.]" Fed. R. Evid. 407.

## II.  LAW & ANALYSIS

As mentioned, at issue here are the parties' omnibus motions in limine and Rice's Motion to exclude portion of expert, Paul Herzing's testimony. This Court addresses each in turn.

### A.  Rice's Omnibus Motion in Limine

*1.  Preclude evidence or argument regarding the overturned damages jury verdict  in  the Ohio state court case TERA, LLC v. Rice Drilling D, LLC*

Rice seeks to preclude any mention, reference, interrogation, or conveyance to the jury about the overturned jury verdict in the Ohio state court case *TERA, LLC v. Rice Drilling D, LLC*. (ECF No. 552 at 2); s*ee* 205 N.E. 3d 1168 (Ohio Ct. App. 2023), *rev'd sub nom*. *Tera, L.L.C. v. Rice Drilling D, L.L.C.*, 248 N.E. 3d 196 (Ohio 2024). In response, Plaintiffs attest they do not intend to introduce any such evidence. (ECF No. 559 at 1). Thus, this Court precludes any reference to or evidence of the overturned damages verdict specifically. This Court's ruling does not preclude reference to any evidence concerning the claims made in, or circumstances surrounding that case to the extent that they are relevant to the case *sub judice*. Rice's Motion to this aspect is **GRANTED**.

*2.  Preclude evidence and argument pertaining to supposed injuries to individuals or entities whose claims are not set for this trial*

Rice contends that this Court should preclude any evidence as to injuries of any individual or entity who may have asserted similar claims against Rice in other cases. (ECF No. 552 at 3).

Plaintiffs counter that such a request is too broad given this case turns on the parties' intent as to the Reservation Clause which may be demonstrated through evidence of Rice's continuing bad faith conduct in other cases. (ECF No. 559 at 2). This Court agrees with Plaintiffs and sees no reason to stray from the reasoning of its prior ruling on this issue in *TERA II, LLC v. Rice Drilling D, LLC*, No. 2:19-cv-2221, ECF No. 656 at 10 (S.D. Ohio Feb. 16, 2024) ("TERA II"). Such evidence may be relevant to the parties' intent in entering into the lease. Rice's request to exclude this information is **DENIED**.

3. *Preclude evidence and argument pertaining to Rice's finances, or EQT's share value, financial condition, or net worth, or net worth of Rice's or EQT's employees*

Under Ohio law, "evidence of a tortfeasor's financial position is relevant and may be considered by the jury in determining the appropriate amount of punitive damages." *Wagner v. McDaniels*, 459 N.E.2d 561, 564 (Ohio 1984). Rice contends that such evidence is barred under O.R.C. § 5303.34(C) given that the statute expressly precludes recovery of punitive damages for unlawful mineral extraction claims. (ECF No. 552 at 4). Notably, however, this statute became effective on September 30, 2025. Under Ohio law, because the statute does not expressly state that it applies retroactively, it is not applicable to Plaintiffs claims that were filed in 2018. *See Braun v. Coulter Ventures, LLC*, 642 F. Supp. 3d 649, 651 (S.D. Ohio 2022) ("This Court finds it unnecessary to determine whether O.R.C. § 4111.10(C) is remedial or substantive because the statute does not survive the threshold inquiry on retroactivity."). Further, Rice cites no authority as support for the retroactive application of this statute. As such, Plaintiffs' claim for punitive damages remains viable for the jury's consideration. This aspect of Rice's motion is **DENIED**.

4. *Preclude evidence and argument pertaining to hourly rates, law firm size, attorney admissions, or size of Rice's trial team*

As Plaintiffs "do not object to this motion so long as it is applied equally to both sides—i.e., that Rice, too, is prevented from making similar comments concerning the law firms and number of lawyers representing Plaintiff or Plaintiff's motivation in bringing this suit," this part of Rice's motion is **GRANTED**. This Court emphasizes that this prohibition applies equally to both parties.

5. *Preclude evidence and argument pertaining to discovery disputes, proceedings, or Orders*

Rice requests this Court preclude any evidence or argument pertaining to discovery disputes, proceedings, or Orders. (ECF No. 552 at 5). Plaintiffs do not oppose this request. Rice's Motion as to this aspect is **GRANTED**.

6. *Preclude evidence or argument about any definition of "bad faith" other than set forth in O.R.C. § 5303.34*

Rice seeks to preclude any references to "bad faith" not in conformity with the definition as defined in Ohio Revised Code § 5303.34. (ECF No. 552 at 6). As discussed above, however, this statute did not take effect until September 30, 2025, years after this case was filed. Accordingly, this Court finds it imprudent to apply that statutory definition of "bad faith" absent express retroactive intent from the state General Assembly. *See supra* Section II.A.3 (citing *Braun*, 642 F. Supp. 3d at 652). Rice's Motion as to this aspect is **DENIED.**

7. *Preclude evidence or argument about any presumption of bad faith*

Next, Rice seeks to preclude any evidence or argument about the presumption of bad faith as prohibited by Ohio Revised Code § 5303.34(A)(2). (ECF No. 552 at 8–9). Plaintiffs contend that under the common law, the act of trespassing, "creates a presumption of willful conduct on the part of the trespasser and requires the defendant to prove by a preponderance of the evidence that he acted in good faith." (ECF No. 559 at 6) (citing *Tera II*, 679 F. Supp. 3d 620 at 652). As

discussed above, this Court will not apply that statute retroactively. Given that prior to this statute, a presumption of willful conduct existed on part of the trespasser, Rice's Motion is **DENIED**.

### 8. *No evidence or argument regarding punitive damages*

Finally, Rice seeks to preclude any evidence or argument regarding the recovery of punitive damages. Rice again contends that such damages are expressly prohibited under Ohio Revised Code § 5303.34.(ECF No.552 at 8–9). Given this Court has determined that statute does not apply retroactively, Rice's Motion is **DENIED**.

### B.  Plaintiffs' Omnibus Motion in Limine

### 1.  *Preclude reference to the Passmore-XTO Joint Operating Agreement*

Plaintiffs request that this Court preclude any reference to the Passmore-XTO Joint Operating Agreements ("JOAs"), and any argument that such agreements may be indicative of Rice's authority to drill or produce through the Point Pleasant under the Passmore tracts specifically. (ECF No. 554 at 3). As support for this request, Plaintiffs reason that this Court already denied summary judgment as XTO's JOA theory, specifically, "that the Passmore-XTO JOAs 'somehow subsumed' any otherwise unleased Point Pleasant interest" in its March 29, 2024, Opinion & Order. (*Id.*). Rice counters that reference to the JOAs should not be precluded as such evidence is relevant and at a minimum probative of: "(1) what Passmore intended when it entered the lease with the goal of obtaining royalties; (2) what activity Passmore understood the lease as authorizing; and (3) whether Passmore unreasonably delayed bringing its claims." (ECF No. 563 at 2).

In its motion for summary judgment, XTO argued that even if the Passmore leases do not permit drilling or production from the Point Pleasant, XTO still had the authority to drill from the Point Pleasant pursuant to the JOAs. (ECF No. 443 at 5). In opposition, Plaintiffs argued that the JOAs "encumber[] parcels of land not at issue in this lawsuit[.]" (ECF No. 451 at 52). In the March

7

29, 2024, Opinion & Order, this Court reasoned that the JOAs cover *specific* plots of land that are "not otherwise subject to a lease with Rice." (ECF No. 481 at 11). As such, this Court rejected argument that *any* unleased interest such as the Point Pleasant under the Pasmore tracts at issue in this case is subsumed into the JOA and its related lease. (*Id.*).

Rice is correct that denial of summary judgment does not automatically preclude reliance on certain evidence at trial. Notably, however, this Court did not reason that XTO's motion was denied due to genuine issues of material fact remaining as to the interpretation of the JOAs. Rather, this Court reasoned that it could not rationalize an argument that the JOAs granted authority for drilling or production from the Point Pleasant under the Passmore tracts in this case or any other unleased interest that was not specified to be subsumed in the JOAs. Following this logic, this Court precludes any argument specifically asserting that the JOAs grant authority for drilling or production from the Point Pleasant beneath the Passmore tracts. This Court already reasoned that such agreements do not apply to the tracts of land in this case, and therefore the allowance of such arguments could potentially mislead the jury. Hence, Plaintiffs Motion is **GRANTED** concerning reference to the JOAs as a source of authority.

As to general reference of the JOAs, this Court finds Plaintiffs request to be overly restrictive. Given that this Court determined the lease at issue here is ambiguous, parties can offer, and this Court can consider, "traditional methods of contract interpretation to resolve the ambiguity, including drawing inferences and presumptions and introducing extrinsic evidence." *Schachner*, 77 F.3d at 893. This Court rightfully resolved the question of ambiguity, as it is a question of law, but "the meaning of these ambiguous words or phrases in the contract is a question of fact for the jury." *Ohio Hist. Soc'y v. Gen. Maint. & Eng'g. Co.*, 65 Ohio App. 39 139, 146, 583 N.E.2d. 340, 344 (Ohio 1989). Accordingly, this Court will not restrict references to the JOAs more broadly at

8

this stage. *Ind. Ins. Co.*, 326 F. Supp. 2d at 846 ("Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."). Plaintiffs Motion is **DENIED** concerning general references to the JOAs.

### 2. Preclude evidence or argument regarding industry use of "Utica Shale"

This Court has already found industry usage to be relevant given the lease's ambiguity in its summary judgment Opinion & Order. (*See* ECF No. 481 at 24) ("[A] jury is free to consider Defendants' arguments regarding what was "commonly known as the Utica Shale" in its interpretation of what is "below the Utica Shale," as the former may be helpful in defining the latter."). Further, this Court previously declined identical arguments in TERA II. *See TERA II,* No. 2:19-cv-2221, ECF No. 656 at 9. Plaintiffs' attempt to reopen this issue via a motion in limine is therefore **DENIED**.

### 3. Preclude articles, publications, news items, trade press, and similar materials produced by Rice Concerning "Utica Shale" and "Point Pleasant"

Next, Plaintiffs seek to preclude any articles, publications, news items, or forms of internet media evidence that reference "Utica Shale" or "Point Pleasant." (ECF No. 554 at 5). Plaintiffs contend that such articles should be precluded because: (1) the materials are hearsay because they are offered for the truth of the matter asserted; (2) Rice cannot establish a non-hearsay purpose for the articles because they have no evidence that Plaintiffs ever saw, relied upon, or knew of these materials prior to entering the relevant lease agreements; (3) Rice cannot authenticate the materials; and (4) many of the materials are only available via paid subscription. (ECF No. 554 at 5–8).

First, Rice contends that the articles will not be offered for the truth of the matter, but rather to offer evidence as to how the term was used generally. (ECF No. 563 at 6–7). In response, Plaintiffs contend that offering the evidence to demonstrate public usage does not render the materials admissible given the jury will be asked to rely on the "unvetted and unverified out-of-court assertion" which makes hearsay unavoidable and the sources unreliable. (ECF No. 554 at 6). This Court reasons that the Defendants are entitled to offer such materials for non-hearsay purposes and not for the truth of the matter asserted since such materials are self-authenticating pursuant to Federal Rule of Evidence 902(6). *Park W. Galleries, Inc. v. Glob. Fine Art Registry, LLC*, 2010 WL 987772, at *3 (E.D. Mich. Mar. 12, 2010) ("[T]he newspaper articles and television clips do not constitute hearsay to the extent they are offered for purposes other than for the truth of the matter asserted, such as to prove notice, damages, or that a controversy existed."). In offering such evidence from a digital source, however, Rice must comply with Rule 902(13) or offer some form of authentication which addresses Plaintiffs reliability concerns for online website pages. *Fish v. Stone, Higgs & Drexler, P.C.*, 2017 WL 6757575, at *6 (W.D. Tenn. Dec. 29, 2017) ("Courts confronting images that purport to represent websites have held that '[t]o authenticate printouts from a website, the party proffering the evidence must produce some statement or affidavit from someone with knowledge of the website ... for example a web master or someone else with personal knowledge would be sufficient.'").

As to Plaintiffs' arguments that Rice cannot offer such materials because they cannot prove that Plaintiffs ever saw, relied upon, or knew of these materials prior to entering into the relevant lease agreements, this Court is not persuaded in circumstances, such as here, where the evidence would be offered to prove industry usage or Rice's intent. Notably, however, Rice would not be entitled to offer such evidence as support for Plaintiffs intent without proof or evidence of Plaintiffs

10

knowledge by establishing Plaintiffs saw, relied upon, or new of such materials when entering the leases.

Finally, Plaintiffs assert that this Court should preclude these materials as many of them are industry publications only available via paid subscription and, therefore, the public would not be aware of the articles. As support, Plaintiffs rely on *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, 499 F. Supp. 3d 505, 515 (S.D. Ohio 2020) to contend that subscriber data is not generally accessible by the general public. That case, however, discusses whether certain materials containing trade secrets should be sealed, and is not instructive here. Plaintiffs cite no authority supporting that such evidence must be precluded merely because it is not available to the public. This Court reasons that as referenced above, these materials may be offered for non hearsay purposes such as to prove Rice's intent or understanding.

Therefore, Plaintiff's motion is **GRANTED** to the extent newspaper articles or other self-authenticating materials are offered into evidence to prove the truth of the matter asserted, and Plaintiff's motion is **DENIED** to the extent such evidence falls within one of the exceptions to the hearsay rule or is not properly authenticated.

4. *Preclude any attempt by defense experts to serve as conduits for those articles or similar materials*

Next Plaintiffs seek to preclude defense experts from serving as a conduit for inadmissible newspapers, publications, articles, or similar materials under the guise that the expert relied on such articles in forming their opinions. (ECF No. 554 at 9–10). Rice counters that such testimony is permitted under Federal Rule of Evidence 703.

Under FRE 703, an expert may testify as to his or her opinion on facts and data personally observed. Specifically, the rule provides in relevant part that:

> If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect

Fed. R. Evid. 703. Accordingly, Rice's experts are well within their rights to testify as to their personal observations. Further, the experts may rely on such articles to the extent that "experts in the particular field would reasonably rely" on these types of materials. *Trepel v. Roadway Exp., Inc.*, 194 F.3d 708, 719–720 (6th Cir. 1999) (Suhrheinrich, J., concurring in part and dissenting in part) ("[T]he rule does not give an expert free reign to base an opinion on any evidence, including inherently unreliable or untrustworthy evidence. Rather, the rule limits the bases of expert opinions to that which is 'reasonably relied upon by experts.' … [T]he Advisory Committee Notes caution that Rule 703 limits the bases of expert opinions to otherwise inadmissible evidence that is also reliable in order to prevent Rule 703 from creating a "back-door" exception to the other rules of exclusion…").

If Rice seeks to introduce otherwise inadmissible evidence, Rice must demonstrate the trustworthiness of the materials, and that such materials would reasonably be relied upon by an expert. Verification from the experts that he or she merely reviewed the articles would not be sufficient. Therefore, Plaintiffs' attempt to exclude this information **is GRANTED in part and DENIED in part**.

5. *Preclude nonparty testimony regarding Plaintiffs' lease intent or interpretation*

Plaintiffs also contend this Court shall preclude nonparty testimony regarding Plaintiffs intent related to entering the relevant leases without first establishing personal knowledge of the witness. (ECF No. 554 at 11). Plaintiffs specifically reference Larry Cain as a nonparty witness with no personal involvement in the negotiation and execution of Plaintiff's leases. (*Id.*). Rice counters

that Larry Cain does have personal knowledge as to the relevant negotiations because he negotiated them. (ECF No. 563 at 10–11). Given Rice contends they have evidence that Mr. Cain's personal knowledge is directly tied to these leases, this Court sees no reason not to adopt Plaintiffs' request that Rice lay a foundation for such knowledge at trial. Accordingly, prior to eliciting nonparty testimony regarding Plaintiffs' lease intent or interpretation, Rice must first establish the witness's personal knowledge outside the presence of the jury. Therefore, Plaintiff's motion is **GRANTED as to this aspect.**

### 6. *Preclude any party's unexpressed subjective intent*

Next, Plaintiffs request that this Court preclude Rice from eliciting any testimony regarding Plaintiffs' secretly held, subjective, or unexpressed intent about the meaning of the lease language. (ECF No. 554 at 12). Rice opposes this request to the extent that Plaintiff may attempt to use such ruling to assert that Rice must prove Plaintiffs' knowledge of specific pieces of direct evidence prior to introducing such evidence. (ECF No. 563 at 12). Rice has no opposition to the request otherwise. (*Id.* at 11). Courts have reasoned that "[i]n contract interpretation, a party's external objective manifestation of intent prevails over his private and unexpressed intent." *Kahan v. Woodard-CM, LLC*, 2009 WL 1507314, at *3 (N.D. Ohio, May 28, 2009). Thus, this Court **GRANTS** Plaintiff's Motion only to the extent that Rice asks Plaintiffs what they "privately intended but never communicated." This ruling shall not be construed as a broader bar to circumstantial evidence or extrinsic evidence generally.

### 7. *Preclude evidence or argument regarding forced pooling or statutory unitization*

Plaintiffs request that this Court preclude any references or testimony as to "forced pooling" or statutory unitization of Plaintiffs' mineral estates as neither is a claim, defense, or live issue for the jury. (ECF No. 554 at 12). Rice contends that such evidence is relevant and may be indicative

of intent given Passmore wanted to avoid forced pooling. (ECF No. 563 at 12). Passmore's reference to wanting to avoid forced pooling was in reference to the unleased properties that were contributed to the JOAs, not the properties at issue in this case. (ECF No. 481 at 11). Accordingly, this Court reasons that reference or argument to forced pooling or statutory unitization has more potential to mislead the jury than it would be probative and is therefore precluded. This aspect of Plaintiffs motion is therefore **GRANTED**

### 8. *Preclude testimony from Plaintiff's Counsel*

Plaintiffs also request that this Court preclude testimony from Plaintiff's counsel, Craig Wilson, unless Rice establishes, outside the presence of the jury, that such evidence is necessary, nonprivileged, non-cumulative, and not obtainable through any other witness. (ECF No. 554 at 13). Rice contends it may call Wilson a witness only if Plaintiffs make certain assertions about Larry Cain and the underlying facts that Attorney Wilson knows to be untrue given his personal involvement working for the law firm that drafted the leases at issue. (ECF No. 563 at 13). This Court agrees that Plaintiffs motion is premature at this stage. Further, Plaintiffs acknowledge that this same request was not precluded until trial in TERA II. (ECF No. 554 at 13). In the event that Rice seeks to call Mr. Wilson, such opposition can be raised as it arises. However, this Court will grant Plaintiffs' request that if Rice seeks to call Mr. Wilson it shall establish merits for such testimony outside the jury's presence so as to avoid any potential prejudice. Plaintiffs motion is therefore **GRANTED in part and DENIED in part.**

### 9. *Preclude reference to settlement negations and final settlement agreements with prior defendants*

Finally, Plaintiffs argue that any evidence or argument concerning settlement negotiations or settlement agreements with former defendants must be precluded. (ECF No. 554 at 14). Rice contends that such evidence, however, is relevant to demonstrate errors in Plaintiffs' damages

14

methodology. (ECF No. 563 at 14). Under Federal Rule of Evidence 408 "'conduct or a statement made during compromise negotiations' are not admissible at trial*." Linear Grp. Servs., LLC v. Attica Automation, Inc.*, 2014 WL 4206871, at *8 (E.D. Mich. Aug. 25, 2014). Given that Rice cites no authority supporting that Rule 408 may be overcome, this Court will not permit such evidence. *Id.* (holding that "[rule 408] mandates exclusion of any "statement made during compromise negotiations," and [defendant] does not cite any authority that exempts [plaintiff's] settlement overtures from that mandate" where defendant sought to introduce such evidence…").

Plaintiffs' motion as to settlement negotiations and agreements is **GRANTED**.

### C.  Rice's Motion to Exclude in Part Testimony of Plaintiff's Expert Paul Herzing

First, Rice requests this Court preclude Mr. Herzing from testifying about Plaintiffs' alleged damages for the Heller wells because he failed to account for royalty payments made by former co-defendants, XTO and Ascent, to Plaintiffs for those wells, thereby failing to honor the correct legal standard and necessitating the exclusion of his opinion as a result. (ECF No. 555 at 1). Second, Rice contends Mr. Herzing should not be allowed to testify about any wells for which former co-defendants made settlement payments to Plaintiffs. (*Id.*).

*1.  Exclude Mr. Herzing's Testimony About the Heller Wells Because He Fails To Account For Royalty Payments*

As to its first argument, Rice contends that proper damages calculations "must account for all amounts already paid to Plaintiffs based on particular disputed wells," yet Herzing fails to subtract royalty payments already paid to Plaintiffs for the Heller wells. Based on this "miscalculation", Rice seeks to preclude any discussion by Herzing on the Heller wells, as he contends such calculations were not proper under Ohio Revised Code § 5303.34(B). (*Id.* at 3). As further support, Rice points to the fact that Herzing calculated deductions for royalty payments for Gulfport and Rice yet failed to do so for Ascent and XTO. (*Id.*). In response Plaintiffs argue that

15

there is no support for Rice's arguments that it is Plaintiffs' burden to account for prior royalty payments at trial to prove their damages. (ECF No. 560 at 3–5). Rather Plaintiffs assert that such offsets are to be dealt with after trial. (*Id.* at 6). Plaintiffs also contend that § 5303.34(B) does not apply. (*Id.*).

This Court agrees with Plaintiffs. First, as discussed thoroughly in this opinion, this Court has found no indication that § 5303.34(B) was meant to have retroactive application; hence, this Court will not apply it to this case. Rice has also failed to identify any authority that articulates that accounting for offsets post-trial is impermissible under the common law. In fact, it is not uncommon for courts to assess offsets after trial. *Herlihy Moving & Storage, Inc. v. Adecco USA, Inc.*, 772 F. Supp. 2d 898, 900–903 (S.D. Ohio 2011) (allowing an offset post-trial where evidence of a plaintiff's third-party settlement payments was not admitted into evidence for the jury's consideration) (collecting cases). Thus, this Court finds no reason to rule that Herzing's failure to account for royalty deductions for the Heller wells was a miscalculation warranting preclusion. In the event that damages are awarded, Rice will be within its rights to seek offsets for the Ascent and XTO royalty payments. Accordingly, this Court will not preclude Herzing's testimony regarding the Heller Wells under the guise that he miscalculated.

2.  *Exclude Herzing's Testimony About Wells for Which Former Co-Defendants*

*Made Settlement Payments*

As to Rice's second argument thar Herzing should be precluded from offering testimony about wells for which former co-defendants made settlement payments, this Court is also not persuaded. As discussed above, Rice has made no argument as to how they would be prejudiced if offsets were not calculated until after trial. This Court reasons that the introduction of such evidence unnecessarily is far more likely to confuse or prejudice the jury than it would aid in adjudication

16

of the facts. As such, this Court reasons it would be inappropriate to present discussions regarding the amounts of prior settlements even in the context of offsetting at trial. Rice's Motion is **DENIED**.

### III.  CONCLUSION

For the reasons explained above, Rice's Omnibus Motion in Limine (ECF No. 552) is **GRANTED** as to Motions 1, 4, and 5, and **DENIED** as to Motions 2, 3, 6, 7, and 8. Plaintiffs' Omnibus Motion in Limine (ECF No. 554) is **GRANTED** as to Motions 5, 6, 7, and 9,  **DENIED** as to Motion 2, and **GRANTED in part and DENIED in part** as to Motions 1, 3, 4, and 8. Rice's Motion to Exclude In Part Testimony Of Plaintiff's Expert Paul Herzing (ECF No. 555) is **DENIED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**


**DATED: May 15, 2026**

17